IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> EMIVEST AEROSPACE CORPORATION, <br><br> Debtor.[1] | Chapter 11 <br><br> Case No. 10-13391 (MFW) <br><br> Re: D.I. 296 |

**ORDER (I) APPROVING AUCTION AND BID PROCEDURES
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS, (II) AUTHORIZING ENTRY INTO
STALKING HORSE ASSET PURCHASE AGREEMENT AND APPROVING
STALKING HORSE PROTECTIONS, (III) APPROVING PROCEDURES RELATED
TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (IV) SCHEDULING AUCTION AND SALE APPROVAL
HEARING, AND (V) APPROVING THE FORM AND MANNER OF SALE NOTICE**

Upon the emergency motion, dated February 16, 2011 (the "Motion"),[2] of Emivest Aerospace Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order (i) authorizing and approving the sale of substantially all of the Debtor's assets (the "Assets") free and clear of all liens, claims, encumbrances and other interests, (ii) approving certain auction and bid procedures in connection with the sale of substantially all of the Debtor's Assets, (iii) authorizing the Debtor to enter into a stalking horse

---

[1] The last four digits of the Debtor's federal tax identification number are 8827. The Debtor's mailing address and corporate headquarters is 1770 Skyplace Blvd., San Antonio, TX 78216.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

EAST\44289717.2

purchase agreement and approving certain stalking horse protections, (iv) approving certain procedures related to the assumption and assignment of executory contracts and unexpired leases, (v) scheduling an auction and sale approval hearing, and (vi) approving the form and manner of sale notice, all as more fully described in the Motion; and a hearing having been held to consider the relief requested in the Motion (the "Bid Procedures Hearing"); and upon the record of the Bid Procedures Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion and at the Bid Procedures Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. sections 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. section 157(b)(2). Venue is proper in this district and this Court under 28 U.S.C. sections 1408 and 1409.

B. The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9006, and Local Rule 6004-1.

C. Good and sufficient notice of the relief granted by this Order has been given in light of the circumstances and the nature of the relief requested in the Motion, and no

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

other or further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

D. The Debtor has demonstrated a compelling and sound business justification for this Court to grant the relief requested in the Motion, including, without limitation, (i) approval of the Bid Procedures, (ii) authorization to enter into the Asset Purchase Agreement with the Stalking Horse Bidder, (iii) authorization to provide the Stalking Horse Protections, and (iv) approval of the Assignment and Assumption Procedures, under the circumstances described herein and the Motion.

E. The Bid Procedures, substantially in the form attached hereto as <u>Exhibit 1</u> and incorporated herein by reference as if fully set forth in this Order, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtor's estate.

F. Authorizing the Debtor to enter into the Asset Purchase Agreement is in the best interests of the Debtor's estate and creditors and will provide a clear benefit to the Debtor's estate and creditors.

G. The Stalking Horse Protections, the Initial Overbid, and the Overbid Increments are fair, reasonable and appropriate and provide a benefit to the Debtor's estate and creditors.

H. Payment by the Debtor of any portion of the Stalking Horse Protections, under the conditions set forth in the Motion and in this Order, is (i) an actual and necessary cost of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtor's estate and creditors and all parties in interest herein, (iii) a material inducement for the Stalking Horse Bidder to expend considerable time and

resources pursuing the purchase of the Assets, and (iv) reasonable and appropriate in view of the fact that, if the Stalking Horse Protections are triggered, the efforts of the Stalking Horse Bidder will have improved the ability of the Debtor to receive the highest and otherwise best bid for the Assets.

I. The Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u> and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Assets, the Bid Procedures, the Auction and the Sale Approval Hearing, and no other or further notice is required.

J. The Cure Notice, substantially in the form attached hereto as <u>Exhibit 3</u> and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the assumption and assignment of the Contracts and the Leases in connection with the sale of the Assets and the related Cure Amount, and no other or further notice is required.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

<u>**Bid Procedures**</u>

1. The Bid Procedures are approved. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

2. As further described in the Bid Procedures, any entity wanting to participate in the Auction must submit a Qualified Bid in writing to (i) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Flr., P.O. Box 1347, Wilmington, Delaware 19899 (Attn: Robert J. Dehney, Esq. and Daniel B. Butz, Esq.); (ii) DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Timothy W. Walsh, Esq. and Daniel G. Egan, Esq.); (iii) Cole, Schotz, Meisel, Forman & Leonard, P.A., 300 East Lombard Street, Suite

2000, Baltimore, Maryland 21202 (Attn: Gary H. Leibowitz, Esq.); (iv) Cohen Tauber Spievack & Wagner P.C., 420 Lexington Avenue, Suite 2400, New York, New York 10170 (Attn: Robert A. Boghosian, Esq.); and (v) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899 (Attn: Bradford J Sandler, Esq.), **so as to be <u>actually received</u> on or before March 10, 2011 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>"), which deadline may be extended by the Debtor, in consultation with the Creditors' Committee.

3. As soon as practicable after a Potential Bidder submits a bid, the Debtor, in consultation with the Creditors' Committee and the Lenders, will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination. Notwithstanding any consultation rights granted to the Creditors' Committee and the Lenders, the determination as to whether a bid is a Qualified Bid shall be made in the Debtor's sole discretion.

4. The Stalking Horse Bidder is hereby deemed a Qualified Bidder, whose bid shall be deemed a Qualified Bid.

5. If two or more Qualified Bids are received on or before the Bid Deadline, the Debtor shall conduct the Auction commencing on **March 14, 2011 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, to determine the Successful Bid. The Auction will be transcribed or videotaped. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction, or may be cancelled in the discretion of the Debtor. Only an entity that has submitted a Qualified Bid is eligible to participate in the Auction; however, the Auction will be conducted openly and all creditors will be permitted to

attend. Each Qualified Bidder shall be required to confirm at the Auction that it has not engaged in any collusion with respect to the bidding or sale.

6. As soon as reasonably practicable following the Bid Deadline (if only one Qualified Bid is submitted) or the Auction (if two or more Qualified Bids are submitted), the Debtor, in consultation with the Creditors' Committee and the Lenders, shall review each Qualified Bid that has been submitted and the Debtor shall determine, in its reasonable discretion and in consultation with the Creditors' Committee and the Lenders, whether any Qualified Bid is the Successful Bid. In making such determination, the Debtor, in consultation with the Creditors' Committee and the Lenders, shall consider any factor that it deems relevant, including, without limitation, the purchase price, the payment of any Break-Up Fee or Expense Reimbursement, any benefit to the Debtor's estate from any proposal to assume liabilities of the Debtor, and those factors affecting the speed and certainty of consummating the sale of the Assets. Notwithstanding any consultation rights granted to the Creditors' Committee and the Lenders, the determination as to whether a Qualified Bid is the Successful Bid shall be made in the Debtor's sole discretion.

7. If the Debtor does not receive any Qualified Bids other than with the Stalking Horse Bidder, the Stalking Horse Bidder will be named the Successful Bidder.

8. The Sale Approval Hearing shall be held on **March 15, 2011** at 2:00 p.m. **(prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #4, Wilmington, Delaware 19801, before the Honorable Mary F. Walrath, United States Bankruptcy Judge. The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

9. The Successful Bidder(s) shall be required to consummate the purchase of the Assets by March 17, 2011 or, alternatively, the Debtor's obligations under the DIP Credit Agreement shall be paid in full by March 17, 2011.

10. If the Successful Bidder(s) fails to timely consummate the purchase of the Assets, or any part thereof, then the next highest or otherwise best Qualified Bid (if any) (the "Back-up Bid"), which shall be irrevocable until the earlier of (i) 20 days after entry of an order approving the sale of the Assets to another Potential Bidder and (ii) consummation of the purchase of the Assets by another Potential Bidder, may be designated by the Debtor as the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale of the Assets to the Qualified Bidder that submitted the Back-Up Bid pursuant to the terms of such Back-Up Bid. If a sale of the Assets is not consummated by March 17, 2011, then, to the extent the Debtor's obligations under the DIP Credit Agreement have not been paid in full by March 17, 2011, the Lenders shall be entitled to exercise their rights and remedies under the DIP Credit Agreement.

## Asset Purchase Agreement and Stalking Horse Protections

11. The Debtor is authorized to enter into the Asset Purchase Agreement with the Stalking Horse Bidder. The exhibits and schedules to the Asset Purchase Agreement, which are in substantially final form, may be modified or amended by the Debtor and the Stalking Horse Bidder at any time up to and including March 10, 2011.

12. The Break-Up Fee and the Expense Reimbursement are hereby approved and shall be payable from the proceeds of a competing offer, without further approval of this Court.

13. As security for payment of the Break-Up Fee and Expense Reimbursement, the Stalking Horse Bidder is granted a valid, perfected security interest and lien

in and to the Assets and a super-priority administrative expense claim under section 364(c)(1) of the Bankruptcy Code in the amount of the Break-Up Fee and Expense Reimbursement. Such security interest and lien and super-priority administrative expense claim shall be senior to all liens and administrative expense claims of the Debtor and junior only to the super-priority administrative expense claim granted to the Agent and Lenders in respect of the Debtor's obligations under the DIP Credit Agreement and any claims and liens granted to Agent and Lenders in connection with the DIP Credit Agreement.

### Notice Procedures

14. The Sale Notice is approved. Within three (3) business days of the entry of this Order, the Debtor shall serve the Sale Notice by first class mail on (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii) the Agent and Lenders; (iv) counsel to the Agent and Lenders; (v) counsel to the Stalking Horse Bidder; (vi) all known creditors of the Debtor; (vii) any entity known or reasonably believed to have asserted a security interest in or lien against any of the Assets; (viii) all counterparties to Contracts and Leases; (ix) all landlords, owners, and/or operators of premises at which any of the Assets are located; (x) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; and (xi) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

15. Within three (3) business days of entry of this Order, the Debtor shall publish the Publication Notice, in the form to be submitted to the Court, in *The Wall Street Journal* or *The New York Times* and/or such other publication(s) as the Debtor and its advisors deem appropriate. Such Publication Notice shall be sufficient and proper notice to any other interested parties whose identities are unknown to the Debtor.

16. As soon as practicable following the determination of the Successful Bid, the Debtor shall file a notice with the Court identifying the Successful Bidder and serve such

notice by telecopy, electronic mail transmission, or overnight delivery upon the following entities: (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) the Lenders and Agent; (iv) counsel to the Lenders and Agent; (v) all other parties that have filed notices of appearance in this case; (vi) all Qualified Bidders that have submitted a Qualified Bid; (vii) all non-Debtor counterparties to the Contracts and Leases proposed to be assumed and assigned under the Successful Bid; (viii) all landlords, owners, and/or operators of premises at which any of the Assets are located; and (ix) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

## Assumption and Assignment Procedures

17. The Assumption and Assignment Procedures are approved.

18. The Cure Notice is approved. The Debtor shall file the Cure Notice with the Court and serve such Cure Notice by first class mail on the non-Debtor counterparties to the Contracts and Leases proposed to be assumed and assigned. The Cure Notice shall include (i) the title of the Contract or Lease to be assumed, (ii) the name of the counterparty to such Contract or Lease, (iii) the amount, if any, determined by the Debtor to be necessary to be paid to cure any existing default under such Contract or Lease in accordance with sections 365(b) and (f)(2) of the Bankruptcy Code (the "Cure Amount"), (iv) the proposed effective date of the assignment, (v) the identity of the Successful Bidder and a statement as to such Successful Bidder's ability to perform the Debtor's obligations under such Contract or Lease, and (vi) the deadline by which any counterparty to such Contract or Lease must object. The Debtor may supplement and modify the Cure Notice at any time, provided that to the extent that the Debtor adds a Contract or Lease to the Cure Notice or modify the Cure Amount, the affected party shall receive a separate notice and an opportunity to object to such addition or modification.

19.  Any objection to the assumption and assignment of any Contract or Lease identified on the Cure Notice, including, without limitation, any objection to the Cure Amount set forth on the Cure Notice or to the ability of the Successful Bidder to provide adequate assurance of future performance under such Contract or Lease, must (i) be in writing, (ii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, and served on Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Flr., P.O. Box 1347, Wilmington, Delaware 19899 (Attn: Robert J. Dehney, Esq. and Daniel B. Butz, Esq.), DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Timothy W. Walsh, Esq. and Daniel G. Egan, Esq.), and Cohen Tauber Spievack & Wagner P.C., 420 Lexington Avenue, Suite 2400, New York, New York 10170 (Attn: Robert A. Boghosian, Esq.), **so as to be <u>actually received</u> no later than March 11, 2011 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Assignment and Cure Objection Deadline</u>").

20.  To the extent that any entity does not timely object as set forth above, such entity shall be (i) forever barred from objecting to the assumption and assignment of any of the Contracts and Leases identified on the Cure Notice, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Contract or Lease, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code,

(v) deemed to have agreed that all defaults under the applicable Contract or Lease arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtor shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Contract or Lease shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Contract or Lease or designate an early termination date under the applicable Contract or Lease as a result of any default that occurred and/or was continuing prior to the assignment date, and (vii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Contract or Lease.

21. If an objection is timely received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at such later date set by the Court. The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Contract or Lease.

### Objection Procedures

22. All other objections to approval of the sale of the Assets to the Successful Bidder shall (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objector, (iv) state with particularity the legal and factual bases for such objection, and (v) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service thereof, and served on the following parties **so as to be actually received no later than 5:00 p.m. (prevailing Eastern Time) on March 11, 2011** (the "General Objection Deadline"): (i) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street,

18th Flr., P.O. Box 1347, Wilmington, Delaware 19899 (Attn: Robert J. Dehney, Esq. and Daniel B. Butz, Esq.); (ii) DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Timothy W. Walsh, Esq. and Daniel G. Egan, Esq.); (iii) Cole, Schotz, Meisel, Forman & Leonard, P.A., 300 East Lombard Street, Suite 2000, Baltimore, Maryland 21202 (Attn: Gary H. Leibowitz, Esq.); (iv) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Bradford J Sandler, Esq.); (v) Cohen Tauber Spievack & Wagner P.C., 420 Lexington Avenue, Suite 2400, New York, New York 10170 (Attn: Robert A. Boghosian, Esq.); and (vi) any persons who have filed a request for notice in the above-captioned chapter 11 cases pursuant to Local Rule 2002-1 on or before the General Objection Deadline.

23. The Lenders reserve all of their rights to object to the approval of the sale of the Assets to the Successful Bidder.

24. Any request for adequate assurance information (a "Request for Adequate Assurance") must include an email address, postal address and/or facsimile number to which a response to such request will be sent. Upon receiving a Request for Adequate Assurance, the Debtor shall promptly provide such party with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery.

25. Failure of any entity to file an objection on or before the General Objection Deadline shall be deemed to constitute consent of such entity to the sale of the Assets to the Successful Bidder and other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of the Assets, the assumption and assignment of Contracts and Leases to the Successful Bidder, the ability of the Successful Bidder to provide adequate assurance of future

performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, or the Debtor's consummation and performance of the terms of the asset purchase agreement entered into with the Successful Bidder, if authorized by the Court.

### Related Relief

26. All objections to entry of this Order that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, are overruled except as otherwise set forth herein.

27. This Order shall constitute findings of fact and conclusions of law and shall take effect upon execution hereof.

28. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. The Debtor is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

29. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in this case, the terms of this Order shall govern.

30. This Court shall retain jurisdiction with respect to all matters related to or arising from the implementation or interpretation of this Order.

Dated: _Feb. 23_, 2011
Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE