# EXHIBIT 1

## Auction and Bid Procedures

Set forth below are the bid procedures (the "Bid Procedures")[1] to be employed in connection with the proposed sale of substantially all of the Assets (as defined below) of Emivest Aerospace Corporation, as debtor and debtor in possession (the "Debtor"). Pursuant to the Bid Procedures, the Debtor shall solicit bids for the purchase of the Assets, conduct an auction for the Assets (the "Auction") if the Debtor receives two or more Qualified Bids (as defined below), and thereafter seek entry of an order (the "Sale Order"), after notice and a hearing (the "Sale Approval Hearing"), authorizing and approving the sale of the Assets to the Successful Bidder(s) (as defined below).

### A. Assets to be Sold

The Debtor seeks to sell substantially all of its assets, including, without limitation, all the Debtor's right, title, and interest as of the Closing Date in and to all properties, assets, goodwill and business of every kind and description and wherever located, whether tangible or intangible, real, personal or mixed, directly or indirectly owned by the Debtor or to which the Debtor is directly or indirectly entitled, and in any case, belonging to or used or intended to be used in the Business (other than the Excluded Assets), including in certain equipment and personal property leases and executory contracts, furniture, fixtures, equipment, machinery, other tangible personal property, intangible personal property, inventory, aircraft and aircraft engines, vehicles, accounts receivable, certain claims and causes of action, licenses, permits and books and records (such assets, the "Assets"). Except as otherwise provided in definitive documentation with respect to any sale of the Assets, all of the Debtor's rights, title and interest in and to the Assets shall be sold free and clear of all liens, claims, encumbrances, rights, remedies, restrictions, pledges, interests, liabilities, charges, options and contractual commitments of any kind or nature whatsoever, whether arising before or after the date that the Debtor filed this chapter 11 case in this Court, whether at law or in equity, in accordance with section 363 of the Bankruptcy Code.

### B. Bid Deadline

Any entity wishing to participate in the Auction (a "Potential Bidder") must submit a Qualified Bid (as defined below) in writing to (i) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Flr., P.O. Box 1347, Wilmington, DE 19899 (Attn: Robert J. Dehney, Esq. and Daniel B. Butz, Esq.); (ii) DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Timothy W. Walsh, Esq. and Daniel G. Egan, Esq.); (iii) Cole, Schotz, Meisel, Forman & Leonard, P.A., 300 East Lombard Street, Suite 2000, Baltimore, Maryland 21202 (Attn: Gary H. Leibowitz, Esq.); (iv) Cohen Tauber Spievack & Wagner P.C.,

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the *Emergency Motion of the Debtor for Entry of an Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, (II) Approving Auction and Bid Procedures in Connection with the Sale of Substantially all of the Debtor's Assets, (III) Authorizing Entry into Stalking Horse Asset Purchase Agreement and Approving Stalking Horse Protections, (IV) Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling Auction and Sale Approval Hearing, and (VI) Approving the Form and Manner of Sale Notice.*

420 Lexington Avenue, Suite 2400, New York, New York 10170 (Attn: Robert A. Boghosian, Esq.); and (v) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Bradford J Sandler, Esq.), **so as to be <u>actually</u> received on or before March 10, 2011 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>"), which deadline may be extended by the Debtor, in consultation with the Creditors' Committee. No bids submitted after the Bid Deadline shall be considered by the Debtor.

### C. <u>Bid Requirements</u>

Only bids for the Assets that constitute "Qualified Bids" will be considered by the Debtor. A "<u>Qualified Bid</u>" is an offer to purchase the Assets, in the form of an asset purchase agreement together with a blackline against the Asset Purchase Agreement, that: (i) identifies the Assets to be purchased and the consideration to be paid for such Assets; (ii) identifies any proposed revisions to the Asset Purchase Agreement; (iii) identifies the Potential Bidder and the officer(s) or authorized agent(s) who will appear on behalf of such Potential Bidder; (iv) provides evidence, satisfactory to the Debtor in its reasonable discretion, in consultation with the Creditors' Committee, of the Potential Bidder's financial wherewithal and operational ability to consummate the proposed transaction; (v) provides that such offer is not subject to any due diligence or financing contingency or further board or similar approval; (vi) provides for a good faith deposit (a "<u>Good Faith Deposit</u>") to be submitted to the Debtor on or before the Bid Deadline in an amount equal to not less than ten percent (10%) of the proposed purchase price; (vii) identifies any Contracts or Leases to be assumed and assigned in connection with the proposed purchase of the Assets and provides evidence of the Potential Bidder's ability to provide adequate assurance of future performance under such Contracts and Leases; (viii) provides that such offer is irrevocable until the earlier of (a) 20 days after entry of an order approving the sale of the Assets to another Potential Bidder and (b) consummation of the purchase of the Assets by another Potential Bidder; (ix) includes a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to submit an offer to purchase the Assets on the terms proposed by such Potential Bidder; and (x) contains the form of order approving the proposed transaction that the Potential Bidder would request the Debtor to submit to the Court. The Stalking Horse Bidder is deemed a Qualified Bidder (as defined below), whose bid is deemed a Qualified Bid.

As soon as practicable after a Potential Bidder submits a bid, the Debtor, in consultation with the Creditors' Committee and the Lenders, will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination. The Debtor reserves the right to consider bids for the Assets that do not conform to one or more of the aforementioned requirements, and, in consultation with the Creditors' Committee and the Lenders, may deem such bids to be Qualified Bids notwithstanding such requirements. The Debtor may aggregate separate bids from unaffiliated Potential Bidders to create one Qualified Bid, <u>provided, however</u>, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding. Notwithstanding any consultation rights granted to the Creditors' Committee and the Lenders, the determination as to whether a bid is a Qualified Bid shall be made in the Debtor's sole discretion.

### D. Stalking Horse Bid

The Debtor has entered into an agreement with the Stalking Horse Bidder that provides for a break-up fee (the "Break-Up Fee") of three percent (3%) of the cash purchase price proposed in the Stalking Horse Bid, and an expense reimbursement in an amount not to exceed $75,000 that may be incurred by such Stalking Horse Bidder in connection with its bid (the "Expense Reimbursement" together with the Break-Up Fee, the "Stalking Horse Protections"). The Break-Up Fee and Expense Reimbursement shall be subject to credit bidding.

### E. Due Diligence

Through and including the Bid Deadline, the Debtor, with the assistance of Morgan Joseph, will afford Potential Bidders the opportunity to conduct a due diligence investigation regarding the Assets in the manner determined by the Debtor, in its business judgment, to be reasonable and appropriate. The Debtor shall not be obligated to furnish access to any information of any kind whatsoever regarding the Assets after the Bid Deadline.

Upon request, the Debtor will provide each Potential Bidder with a copy of the Bid Procedures and a form Sale Order, together with a copy of the Asset Purchase Agreement. Should any Potential Bidder desire additional or further information, such Potential Bidder will be required to execute a confidentiality agreement in form and substance satisfactory to the Debtor in its business judgment and on terms that are not more favorable to such Potential Bidder than the confidentiality agreement, if any, executed by the Stalking Horse Bidder. Upon execution of such confidentiality agreement, the applicable Potential Bidder will be given access (through a virtual data room, site inspections or otherwise) to various financial data and other relevant and confidential information. The Debtor, together with Morgan Joseph, will coordinate all requests for additional information or access from Potential Bidders. The Debtor may, in its discretion, coordinate due diligence investigations such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. The Debtor shall not be obligated to furnish access to any such information to any entity that does not execute a confidentiality agreement in form and substance satisfactory to the Debtor in its business judgment. In any event, the Stalking Horse Bidder, shall be provided prompt access to all due diligence materials, management presentations, site inspections and other information provided to Potential Bidders that were not previously made available to the Stalking Horse Bidder.

### F. Credit Bid

On or before the Bid Deadline, parties holding a valid lien on some or all of the Assets that secures an allowed claim may submit a credit bid for some or all of such Assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The Stalking Horse Bidder shall have the right to credit bid up to the full amount of the Break-Up Fee and Expense Reimbursement.

G.  **The Auction**

If two or more Qualified Bids are received on or before the Bid Deadline, the Debtor shall conduct the Auction commencing on **March 14, 2011 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, to determine the Successful Bid. The Auction will be transcribed or videotaped. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. The Debtor reserves the right to cancel the Auction in its discretion. If the Debtor does not receive any Qualified Bids other than the Stalking Horse Bid, the Stalking Horse Bidder will be named the Successful Bidder (as defined below).

H.  **Auction Procedures**

Only an entity that has submitted a Qualified Bid (a "Qualified Bidder") is eligible to participate in the Auction; however, the Auction will be conducted openly and all creditors will be permitted to attend. All participants shall appear in person or through a duly authorized representative. The Stalking Horse Bid shall serve as the starting bid at the Auction, and Qualified Bidders may submit bids that are higher and better than the aggregate of the Purchase Price plus the value of all Assumed Liabilities (*i.e.*, $11,187,500) plus an initial increment amount equal to the aggregate amount of the Stalking Horse Protections (*i.e.*, $303,750) plus $100,000 (the "Initial Overbid"), and subsequent increments of at least $200,000 (the "Overbid Increments"), provided that the Debtor, in its reasonable discretion, in consultation with the Creditors' Committee, may adjust the Overbid Increments without further order of the Court. Each Qualified Bidder shall be required to confirm at the Auction that it has not engaged in any collusion with respect to the bidding or sale.

As soon as practicable following the determination of the Successful Bid, the Debtor shall file a notice with the Court identifying the Qualified Bidder that submits the Successful Bid (the "Successful Bidder") and serve such notice by telecopy, electronic mail transmission, or overnight delivery, upon the following entities: (i) the U.S. Trustee; (ii) the prepetition secured creditors; (iii) counsel to the Creditors' Committee; (iv) the Lenders and Agent; (v) counsel to the Lenders and Agent; (vi) all other parties that have filed notices of appearance in this case; (vii) all Qualified Bidders that have submitted a Qualified Bid; (viii) all landlords, owners, and/or operators of premises at which any of the Assets are located; and (ix) all non-Debtor counterparties to the Contracts and Leases proposed to be assumed and assigned under the Successful Bid.

The Debtor may adjourn, continue, re-open or terminate the Auction, subject to any required approval of the Court, and reserve the right to adopt other and further rules and procedures for the Auction that, in its business judgment, will better promote the goals of the Auction.

I.  **Determination of Successful Bid**

As soon as reasonably practicable following the Bid Deadline (if only one Qualified Bid is submitted) or the Auction (if two or more Qualified Bids are submitted), the Debtor, in

consultation with the Creditors' Committee and the Lenders, shall review each Qualified Bid that has been submitted and the Debtor shall determine, in its reasonable discretion and in consultation with the Creditors' Committee and the Lenders, whether any Qualified Bid is the Successful Bid. In making such determination, the Debtor, in consultation with the Creditors' Committee and the Lenders, shall consider any factor that it deems relevant, including, without limitation, the purchase price, the payment of any Break-Up Fee or Expense Reimbursement, any benefit to the Debtor's estate from any proposal to assume liabilities of the Debtor, and those factors affecting the speed and certainty of consummating the sale of the Assets. Notwithstanding any consultation rights granted to the Creditors' Committee and the Lenders, the determination as to whether a Qualified Bid is the Successful Bid shall be made in the Debtor's sole discretion.

As soon as practicable following notification of the determination of the Successful Bid, but in no event later than the first business day after such notification, the Successful Bidder must execute a definitive agreement to purchase the Assets (an "Asset Purchase Agreement"), to the extent not previously executed, in all respects acceptable to the Debtor, and consistent with such Successful Bidder's proposed revisions to the Asset Purchase Agreement, unless otherwise agreed to by the Debtor.

The presentation of the Successful Bid to the Court for approval does not constitute the Debtor's acceptance of such bid. The Debtor will be deemed to have accepted the Successful Bid only when such bid has been approved by the Court pursuant to the Sale Order and the sale of the Assets proposed in such bid has been consummated.

### J.     Back-Up Bid

The Successful Bidder(s) shall be required to consummate the purchase of the Assets by March 17, 2011 or, alternatively, the Debtor's obligations under the DIP Credit Agreement shall be paid in full by March 17, 2011. If the Successful Bidder(s) fails to consummate the purchase of the Assets, or any part thereof, then the next highest or otherwise best Qualified Bid (if any) (the "Back-up Bid"), which is irrevocable until the earlier of (i) 20 days after entry of an order approving the sale of the Assets to another Potential Bidder and (ii) consummation of the purchase of the Assets by another Potential Bidder, may be designated by the Debtor, as the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale of the Assets to the Qualified Bidder that submitted the Back-Up Bid (the "Back-Up Bidder") pursuant to the terms of such Back-Up Bid. If a sale of the Assets is not consummated by March 17, 2011, then, to the extent the Debtor's obligations under the DIP Credit Agreement have not been paid in full by March 17, 2011, the Lenders shall be entitled to exercise their rights and remedies under the DIP Credit Agreement. If the Successful Bidder(s) fails to consummate the purchase of the Assets because of a breach, default or failure to perform on the part of such Successful Bidder(s), the Debtor reserves the right to seek all available damages from such Successful Bidder(s).

K.  **Reservation of Rights**

The Debtor reserves the right to (i) determine in its reasonable discretion whether any Qualified Bid is a Successful Bid and (ii) reject, at any time prior to entry of the Sale Order by the Court, without liability, any bid that the Debtor, in its reasonable discretion, determines to be (a) inadequate or insufficient, (b) not in conformity with the Bid Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (c) contrary to the best interests of the Debtor and its estate. At or before the Sale Approval Hearing, the Debtor may impose such other terms and conditions on the sale of the Assets as the Debtor may determine to be in the best interests of the Debtor and its estate. The Debtor also reserves the right to modify the Bid Procedures, in consultation with the Creditors' Committee, without the need for any further order of the Bankruptcy Court, including, without limitation, (i) extending the deadlines set forth in the Bid Procedures, (ii) adjourning the Auction and the Sale Approval Hearing, and (iii) withdrawing any Assets from the sale process at any time prior to or during the Auction.

L.  **Disposition of Good Faith Deposits**

All Good Faith Deposits shall be held in a separate escrow account for the benefit of the Debtor. As soon as practicable following the consummation of the sale of the Assets, any Good Faith Deposit received from a Qualified Bidder who is not determined to be the Successful Bidder shall be released from escrow and returned to such Qualified Bidder, except that the Good Faith Deposit received from the Back-Up Bidder shall continue to be held in a separate escrow account for the benefit of the Debtor until the expiration of the earlier of (i) 20 days after entry of an order approving the sale of the Assets to the Successful Bidder and (ii) consummation of the purchase of the Assets by the Successful Bidder. If the Successful Bidder or, if applicable, the Back-Up Bidder, fails to consummate the purchase of the Assets, or any part thereof, because of a breach, default or failure to perform on the part of such Successful Bidder or Back-Up Bidder, as applicable, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder or Back-Up Bidder, as applicable, and such Good Faith Deposit shall irrevocably become property of the Debtor without affecting or reducing any of the Debtor's other rights or claims against such Successful Bidder or Back-Up Bidder, as applicable. If a Successful Bidder or Back-Up Bidder, as applicable, fails to consummate the purchase of the Assets, or any part thereof, because of a breach, default or failure to perform on the part of the Debtor, the Good Faith Deposit deposited by such Successful Bidder or Back-Up Bidder, as applicable, shall be returned to such Successful Bidder or Back-Up Bidder. If a Successful Bidder or Back-Up Bidder, as applicable, consummates the purchase of the Assets, the Good Faith Deposit deposited by such Successful Bidder or Back-Up Bidder, as applicable, shall be applied as a credit toward the purchase price for the Assets.

M.  **As Is, Where Is**

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its estate, or its agents or representatives. Except as otherwise expressly provided in these Bid Procedures, the Asset Purchase Agreement, or any applicable asset purchase agreement, each Potential Bidder that submits a bid shall be deemed to acknowledge and represent that it (i) has had an opportunity to

conduct any and all reasonable due diligence regarding the Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

N. **Sale Approval Hearing**

The sale of the Assets and applicable Asset Purchase Agreement shall be presented for authorization and approval by the Court at the Sale Approval Hearing, which the Debtor proposes be held on **March __, 2011 at _____ (prevailing Eastern Time)**, subject to the availability of the Court. The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.