# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------x
:
**In re:** : **Chapter 11**
:
**EMIVEST AEROSPACE CORPORATION,** : **Case No. 10-13391 (MFW)**
:
          **Debtor.** : Hearing Date: March 15, 2011 at 2:00 p.m.
: Objection Deadline: March 14, 2011 at 10:00 a.m.
: (Extended per agreement)
------------------------------------x Related Docket Nos. 296, 316, 351

## RESPONSE AND RESERVATION OF RIGHTS

Lloyd Everard and The Everard Living Trust (together, "Everard"), by and through their undersigned counsel, hereby file this response and reservation of rights (the "Response") regarding the *Emergency Motion of the Debtor for Entry of an Order (I) Authorizing and Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances, and Other Interests, (II) Approving Auction and Bid Procedures the Sale of Substantially All of the Debtor's Assets, (III) Authorizing Entry into A Stalking Horse Asset Purchase Agreement and Approving Stalking Horse Protections, (IV) Approving Procedures Related to the Assumption andf Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling Auction and Sale Approval Hearing, and (VI) Approving the Form and Manner of Sale Notice* [Docket No. 296] (the "Sale Motion"), and in support thereof respectfully state as follows:

### BACKGROUND

*A.    SJ30 Aircraft Purchase Agreement and Lien*

1.    As of the commencement of these cases, the Debtor was party to an SJ30 Aircraft Purchase Agreement, dated October 10, 2007 (the "Everard Purchase Agreement"), whereby the Debtor agreed to construct, and Everard agreed to purchase, an SJ30 Twinjet Aircraft, Serial

Number 012 (the "Aircraft" or the "Collateral"). Everard is properly listed on the Debtor's Schedule G [Docket No. 115] as a counterparty to the Everard Purchase Agreement, which is an executory contract.

2. In connection with his execution of the Everard Purchase Agreement, Everard made an initial deposit of $1,687,500.00 (the "Deposit"). On the date of the execution of the Agreement, Everard also filed a UCC Financing Statement with the Delaware Department of State, asserting a lien in the Collateral, with a description covering the following collateral: "The SJ30 (also known as SJ30-2) twinjet aircraft Serial Number 012, including, without limitation, all parts components, modules, sections, equipment, attachments, accessories and supplies therefore, whether complete, under construction, or otherwise, and all proceeds of every kind of all of the foregoing." A true and correct copy of the Financing Statement evidencing the lien is attached hereto as Exhibit A (the "Lien").

3. Based on communications to Everard from the Debtor, the major components of the Aircraft are assembled and complete including the fuselage, wings, tail section, landing gear and engines, Williams International FJ44-2A serial numbers 110011 and 110012.

4. The Debtor's Final DIP Order (and underlying Credit and Security Agreement), recognize the existence and senior priority of Everard's Lien in the Collateral, and this issue is not in dispute. *See* Final DIP Order [Docket No. 110], Exhibit A – Credit and Security Agreement, at Schedule 5.20 (listing all "Permitted Liens" and specifically including Everard's Lien); Section 6.3(a) of the Credit and Security Agreement (defining "Permitted Liens" as "Liens in existence on the date hereof...."); Final DIP Order at Section 2.1.2 ("The postpetition liens and security interests of the Agent and [DIP lenders] under the Credit Facility and other Loan Documents and this Final Financing Order in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind ... provided, however, that

Agent's and Lenders' liens on and security in the Collateral shall be subject and subordinate only to (i) *the Permitted Liens* and (ii) the Carve-Out, solely to the extent provided for in Sections 2.3, 2.4, and 2.5 of this Final Financing Order") (emphasis added).

5. Everard is also properly listed in the Debtor's Schedule D [Docket No. 114] as a creditor holding a secured claim in the amount of $1,687,500.00.

B. *The Sale Motion and the APA*

6. On February 16, 2011, the Debtor filed the Sale Motion, which sough, *inter alia*, authority to sell of substantially all of its assets, and authority to enter into a stalking horse asset purchase agreement with MT, LC ("MTLC"). On February 22, 2011, the Debtor filed the final Asset Purchase Agreement [Docket No. 316] (the "APA") in connection with its Sale Motion.

*(a) Assumed Liabilities*

7. Section 2.02(a) of the APA provides that MTLC will assume, effective as of the closing date, those liabilities arising from the Assigned Contracts or the ownership of the Purchased Assets first accruing from and after the closing date, excluding all cure costs ("Assumed Liabilities"). That section further provides that, subject to section 2.01(a)(i), the Deposit paid by Everard under the Everard Purchase Agreement, in the amount of $1,688,000, will be credited by Buyer to the customer, and Seller will have no right to the Deposit."

*(b) Purchased Assets*

8. As set forth in section 2.01(a)(i) of the draft APA, the Everard Purchase Agreement is defined as falling within the category of "Assigned Contracts", which has been included within the definition of the "Purchased Assets" listed on Schedule 2.01(a)(i)(B) to the APA, but only on the express condition that such agreement is modified prior to closing on terms acceptable to the buyer in its sole discretion ("Modified Assigned Contract").

9. The APA further provides that the Purchased Assets shall be sold free and clear of any encumbrances "except as set forth in Schedule 2.01(a) annexed hereto with respect to Encumbrances in favor of the customers under the .... Everard Purchase Agreement." APA at Section 2.01(a). The foregoing language suggests that Everard's Lien shall remain attached to the Purchased Assets.

10. On March 1, 2011, the Debtor filed its *Notice of (I) entry into Stalking Horse Asset Purchase Agreement (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale of Substantially All of the Debtor's Assets* [Docket No. 351] (the "Cure Notice"). In the Cure Notice, the Debtor lists the Everard Purchase Agreement and asserts that the cure costs are $0.00.

## RESPONSE AND RESERVATION OF RIGHTS

11. While Everard is generally in favor of the proposed sale, there are concerns at this stage of the sale process. Everard was informed by MTLC's counsel on Friday, March 11, 2011, that the APA has been terminated by MTLC. Everard was also informed that MTLC, while no longer the stalking horse purchaser, has placed a bid for the Emivest Assets. Everard has since been in contact with MTLC, and the parties have reached an agreement in principle as to the terms of the assumption, assignment and modification of the original sale agreement in accordance with section 2.01(a)(i) of the APA. However, Everard also understands there will be a revised APA (the "Revised APA"), which was not available as of the time of this filing.

12. Not having had the opportunity to review the Revised APA, Everard cannot be certain that the Revised APA is consistent with the terms of the original APA, including, *inter alia*, providing for Everard's Lien to remain attached to the Purchased Assets and providing for the assumption and assignment of the Everard Purchase Agreement *cum onere*, except as otherwise specifically agreed between Everard and MTLC

13. Accordingly, Everard files this Response to protect his rights pending the filing of the Revised APA and the opportunity to review the Revised APA. Everard reserves all rights to object to the Sale and the Cure Notice in the event that the final Revised APA is inconsistent with the terms of the original APA as to the treatment of the Everard Purchase Agreement, Deposit, and Lien, or otherwise seeks to affect Everard's rights.

## CONCLUSION

WHEREFORE, for the reasons stated above, Everard objects to the relief requested in the Sale Motion and the Cure Notice to the extent that the Revised APA is inconsistent with the original APA as to the treatment of the Everard Purchase Agreement, Deposit, and Lien.

Dated: March 14, 2011

ASHBY & GEDDES, P.A.

*/s/ Amanda Winfree*

William P. Bowden (#2553)
Amanda M. Winfree (#4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Fax: (302) 654-2067

-and-

Mike Callan, Esq.
**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower
10900 NE Fourth St.
Bellevue, WA 98004
Tel: (425) 462.4700
Fax: (425) 451.0714 (fax)