# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| EMIVEST AEROSPACE CORPORATION, | : | Case No. 10-13391 (MFW) |
| Debtor.[1] | : | Re: D.I. 414 |

## ORDER (I) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING THE DEBTOR TO ENTER INTO ASSET PURCHASE AGREEMENT BETWEEN PURCHASER AND DEBTOR, (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon consideration of the emergency motion (the "Motion") of Emivest Aerospace Corporation, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, for entry of an order, pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing and approving the sale of substantially all of the Debtor's assets free and clear of all liens, claims, encumbrances and other interests, (ii) authorizing the Debtor to enter into an Asset Purchase Agreement (as may be amended or supplemented, the "Asset Purchase Agreement") by and between the Debtor and MT, LLC (the "Purchaser") which contemplates the sale of substantially all of the Debtor's assets to the Purchaser on the terms set

---

[1]  The last four digits of the Debtor's federal tax identification number are 8827. The Debtor's mailing address and corporate headquarters is 1770 Skyplace Blvd., San Antonio, TX 78216.

forth therein (the "Sale"), (iii) authorizing and approving the assumption and assignment of executory contracts and unexpired leases, and (iv) granting certain related relief (the "Motion")[2]; and sufficient notice of the Motion and the Asset Purchase Agreement, and all transactions contemplated thereunder and in this Order having been given in accordance with that certain order shortening the time for notice of hearing to consider the Motion (the "Order Shortening Notice") (D.I. 418; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered (i) the Motion and all relief related thereto, and (ii) the objections thereto, if any; and the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at the hearing before the Court on April 6 and 7, 2011 (the "Sale Hearing"); and upon entry of the Order Shortening Notice; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

**Jurisdiction, Final Order and Statutory Predicates**

A.     This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. sections 157(b)(l) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C.

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

section 157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. sections 1408 and 1409.

B. The statutory predicates for the relief requested in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9006, and Local Rule 6004-1.

C. This Order constitutes a final order within the meaning of 28 U.S.C. section 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

**Notice of the Motion**

D. Actual written notice of the Motion was provided to the following parties (the "Notice Parties"): (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii) all counterparties to Assigned Contracts; (iv) prepetition secured creditors; (v) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (vi) Agent and Lenders; (vii) counsel to the Agent and Lenders; (viii) counsel to the Purchaser; (ix) all landlords, owners, and/or operators of premises at which any of the Purchased Assets are located; and (x) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

E. Adequate and sufficient notice of the Motion, Sale Hearing, the Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser, has been provided in accordance with the Order Shortening Notice. The notices described above were good, sufficient, and appropriate

under the circumstances, and no other or further notice of the Motion, Sale Hearing, the Sale or the assumption and assignment of the Assigned Contracts to the Purchaser is or shall be required.

F. The disclosures made by the Debtor concerning the Motion, the Asset Purchase Agreement, the Sale, the assumption and assignment of the Assigned Contracts to the Purchaser and Sale Hearing were good, complete and adequate.

G. The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

H. A reasonable opportunity to object and be heard with respect to the Sale and the Motion and the relief requested therein (including the assumption and assignment of Assigned Contracts to the Purchaser and any amounts necessary under section 365(b) of the Bankruptcy Code to cure all defaults thereunder, as such amounts have been scheduled by the Debtor in the Asset Purchase Agreement, which was delivered to the applicable counterparty (collectively, the "Cure Amounts")), has been afforded to all interested persons and entities, including the Notice Parties.

**Good Faith of Purchaser**

I. The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, and in good faith, and resulted from arm's-length bargaining positions.

J. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the aggregate price paid by Purchaser for the Purchased Assets (the "Purchase Price") was not controlled by any agreement among the bidders.

K.     The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*:   (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser in no way induced or caused the chapter 11 filing by the Debtor; and (c) all payments to be made by the Purchaser in connection with the Sale have been disclosed.

## Highest and Best Offer

L.     The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative.   The Debtor's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

## No Fraudulent Transfer or Successor Liability

M.     The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Purchased Assets and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, and the Uniform Fraudulent Conveyance Act, as such uniform statements have been adopted in any given state, or any comparable state law statute, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.   No other person or entity or group of entities has offered to purchase the Purchased Assets for greater

economic value to the Debtor's estate than the Purchaser. Approval of the Motion and the Asset Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, its estate, creditors and other parties in interest.

N.     The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Purchaser is entering into the transactions contemplated by the Asset Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

O.     The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor. The Purchaser is buying the Purchased Assets as a going concern.

**Validity of Transfer**

P.     The Debtor has (or at all relevant times had) (i) full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transactions contemplated thereby. The Debtor's sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those

expressly provided for in the Asset Purchase Agreement, are required for the Debtor to consummate the Sale and the Asset Purchase Agreement and the transactions contemplated thereby.

Q.     The Debtor is the sole and lawful owner of the Purchased Assets.  Subject to section 363(f) of the Bankruptcy Code, and except as otherwise provided in the Asset Purchase Agreement, the transfer of each of the Purchased Assets to the Purchaser will be, as of the date of the closing of the transactions contemplated by the Asset Purchase Agreement (the "Closing Date"), a legal, valid, and effective transfer of the Purchased Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any such interest in such property, including without limitation (a) all liens and encumbrances relating to, accruing or arising with respect to the Purchased Assets any time prior to the Closing Date (collectively, "Liens") and (b) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the Debtor's or the Purchaser's interests in the Purchased Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or

other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "Claims"), relating to, accruing or arising any time prior to the Closing Date, with the exception of Assumed Liabilities.

**Section 363(f) is Satisfied**

R. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Purchased Assets free and clear of any interest in the property.

S. The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser were not free and clear of all such interests, Liens and Claims, other than the Assumed Liabilities. Unless otherwise expressly included in the Assumed Liabilities, the Purchaser shall not be responsible for any Liens or Claims, including in respect of the following: (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Debtor and any non-Debtor affiliate; (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor, any affiliate of the Debtor, or any member of the Debtor's "control group"; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment

Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors; (vi) Claims or Liens arising under any Environmental Laws with respect to any assets owned or operated by Debtor or any corporate predecessor at any time prior to the Closing Date and any liabilities of the Debtor other than the Assumed Liabilities (as further defined in the Asset Purchase Agreement, the "Excluded Liabilities"); (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any federal, state, and local taxes in respect of the Purchased Assets or the transfer of the Purchased Assets; and (x) any theories of successor liability or causes of action related thereto.

T.    The Debtor may sell the Purchased Assets free and clear of all Liens and Claims against the Debtor, its estate, or any of the Purchased Assets (except the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtor, its estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Liabilities or except as otherwise provided herein) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtor, its estate or any of the Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Purchased Assets, in the same order of priority, with the same validity, force and effect that such Liens or Claims had prior to the Sale, and which shall be payable out of the net cash proceeds of

the Sale without further order of the Court, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

U.    Subject only to the segregation of $200,000.00 set forth in paragraph 38 below, the cash proceeds of the Sale shall be paid at closing on April 7, 2011 by wire transfer by the Debtor or its agent to the Agent and applied by the Agent towards the Debtor's obligations under the DIP Credit Agreement, including, but not limited to all Payments and Fees (as defined in the DIP Credit Agreement), attorneys' fees, costs and expenses owed to the Agent and Lenders.

V.    In full and final satisfaction of any and all liens and claims that the Texas Comptroller may have against the Debtor, its estate, the Purchased Assets, or any of the Debtor's other assets, the Debtor, the estate, and the Texas Comptroller, and each of their respective directors, officers, trustees, employees, agents, attorneys, representatives, related and affiliated companies, successors and assigns, and all other persons who might claim by or through them, release and discharge each other, and their respective directors, officers, trustees, employees, agents, attorneys, representatives, related and affiliated companies, successors and assigns, from any and all claims, causes of action, assessments, charges, liens, claims of lien, damages, loss, liability, expense (including attorney's fees) and actions of whatever kind or nature, whether known or unknown, whether now existing or which may subsequently arise relating to the Debtor, its estate, or any of its assets.

**Cure/Adequate Protection**

W.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtor and its estate, creditors and all other parties in interest, and represents the reasonable

exercise of sound and prudent business judgment by the Debtor. Upon payment of the Cure Amounts (which Cure Amounts are $0.00), if any, the Purchaser or the Debtor, as applicable, shall be deemed to have: (i) to the extent necessary, cured or provided adequate assurance of cure of any default existing prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code. The Purchaser's or Debtor's, as applicable, promise to pay the Cure Amounts and the Purchaser's promise to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

        X.     Any objections to the assumption and assignment of any of the Assigned Contracts to the Purchaser are hereby overruled. Any objections to the Cure Amounts are resolved as set forth herein. To the extent that any counterparty failed to timely object to its Cure Amount or to raise any other alleged breach of contract, such counterparty is deemed to have consented to such Cure Amount and to the assignment of its respective Assigned Contracts to the Purchaser.

**Compelling Circumstances for an Immediate Sale**

        Y.     Good and sufficient reasons for approval of the Asset Purchase Agreement and the Sale have been articulated. The relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest. The Debtor has demonstrated

both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to creditors.

Z.      To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur on April 7, 2011. Time is of the essence in consummating the Sale.

AA.     Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

BB.     The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.      Provided that the DIP Lenders are paid in full on April 7, 2011, the relief requested in the Motion is granted and approved as set forth in this Order, and the Sale

contemplated thereby is approved. Notwithstanding the entry of this Order, in the event that the DIP Lenders are not paid in full on April 7, 2011, the DIP Lenders are authorized to immediately exercise all of their rights under Article VII of the DIP Credit Agreement without further Order of the Court, and the Debtor shall be precluded from closing the Sale with the Purchaser.

2.       All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

**Approval of the Asset Purchase Agreement**

3.       The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved, provided the DIP Lenders are paid in full on April 7, 2011.

4.       Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale on April 7, 2011 as contemplated in the Asset Purchase Agreement and this Order, (iii) apply the proceeds of the Sale towards the Debtor's obligations under the DIP Credit Agreement to pay the DIP Lenders in full, and (iv) execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement, including the assumption and assignment to the Purchaser of the Assigned Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale or which are otherwise reasonably requested by the Purchaser. The Purchaser shall not be required

to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Sale related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

5.       This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Liens, Claims or other interests in, against or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, the Purchased Assets and trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion of the Debtor's case to a chapter 7 case under the Bankruptcy Code. This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

**Transfer of the Purchased Assets**

6.       Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized and directed to transfer the Purchased Assets to the Purchaser on the Closing Date, including without limitation, by taking such actions as may be necessary to ensure the Purchaser has access to the Purchased Assets, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title to the Purchased Assets and, upon the DIP Lenders' receipt of payment in full, other than with respect to Assumed Liabilities, shall be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Liens, Claims or other interests to

attach to the net cash proceeds as set forth herein ultimately attributable to the property against or in which such Liens, Claims or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims or interests now have against the Purchased Assets, subject to any rights, claims and defenses the Debtor or its estate, as applicable, may possess with respect thereto. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities.

       7.      The Debtor and the landlords under the lease with respect to the real property located in Martinsburg, West Virginia and the leases with respect to the real property located in San Antonio, Texas (collectively, the "Real Property Leases") are authorized and directed, notwithstanding anything to the contrary that may be contained in such leases, to allow the Purchaser to enter upon and use all leased real property, including all buildings and other structures, facilities or improvements located on the real property, that is the subject of the Real Property Leases for the purpose of allowing the Purchaser to assemble and remove any Purchased Assets from such locations, without any liability to the landlord therefore, other than damages caused by the Purchaser or any of its employees, agents, contractors and representatives resulting from such entry and removal. Subject to Purchaser's right to occupy the Removal Locations (as defined in the Asset Purchase Agreement) during the Removal Period (as defined in the Asset Purchase Agreement), the Purchaser shall not interfere with the DIP Lenders' rights under Article VII of the DIP Credit Agreement to market and sell the Real Property Leases. Any purchaser of a Removal Location shall be subject to Purchaser's right to occupy the Removal Locations during the Removal Period. As of the date of this Order, the Debtor shall be current with all payment and other obligations under the Real Property Leases.

8.     The Debtor is hereby authorized to take any and all actions necessary to consummate the Asset Purchase Agreement, including any actions that otherwise would require further approval by shareholders or its board of directors without the need of obtaining such approvals.

9.     On the Closing Date and upon the DIP Lenders being paid in full, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Purchased Assets to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

10.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities.

11.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements,

instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

12. This Order is and shall be effective as a determination that, on the Closing Date, and upon payment of all obligations owed to the DIP Lenders in full, all Liens, Claims or other interest of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, other than Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

**Assumption and Assignment of Contracts**

13. The Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all Liens, Claims and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), and (b) execute and

deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Assigned Contracts to Purchaser.

14.     With respect to the Assigned Contracts:  (a) each Assigned Contract is an executory contract or unexpired lease, as applicable, under section 365 of the Bankruptcy Code; (b) the Debtor may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtor may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Purchaser of each Assigned Contract have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to the Purchaser, and following the Closing remain in full force and effect for the benefit of Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, and the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Purchaser; and (f) upon Closing and the DIP Lenders' receipt of payment in full, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract.

15.     All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured at the Closing or as soon thereafter as practicable by payment of the Cure Amounts. To the extent that any counterparty to an Assigned Contract did not timely object to its Cure Amount or raise any other alleged breach of contract in accordance with the procedures set forth in the Motion, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective Assigned Contracts to the Purchaser.

16.     Unless otherwise agreed and stated on the record at the Sale Hearing, the Cure Amounts (which Cure Amounts are $0.00) are the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all defaults under the Assigned Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to Purchaser of the Assigned Contracts. In the event one or more agreements is added to or deleted from the Asset Purchase Agreement on or before the Closing, the Debtor will serve a Cure Notice on the counterparties to such Assigned Contracts and provide such counterparties with thirteen (13) days thereafter to object to the Cure Amount, unless such period is shortened by the Court. In the absence of any objection, upon passing of such thirteen (13) day period, such counterparties shall be deemed to have consented to the Cure Amount designated by the Debtor for their Assigned Contract and the assignment of such Assigned Contract to the Purchaser, with such assignment effective, along with all other Assigned Contracts, as of the Closing Date.

17.     Upon the Debtor's assignment of the Assigned Contracts to the Purchaser under the provisions of this Order and any additional orders of this Court and payment of any

Cure Amounts pursuant to the provisions of this Order, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by the Purchaser under such Assigned Contract or (b) otherwise take action against the Purchaser as a result of the Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract. Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor or Purchaser, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or, against Purchaser, any counterclaim, defense, setoff or any other Claim asserted or assertable against the Debtor; and (ii) imposing or charging against Purchaser or any of its affiliates, successors, or assignees any rent accelerations, assignment fees, increases or any other fees as a result of the Debtor's assumption and assignments to Purchaser of the Assigned Contracts. The validity of such assumption and assignments of the Assigned Contracts shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assigned Contract relating to such contract's or lease's respective Cure Amount.

18.    Except as provided in the Asset Purchase Agreement or this Order, after the Closing, and the DIP Lenders' receipt of payment in full, the Debtor and its estate shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtor, its successors or assigns, its property or its assets or estate.

19.    The failure of the Debtor or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions,

or of the Debtor's and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

**Prohibition of Actions Against the Purchaser**

20.     Except for the Assumed Liabilities, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtor and any non-Debtor affiliate, liabilities relating to or arising from any Environmental Laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.

21.     Except with respect to Assumed Liabilities, and provided the DIP Lenders are paid in full on April 7, 2011, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in

connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of its affiliates, its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens, Claims or interests in and to the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, successors, agents, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, any of its affiliates, successors, agents, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, successors, agents, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, any of its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets. On the Closing Date, and receipt by the DIP Lenders of payment in full, or as soon as possible thereafter, each creditor is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims and other interests in or on the Purchased Assets (except Assumed Liabilities), if any, as provided for herein, as such Liens, Claims or other interests may have been recorded or may otherwise exist.

22.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Order, or that would otherwise affect the consummation of such transactions.

23.     The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the Debtor, its estate and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, including under Paragraphs 20 through 22 hereof, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against the Debtor or any of the Purchased Assets, other than holders of Liens or Claims relating to the Assumed Liabilities.   The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

**Other Provisions**

24.     The consideration provided by the Purchaser to the Debtor pursuant to the Asset Purchase Agreement for the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under any other laws of the United States, any state, territory, possession or the District of Columbia.

25.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in

section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

26. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) this chapter 11 case, (ii) any subsequent chapter 7 case into which this chapter 11 case may be converted, or (iii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

27. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Debtor and Purchaser are authorized to close the Sale immediately upon entry of this Order.

28. Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtor's estate.

29. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

30. The failure specifically to include any particular provision of the Asset Purchase Agreement or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and all related ancillary documents be authorized and approved in their entirety; provided, however, that this Order shall govern if there is any inconsistency between the Asset

Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

31. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

32. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser; (b) interpret, implement and enforce the provisions of this Order; (c) protect Purchaser against any Liens, Claims or other interest in or against the Debtor or the Purchased Assets of any kind or nature whatsoever, and (d) enter any orders under sections 363 or 365 of the Bankruptcy Code with respect to the Assigned Contracts.

33. Any amounts payable by the Debtor under the Asset Purchase Agreement or any of the documents delivered by the Debtor in connection with the Asset Purchase Agreement shall be paid in the manner provided in this Order and the Asset Purchase Agreement, without further order of this Court, and shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the

Bankruptcy Code, shall have the other protections provided in the Bid Procedures Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with Purchaser, its successors, or assigns.

34.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.     Nothing in this Order or any agreement entered into under this Order releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

36.     This Order constitutes an itemized statement of the property sold, the name of the Purchaser, and the price received for the property as a whole as required by Rule 6004(f)(1) of the Bankruptcy Rules.

37.     The assets that are the subject of the UCC-1 Financing Statement Number 2010 0652598 filed by Liebherr-International Deutschland GmbH's ("Liebherr") with the Delaware Department of State (the "Liebherr Assets") are not Purchased Assets and will be excluded from the sale transaction under the Asset Purchase Agreement.  In addition, the automatic stay is lifted as to the Liebherr Assets to allow any party to exercise their rights and remedies as to the Liebherr Assets.  The Debtor shall provide reasonable access and cooperation to Liebherr or any other party exercising their rights and remedies to the Liebherr Assets.

38.     From the proceeds of the Sale, the Debtor shall set aside the amount of $200,000.00 in a segregated account as adequate protection for the secured post-petition year 2011 claim of Bexar County pertaining solely to the personal property tax related to the Assets sold pursuant to this Order.  The year 2011 post-petition liens of Bexar County shall attach to

these proceeds to the same extent and with the same priority as the post-petition lien it held against the Assets. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the administrative claim of Bexar County, nor a cap on the amounts it may be entitled to receive for its post-petition claim. Furthermore, the administrative claim and post-petition lien of Bexar County shall remain subject to all objections any party would otherwise be entitled to raise as to the priority, validity or extent of such post-petition lien. These funds may be distributed upon agreement between Bexar County and the Debtor, or by subsequent order of the Court, duly noticed to Bexar County and its counsel. Bexar County's pre-petition claims shall remain secured and remain adequately protected as a result of the replacement liens granted to Bexar County pursuant to the DIP Financing Order. For the avoidance of doubt, notwithstanding the foregoing, as provided in this Order, Bexar County's lien shall not attach to the Purchased Assets.

39.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in this chapter 11 case, the terms of this Order shall govern.

Dated: April 7, 2011
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE