# **EXHIBIT 1**

# FIFTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT

THIS FIFTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT (the "Fifth Amendment"), is entered into as of April 7, 2011, by and among Emivest Aerospace Corporation, a Delaware corporation and a debtor-in-possession (the "Borrower"), Counsel RB Capital, LLC, a Delaware limited liability company ("Counsel RB Lender") and EAI Capital, LLC a Delaware limited liability company ("Hilco Lender," and together with the Counsel RB Lender, individually an "Assigning Lender" and collectively the "Assigning Lenders"), Counsel RB Capital, LLC, a Delaware limited liability company in its capacity as the agent for the Assigning Lenders (the "Assigning Lenders' Agent"), and Action Aviation Limited (the "New Lender" and, together with the other parties to this Fifth Amendment set forth in this paragraph, the "Parties").

WHEREAS, on October 25, 2010, the Bankruptcy Court entered the Interim Financing Order approving on an interim basis the post-petition financing (the "DIP Financing") to be made available by the Assigning Lenders to the Debtor pursuant to the Credit Agreement (defined below) and the marketing and consulting services of the Assigning Lenders' Agent set forth in Article VII of the Credit Agreement;

WHEREAS, on October 27, 2010, the Borrower, the Assigning Lenders and the Assigning Lenders' Agent entered into a Debtor-In-Possession Credit and Security Agreement (as amended, the "Credit Agreement") pursuant to which the Assigning Lenders agreed to make post-petition loans and advances to the Borrower in an aggregate principal amount not to exceed $4,000,000 at any one time outstanding;

WHEREAS, on November 24, 2010, the Bankruptcy Court entered the Final Financing Order authorizing on a final basis the post-petition financing made available by the Assigning Lenders to the Borrower pursuant to the Credit Agreement;

WHEREAS, in connection with the entry of the Final Financing Order, the Borrower, the Assigning Lenders and the Assigning Lenders' Agent entered into the First Amendment to Debtor-In-Possession Credit and Security Agreement dated November 29, 2010 to amend the Credit Agreement in the manner set forth in the First Amendment;

WHEREAS, in connection with the Borrower's efforts to market and sell the Borrower's assets as a going concern, the Borrower, the Assigning Lenders and the Assigning Lenders' Agent entered into the Second Amendment to Debtor-In-Possession Credit and Security Agreement dated January 25, 2011 to amend the Credit Agreement in the manner set forth in the Second Amendment;

WHEREAS, in connection with the Borrower's efforts to market and sell the Borrower's assets as a going concern, the Borrower, the Assigning Lenders and the

Assigning Lenders' Agent entered into the Third Amendment to Debtor-In-Possession Credit and Security Agreement dated February 10, 2011 (the "Third Amendment") to amend the Credit Agreement in the manner set forth in the Third Amendment;

WHEREAS, pursuant to the Third Amendment, the Borrower was granted until March 16, 2011 for the Bankruptcy Court to have entered the Sale Order and until March 17, 2011 to consummate a Sale Transaction;

WHEREAS, in connection with the Borrower's efforts to market and sell the Borrower's assets as a going concern, the Borrower, the Assigning Lenders and the Assigning Lenders' Agent entered into the Fourth Amendment to Debtor-In-Possession Credit and Security Agreement dated as of March 17, 2011 (the "Fourth Amendment") to amend the Credit Agreement in the manner set forth in the Fourth Amendment;

WHEREAS, pursuant to the Fourth Amendment, the Borrower was granted until April 6, 2011 for the Bankruptcy Court to have entered the Sale Order and until April 7, 2011 to consummate a Sale Transaction;

WHEREAS, the Borrower has obtained conditional approval of a Sale Transaction that will pay the Assigning Lenders $3,300,000 in net sale proceeds in partial payment of the $4,500,000 (the "Payoff Amount") necessary to pay the Assigning Lenders in full, except for $29,035 (the "Hilco Payoff Amount");

WHEREAS, the Borrower has obtained financing in the amount of $1,170,965 (the "Replacement Funding") from the New Lender that will pay the remaining balance of the Payoff Amount required to pay the Assigning Lenders in full;

WHEREAS, to facilitate the funding by the New Lender of the Replacement Funding and payment to the Assigning Lenders of the Payoff Amount, the Parties have agreed that the Assigning Lenders will assign their interest in the DIP Financing to the New Lender (other than the Assigning Lenders' and the Assigning Lenders' Agent's rights and interest under Sections 7.1, 7.3, 7.4 and 7.5 of the Credit Agreement, including, without limitation, the rights to the Leased Property Disposition Fee (collectively, the "Real Estate Services Provisions")) to evidence and secure the DIP Financing as so assigned to the New Lender in the amount of the Replacement Funding, and as further modified by this Fifth Amendment.

NOW, THEREFORE, in consideration of the premises, and the covenants, agreements, representations and warranties set forth herein, the Parties agree as follows:

1. Definitions.

(a) Unless otherwise defined herein, capitalized terms used in this Fifth Amendment shall have the meanings set forth in the Credit Agreement.

(b) Effective as of the date hereof, the "New Lender" shall be and replace the Assigning Lenders as "Lenders" for all purposes, other than with respect to the Real Estate Services Provisions under the DIP Financing, the Credit Agreement and the orders approving the DIP Financing, as amended.

(c) Effective as of the date hereof the definition of "Maturity Date" is deleted and replaced in its entirety to read as follows:

"Maturity Date" date means October 7, 2011.

2. <u>Payoff and New DIP Financing Amount</u>. Assigning Lenders and Assigning Lenders' Agent acknowledge and agree that upon receipt by them today of $4,500,000 they will be paid in full, will be deemed to have assigned all of their right, title and interest, other than with respect to the Real Estate Services Provisions, in the DIP Financing to the New Lender, and will have no further right, title or interest in the DIP Financing other than with respect to the Real Estate Services Provisions and except as set forth in this Fifth Amendment. Borrower and the New Lender acknowledge and agree that upon the New Lender's advancing the Replacement Funding to Borrower on the date hereof, the amount of the DIP Financing will be $1,170,965.

3. <u>No Further Advances</u>. Except for the advance made by the New Lender set forth in paragraph 2 above, the New Lender shall have no further obligation to make any additional Advances or loans under the Credit Agreement.

4. <u>Sale Order Motion and Conditional Sale Order</u>. The Assigning Lenders and the Assigning Lenders' Agent approve the form and substance of the Conditional Sale Order to be submitted to the Court for entry today, which provides for the sale by the Borrower of certain of its assets to MT, LLC, approval of which was requested by the Borrower's Emergency Motion filed on April 5, 2011 (Docket No. 414).

5. <u>Real Estate Services Provisions</u>. The Assigning Lenders' Agents' rights with respect to the Real Estate Services Provisions and to be paid any Leased Property Disposition Fee shall remain in full force and effect, on the same terms, covenants and conditions as set forth in the Final Financing Order and the Credit Agreement as amended, including without limitation by Section 7 of the Fourth Amendment, except that the exclusive right to provide the Real Estate Services shall expire on September 1, 2011, and New Lender's agent can market the leases as well. Notwithstanding the expiration of the Assigning Lender's exclusive right to provide the Real Estate Services, the Assigning Lenders shall still receive the Leased Property Disposition Fee upon any sale of the Leased Properties. The New Lender shall have no interest in or rights with respect to the Real Estate Services Provisions, including, without limitation, any Leased Property Disposition Fee.

6. **The Hilco Open Amount.** The Hilco Open Amount shall not accrue interest, but shall be paid to the Assigning Lenders together with the Leased Property Disposition Fee from any sale proceeds of the Leased Properties before any amounts are paid to any other party.

7. **Revisions to Credit Agreement.**

(a) Any and all references in the Credit Agreement to the "Budget" or "Budget Compliance Certificate" are hereby deleted in their entirety.

(b) Any and all references in the Credit Agreement to the "Buyers Premium Fee," "Commitment Fee, " "Exit Fee" and "Redemption Fee" are hereby deleted in their entirety.

(c) Article VII is hereby deleted in its entirety and replaced with the following:

"[RESERVED]"

(d) The definition of "Professional Fee Carve-Out" shall be deleted in its entirety and replaced with the following:

""Professional Fee Carve-Out" shall mean $750,000."

8. **Distribution of Proceeds.** Proceeds from the sale or disposition of the Leased Real Property or the liquidation of Borrower shall be applied as follows:

(a) *First*, to the Professional Fee Carve-Out as follows - (i) $375,000 upon the sale of the Borrower's interest in the West Virginia Lease and (ii) $375,000 upon the sale of the Borrower's interest in the San Antonio Lease;

(b) *Second*, to the then outstanding principal owed to the New Lender pursuant to this Agreement;

(c) *Third*, to the then outstanding interest at the rate of 12% per annum on the outstanding balance of the Replacement Funding to the New Lender pursuant to this Agreement;

(d) *Fourth*, to the payment of the New Lender fee of $200,000 to the New Lender (the "New Lender Fee");

(e) *Fifth*, to any other valid secured claims and liens;

(f) *Sixth*, to the payment of any remaining Professional Fees;

4

9. <u>New Lender Fee</u>. The New Lender Fee shall constitute part of the Obligations and Indebtedness.

10. \<u>Reaffirmation of Representations and Warranties</u>. Other than issues related to the transfer of assets by the Borrower pursuant to the Sale Transaction, nothing has come to the attention of the Borrower that would lead it to believe that the representations and warranties made by it in Article V of the Credit Agreement do not remain true, correct and complete as of the date hereof (except as to such representations and warranties which are made as of a specified date, as of such date).

11. <u>Reaffirmation of Covenants</u>. Other than with respect to Sections 6.1(a) and (g) of the Credit Agreement, the Borrower reaffirms the affirmative and negative covenants set forth in Article VI of the Credit Agreement and the other Loan Documents as fully and completely as if set forth herein at length, and agrees that such covenants shall remain in full force and effect until payment in full of the Indebtedness.

12. <u>Conditions Precedent</u>. The agreement of the Assigning Lenders' and the Assigning Lenders' Agent to amend the Credit Agreement and to forbear from exercising their remedies thereunder are conditioned and shall be effective upon each of the following having occurred on or before April 7, 2011: (a) the Bankruptcy Court having entered an order approving this Fifth Amendment in form and substance satisfactory to the Assigning Lenders' Agent, (b) this Fifth Amendment having been duly executed and delivered by the Borrower and the New Lender to the Assigning Lenders' Agent, and (c) the Borrower having been paid the Payoff Amount.

13. <u>Confirmation of Obligations</u>.

(a) The Borrower acknowledges and agrees that, as of the date of this Fifth Amendment, all of the outstanding Obligations of the Borrower under the Credit Agreement and the other Loan Documents are valid and outstanding, and the Borrower has no rights of offset, defenses, claims or counterclaims with respect to any of the Obligations under the Loan Documents. The Borrower further acknowledges and agrees that neither the Assigning Lenders nor the New Lender have any obligations to fund the Carve-Out under the Credit Agreement or to make and further Advances thereunder.

(b) IN CONSIDERATION OF, AMONG OTHER THINGS, THE ASSIGNING LENDERS' AND ASSIGNING LENDERS' AGENT'S EXECUTION AND DELIVERY OF THIS AMENDMENT, THE BORROWER AND THE NEW LENDER HEREBY FOREVER AGREE AND COVENANT NOT TO SUE OR PROSECUTE AGAINST THE ASSIGNING LENDERS AND THE ASSIGNING LENDERS' AGENT AND HEREBY FOREVER WAIVES, RELEASES AND DISCHARGES, TO THE FULLEST EXTENT PERMITTED BY LAW, EACH OF THEM FROM ANY AND ALL CLAIMS THAT BORROWER OR THE NEW

LENDER NOW HAS OR HEREAFTER MAY HAVE, OF WHATSOEVER NATURE AND KIND, WHETHER KNOWN OR UNKNOWN, WHETHER NOW EXISTING OR HEREAFTER ARISING, WHETHER ARISING AT LAW OR IN EQUITY, AGAINST THE ASSIGNING LENDERS AND THE ASSIGNING LENDERS' AGENT, BASED IN WHOLE OR IN PART ON FACTS, WHETHER OR NOT NOW KNOWN, EXISTING ON OR BEFORE THE DATE OF THIS AMENDMENT, THAT RELATE TO, ARISE OUT OF OR OTHERWISE ARE IN CONNECTION WITH: (I) ANY OR ALL OF THE LOAN DOCUMENTS OR TRANSACTIONS CONTEMPLATED THEREBY OR ANY ACTIONS OR OMISSIONS IN CONNECTION THEREWITH; OR (II) ANY ASPECT OF THE DEALINGS OR RELATIONSHIPS BETWEEN OR AMONG THE BORROWER, ON THE ONE HAND, AND THE ASSIGNING LENDERS AND/OR THE ASSIGNING LENDERS' AGENT, ON THE OTHER HAND, RELATING TO ANY OR ALL OF THE LOAN DOCUMENTS, TRANSACTIONS, ACTIONS OR OMISSIONS REFERENCED IN CLAUSE (I) HEREOF. THE EXECUTION OF THIS AMENDMENT BY THE BORROWER AND THE NEW LENDER SHALL CONSTITUTE A RATIFICATION, ADOPTION, AND CONFIRMATION BY THE BORROWER OF THE FOREGOING GENERAL RELEASE OF ALL CLAIMS AGAINST THE ASSIGNING LENDERS AND THE ASSIGNING LENDERS' AGENT WHICH ARE BASED IN WHOLE OR IN PART ON FACTS, WHETHER OR NOT NOW KNOWN OR UNKNOWN, EXISTING ON OR PRIOR TO THE EXECUTION OF THIS AMENDMENT. IN ENTERING INTO THIS AMENDMENT, THE BORROWER AND THE NEW LENDER CONSULTED WITH, AND HAS BEEN REPRESENTED BY, LEGAL COUNSEL AND EXPRESSLY DISCLAIMS ANY RELIANCE ON ANY REPRESENTATIONS, ACTS OR OMISSIONS BY ANY OF THE ASSIGNING LENDERS AND ASSIGNING LENDERS' AGENT AND HEREBY AGREES AND ACKNOWLEDGES THAT THE VALIDITY AND EFFECTIVENESS OF THE RELEASES SET FORTH ABOVE DO NOT DEPEND IN ANY WAY ON ANY SUCH REPRESENTATIONS, ACTS OR OMISSIONS OR THE ACCURACY, COMPLETENESS OR VALIDITY HEREOF. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS AMENDMENT, ANY LOAN DOCUMENT, AND PAYMENT IN FULL OF PAYOFF AMOUNT.

(c) IN CONSIDERATION OF, AMONG OTHER THINGS, THE NEW LENDER'S EXECUTION AND DELIVERY OF THIS FIFTH AMENDMENT, THE BORROWER HEREBY FOREVER AGREES AND COVENANTS NOT TO SUE OR PROSECUTE AGAINST THE NEW LENDER AND HEREBY FOREVER WAIVES, RELEASES AND DISCHARGES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE NEW LENDER FROM ANY AND ALL CLAIMS THAT BORROWER NOW HAS OR HEREAFTER MAY HAVE, OF WHATSOEVER NATURE AND KIND, WHETHER KNOWN OR UNKNOWN, WHETHER NOW EXISTING OR HEREAFTER ARISING, WHETHER ARISING AT LAW OR IN EQUITY, AGAINST

6

THE NEW LENDER, BASED IN WHOLE OR IN PART ON FACTS, WHETHER OR NOT NOW KNOWN, EXISTING ON OR BEFORE THE DATE OF THIS AMENDMENT, THAT RELATE TO, ARISE OUT OF OR OTHERWISE ARE IN CONNECTION WITH: (I) ANY OR ALL OF THE LOAN DOCUMENTS OR TRANSACTIONS CONTEMPLATED THEREBY OR ANY ACTIONS OR OMISSIONS IN CONNECTION THEREWITH; OR (II) ANY ASPECT OF THE DEALINGS OR RELATIONSHIPS BETWEEN OR AMONG THE BORROWER, ON THE ONE HAND, AND THE NEW LENDER, ON THE OTHER HAND, RELATING TO ANY OR ALL OF THE LOAN DOCUMENTS, TRANSACTIONS, ACTIONS OR OMISSIONS REFERENCED IN CLAUSE (I) HEREOF. THE EXECUTION OF THIS AMENDMENT BY THE BORROWER SHALL CONSTITUTE A RATIFICATION, ADOPTION, AND CONFIRMATION BY THE BORROWER OF THE FOREGOING GENERAL RELEASE OF ALL CLAIMS AGAINST THE NEW LENDER WHICH ARE BASED IN WHOLE OR IN PART ON FACTS, WHETHER OR NOT NOW KNOWN OR UNKNOWN, EXISTING ON OR PRIOR TO THE EXECUTION OF THIS AMENDMENT. IN ENTERING INTO THIS AMENDMENT, THE BORROWER CONSULTED WITH, AND HAS BEEN REPRESENTED BY, LEGAL COUNSEL AND EXPRESSLY DISCLAIMS ANY RELIANCE ON ANY REPRESENTATIONS, ACTS OR OMISSIONS BY THE NEW LENDER AND HEREBY AGREES AND ACKNOWLEDGES THAT THE VALIDITY AND EFFECTIVENESS OF THE RELEASES SET FORTH ABOVE DO NOT DEPEND IN ANY WAY ON ANY SUCH REPRESENTATIONS, ACTS OR OMISSIONS OR THE ACCURACY, COMPLETENESS OR VALIDITY HEREOF. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS AMENDMENT, ANY LOAN DOCUMENT, AND PAYMENT IN FULL OF THE OBLIGATIONS UNDER THE LOAN DOCUMENTS.

14. **Effect of Amendment**. Except as amended by this Fifth Amendment, all terms and provisions of the Credit Agreement and the other Loan Documents and all rights and remedies of the New Lender and obligations of the Borrower thereunder, shall remain in full force and effect and are hereby ratified, adopted and confirmed in all respects. Any and all references to the Credit Agreement in any other Loan Document shall be deemed to refer to the Credit Agreement, as amended by this Fifth Amendment. To the extent that any provision of this Fifth Amendment is or may be inconsistent with any term or provision in any Loan Document, the terms and provisions of this Fifth Amendment shall govern and control. Nothing contained herein shall prejudice the rights of the Borrower and the New Lender to agree or not agree to further amendments, modifications and/or supplements to the Credit Agreement, other than with respect to the Real Estate Provisions, which may not be modified, supplemented or amended, without the prior written consent of the Assigning Lenders and the Assigning Lenders' Agent.

15. **Entire Agreement**. This Fifth Amendment constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof and

supersedes any prior agreements, written or oral, with respect to the subject matter hereof.

16. <u>Counterparts</u>. This Fifth Amendment may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Fifth Amendment by facsimile transmission shall be effective as delivery of a manually executed counterpart. Any party so executing this Fifth Amendment by facsimile transmission shall promptly deliver a manually executed counterpart, provided that any failure to do so shall not affect the validity of the counterpart executed by facsimile transmission.

17. <u>Governing Law</u>. This Fifth Amendment shall be governed by and construed in accordance with the laws of the State of Delaware, and subject to the provisions of Section 10.14 of the Credit Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Fifth Amendment to be executed by their respective officers thereunto duly authorized as of the date set forth in the initial caption of this Agreement.

**BORROWER:**

**EMIVEST AEROSPACE CORPORATION**

By: _____
    Name:
    Title:

**ASSIGNING LENDERS:**

**COUNSEL RB CAPITAL, LLC**

By: _____
    Name:
    Title:

**EAI CAPITAL, LLC**

By: _____
    Name:

Title:

**ASSIGNING LENDERS' AGENT:**

**COUNSEL RB CAPITAL, LLC**

By: _____
    Name:
    Title:

**NEW LENDER:**

**ACTION AVIATION LIMITED**

By: _____
Name:
Title: