# ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT** ("**Agreement**") is made as of this 18th day of April, 2011, by and among Emivest Aerospace Corporation (f/k/a Sino Swearingen Aircraft Corporation), a Delaware corporation, as debtor and debtor-in-possession operating under chapter 11 of the Bankruptcy Code (as hereinafter defined) ("**Assignor**"), and Smart Traveling Inc, a Texas corporation (the "**Assignee**").

## RECITALS

A.     Assignor is currently the tenant under the San Antonio International Airport Lease No. 124099, dated as of March 28, 1986, between the City of San Antonio as Landlord (the "**Landlord**") and Jaffe Aerospace Corporation as Tenant, as amended by that certain Amendment of Lease dated May 4, 1992 between the Landlord and Tenant, as further amended and partially assigned by that certain Partial Assignment and Amendment of Lease dated June 28, 1993 between the Landlord and Comtran International, Inc., as further amended by that certain Amendment of Lease dated June 28, 1993, between the Landlord and Comtran International, Inc., as further amended by that certain Amendment of Lease dated April 19, 1996 between the Landlord and Comtran International, Inc., as assigned by that certain Assignment and Assumption dated November 17, 1997 between Comtran International, Inc. and Aviation Acquisition Corporation, and as further amended by that certain Amendment of Lease dated August 29, 2000 between the Landlord and Assignor (the "**Lease**") for the premises located at 1770 Skyplace Boulevard, San Antonio, Texas 78216 and more specifically described in the Lease (the "**Premises**").  A copy of the Lease is attached hereto as <u>Exhibit A</u>.

B.     Assignor is a debtor-in-possession in Case No. 10-13391 (MFW) in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") filed on October 20, 2010 as a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"); and

C.     Assignor desires to assign all of Assignor's right, title and interest as tenant under the Lease; and Assignee is desirous of assuming, pursuant to Section 365(f) of the Bankruptcy Code and on the terms and conditions set forth herein, all of Assignor's obligations under the Lease.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.  <u>Assignment and Assumption</u>.

(a) Pursuant to the terms and conditions set forth in this Agreement, Assignor hereby grants, assigns, sets over and conveys to Assignee all of Assignor's right, title, and interest in the Premises, the Lease and any security deposit under the Lease as of the date hereof; provided, however, in addition to the Purchase Price set forth below, Assignee, pursuant to the San Antonio Lease, shall be required to obtain a letter of credit up to a required amount of $61,200.  Assignee hereby accepts the foregoing assignment,

without any merger of title relative to such interest with any other interest of Assignee in the Lease, whether as landlord or otherwise, and assumes and agrees to perform and fulfill all of Assignor's duties, responsibilities and obligations under the Lease arising or occurring from and after the Closing.

(b) The amount due the landlord of the Lease for cure costs of the Lease is $0.

(c) Further, pursuant to Section 365(f) of the Bankruptcy Code, on and after the Closing, Assignor and its estate shall be relieved from any liability for any breach of the Lease occurring after the Closing, and Assignee agrees to defend and indemnify Assignor against, and hold Assignor harmless from, any and all claims, actions, proceedings, suits, costs, liabilities, losses, damages or expenses, arising or occurring after the Closing in connection with the performance or observance or the failure or refusal to perform or observe any agreement or obligation of the tenant under the Lease or any term or provision thereof required to be performed by the tenant under the Lease after the date of this Agreement.

2. Purchase Price; Deposit.

(a) Provided the conditions to closing have been satisfied, the aggregate purchase price to be paid by Assignee in exchange for the assignment of the Lease hereunder (the "**Purchase Price**") is One Million Two Hundred Fifty Thousand Dollars ($1,250,000). Assignee shall not be responsible to pay any commissions in respect of the Assignment of the Lease. At the Closing, Assignee shall deliver or cause to be delivered to Assignor the Purchase Price in immediately available funds by wire transfer to an account of Assignor designated by Assignor.

(b) Upon complete execution of this Agreement, Assignee shall deposit the entire amount of the Purchase Price (the "**Deposit**") with Cohen Tauber Spievack & Wagner P.C. (the "**Escrow Agent**") to be held by Escrow Agent in its client trust account in accordance with an escrow agreement among Assignor, Assignee and Escrow Agent (the "**Escrow Agreement**"). The Escrow Agreement shall provide that the Deposit: (i) will be delivered to Assignor at Closing if all of the conditions to closing (as set forth in Section 5 herein) have been timely satisfied; or (ii) returned to Assignee if all of the conditions to closing (as set forth in Section 5 herein) have not been timely satisfied.

3. Removal Period. The Assignee shall allow the Assignor and MT, LLC to enter upon and use the Premises for a period of up to one hundred twenty (120) days following April 7, 2011 (such period referred to as the "**Removal Period**") for the purpose of allowing MT, LLC to assemble the assets purchased by MT pursuant to that certain Asset Purchase Agreement by and between the Debtor and MT, LLC (the "**APA**"), the terms of which were approved by order of the Bankruptcy Court, dated April 7, 2011 (the "**Sale Order**") that are located at the Premises and to remove such assets from the Premises, in accordance with and on the terms and conditions set forth in the APA and the Sale Order. From and after the Closing, that portion of any amounts required to be paid by MT, LLC to Assignor pursuant to Section 4.08 of the APA that are attributable to the Lease shall be payable to Assignee.

4. <u>Release</u>. Assignee agrees to acknowledge and agree, effective upon the date of entry by the Bankruptcy Court of the Order (as defined herein) and consummation of the Closing, that all obligations of Assignor, as tenant under the Lease, have been satisfied through the date of the Closing or will as of that time be waived and released, with the result that Assignor shall not have any obligation whatsoever under the Lease arising from and after the date of the Closing. Effective upon receipt of the entered Order and consummation of the Closing, Assignee, for itself, its successors and assigns, will hereby release, acquit, satisfy and forever discharge Assignor, Assignor's affiliates, owners, parent companies and subsidiaries, and their respective past, present and future shareholders, officers, directors, employees, agents, attorneys, representatives, guarantors and predecessors (the "**Released Parties**") from, and does agree effective upon the date of entry by the Bankruptcy Court of the Order to covenant and agree never to institute or cause to be instituted any suit or other form of action or proceeding of any kind or nature whatsoever against the Released Parties based upon any claims, demands, indebtedness, agreements, promises, causes of action, obligations, damages or liabilities of any kind or nature whatsoever, in law or equity, whether or not known, suspected or claimed, that Assignee has ever had, claimed to have, now has or may hereafter have or claim to have, if any, against the Released Parties by reason of the matter, cause, thing, document, agreement, instrument, act or omission of the Released Parties, arising out of the Lease from and after the date of the Closing.

5. <u>Conditions to Closing</u>. Notwithstanding anything to the contrary contained in this Agreement, the Assignee's obligation to close hereunder is subject to the occurrence of the following: (i) the Order shall have been entered by the Bankruptcy Court on or before April 21, 2011 and shall not be subject to a stay; and (ii) the Assignor shall not be in breach of any of any term, covenant, condition, representation or warranty contained in this Agreement.

6. <u>Closing</u>. The consummation of the assignment and assumption of the Lease pursuant to this Agreement (the "**Closing**") shall take place immediately following the entry by the Bankruptcy Court of the Order, and shall be held at the offices of Assignor's counsel or at such other location as the parties shall reasonably designate.

7. <u>Court Approval</u>. Promptly following mutual execution and delivery of this Agreement, Assignor shall, at Assignor's sole cost and expense, file a motion with the Bankruptcy Court seeking entry of an the order of the Bankruptcy Court in form and substance acceptable to Assignee approving the assignment and assumption of the Lease on the terms and conditions set forth herein (the "**Order**"; a copy of the Order is attached to this Agreement as <u>Exhibit B</u>) and shall use its reasonable efforts to obtain entry of the Order. This Agreement, however, shall constitute an irrevocable offer by Assignee to consummate the transactions described herein on the terms hereof subject to entry of the Order.



8. <u>Termination</u>. If the Bankruptcy Court does not enter the Order by April 21, 2011, or if the other conditions to closing set forth in Section 5 above have not been satisfied by April 21, 2011, then this Agreement shall terminate and neither party shall have any obligation or liability to the other and the Deposit shall be returned to Assignee. This Agreement shall be subject to higher and better offers and the Assignor shall have the right to terminate this Agreement at any time prior to entry of the Order in the event the Assignor receives a higher and better offer from a party other than Assignee, in which case the Deposit shall be returned to Assignee.

9. <u>Free and Clear of Liens, Claims and Encumbrances</u>. At Closing, the assignment and assumption of the Lease shall be made free and clear of any liens, claims and encumbrances against Assignor's interest in the Lease.

10. <u>Adequate Assurance Data</u>. Prior to or with the execution of this Agreement by Assignee, Assignee shall supply Assignor with (i) the full name and identity of Assignee; (ii) a current financial statement or such other proof of financial condition of Assignee; and (iii) such other documentation as may be reasonably requested by the Bankruptcy Court to demonstrate "adequate assurance of future performance" by Assignee.

11. <u>Representations and Warranties</u>.

(a) <u>Assignor</u>. Assignor hereby represents and warrants to Assignee the following:

(i)     Subject to the entry and effectiveness of the Order, this Agreement has been duly and validly executed and delivered by Assignor and constitutes a valid and binding agreement of Assignor, enforceable against Assignor in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditor's rights generally from time to time in effect and to general equitable principles;

(ii)     There has not been and is now no assignment by Assignor of the Lease, or any rights therein, to any party;

(iii)     The cure cost to be paid to the landlord of the Lease for Assignor's assumption of the Lease is $0.

(b) <u>Assignee</u>. Assignee hereby represents and warrants to Assignor the following:

(i)     This Agreement has been duly and validly executed and delivered by Assignee and constitutes a valid and binding agreement of Assignee, enforceable against Assignee in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditor's rights generally from time to time in effect and to general equitable principles;

(ii)     That Assignee will, at all times after the date of this Agreement, exercise reasonable efforts to effect the terms and conditions hereof.

12. "As Is" Transaction. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, ASSIGNEE HEREBY ACKNOWLEDGES AND AGREES THAT, THE ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE INTEREST (INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED FROM OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE PREMISES; THE PHYSICAL CONDITION OF THE PREMISES OR THE IMPROVEMENTS; THE SQUARE FOOTAGE OF THE PREMISES OR THE IMPROVEMENTS; THE PRESENCE OR ABSENCE OF ANY "HAZARDOUS MATERIALS" IN, ON OR ABOUT THE PREMISES OR ANY OTHER MATTER RELATING TO THE ENVIRONMENTAL CONDITION OF THE PREMISES; THE ZONING OF THE PREMISES; THE POSSIBILITY OF DEVELOPING OR USING THE PREMISES IN THE MANNER CONTEMPLATED BY ASSIGNOR OR OBTAINING ANY CONSENTS, PERMITS, APPROVALS, AUTHORIZATIONS OR ENTITLEMENTS IN CONNECTION THEREWITH; THE VALUE OF THE INTEREST; THE FITNESS OF THE PREMISES FOR ANY PARTICULAR PURPOSE OR USE; THE ACCURACY, COMPLETENESS, OWNERSHIP OR TRANSFERABILITY OF ANY DOCUMENTS OR OTHER MATERIALS FURNISHED TO ASSIGNEE WITH RESPECT TO THE PREMISES (OR ANY PORTION THEREOF); THE TITLE OF THE PREMISES; OR ANY OTHER MATTER OR THING RELATING TO THE PREMISES OR THE INTEREST). ASSIGNEE ALSO ACKNOWLEDGES THAT ASSIGNEE HAS CONDUCTED OR WAIVED THE RIGHT TO AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PREMISES AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE PREMISES AND/OR THE INTEREST AS ASSIGNEE DEEMED NECESSARY OR APPROPRIATE AND THAT ASSIGNEE IS ACQUIRING THE INTEREST HEREUNDER BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS OR ASSIGNEE'S INDEPENDENT JUDGMENT. ACCORDINGLY, ASSIGNEE HEREBY ACCEPTS THE PREMISES AND INTEREST "AS IS" AND "WITH ALL FAULTS."

13. Miscellaneous.

(a) This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes hereunder, and they each hereby consent to such jurisdiction.

(b) This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof.

(c) Assignor may assign its rights and obligations hereunder to any trustee appointed by the Bankruptcy Court. Assignee may not assign its rights and obligations hereunder to any party without Assignor's written consent and, following Bankruptcy Court approval, any assignment of this Agreement by Assignee must also be permitted by the terms of the Lease or agreed to by the Landlord.

(d) This Agreement may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement.

(e) Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder ("**Notices**") shall be in writing and shall be given as follows:  (i)  by hand delivery; (ii) by Federal Express or other reputable express courier service; or (iii) by facsimile transmission (other than for notices of default):

If to Assignor:

Emivest Aerospace Corporation
1770 Skyplace Boulevard
San Antonio, Texas 78216
Attn: Anthony Power, CEO
Facsimile:  (210) 258-3917

with a copy (which shall not constitute effective notice) to:

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Attn:  Timothy W. Walsh, Esq.; Jonathan Klein, Esq.
Facsimile:  (212) 884-8502

If to Assignee:

Smart Traveling Inc.
557 Sands
San Antonio, TX 78216
Attn:  Adrian Gamez
Facsimile: (210) 251-3565

With a copy to:

Kenneth Saks, Esq.
Oliva, Saks, Garcia & Curiel LLP
85 N.E. Loop 410 – Suite 200
San Antonio, TX 78216
Facsimile: (210) 308-6939

or at such other address or to such other addressee or to such other facsimile number as the party to be served with Notice shall have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice.  Notices shall be deemed to have been rendered or

given on the date received or on the date they are deemed to be received as hereinafter set forth. The inability to deliver Notices because of changed address of which no notice was given, or rejection or refusal to accept any Notice offered for delivery shall be deemed to be receipt of the Notice as for the date of such inability to deliver or rejection or refusal to accept delivery.

(f)  This Agreement can be amended only by a written instrument duly executed by each of the parties.

(g)  The parties agree to execute such additional instruments as may be reasonably necessary to carry out the provisions of this Agreement.

(h)  If any action is brought by either party against the other party, the prevailing party shall be entitled to recover court costs and reasonable attorneys' fees and costs actually incurred.

(i)  This Agreement is deemed to have been drafted jointly by the parties, and any uncertainty or ambiguity shall not be construed for or against either party as an attribution of drafting to either party

(j)  This Agreement may be executed in counterparts and by facsimile or other electronic signature and each such counterpart shall be deemed an original and all counterparts shall constitute but agreement.

[Signature Page Follows]



IN WITNESS WHEREOF, this Agreement has been duly executed this 18th day of April, 2011.

ASSIGNOR:

EMIVEST AEROSPACE CORPORATION

By: _____
Name: _Anthony power_
Title: _C.E.O_

ASSIGNEE:

SMART TRAVELING INC.

By: _____
Name: _____
Title: _____

**IN WITNESS WHEREOF,** this Agreement has been duly executed this 20th day of April, 2011.

<div style="margin-left: 40%;">

**ASSIGNOR:**

**EMIVEST AEROSPACE CORPORATION**

By: _____

Name: _____

Title: _____

**ASSIGNEE:**

**SMART TRAVELING INC.**

By: _____

Name: _PABLO HOYOS_

Title: _PRESIDENT_

</div>

# **EXHIBIT A**

**Lease**

[See Attached]



# CITY OF SAN ANTONIO

July 20, 2004

DEPARTMENT OF AVIATION
9800 AIRPORT BLVD., MO63
SAN ANTONIO, TEXAS 78216-4897
(210) 207-4889 (4TTY)
(210) 207-3450   FAX: (210) 207-3500

Sino Swearingen Aircraft Corporation
Attn: Ms. Carol Zuniga, Controller
1770 Skyplace Boulevard
San Antonio, Texas 78216

**RETURN RECEIPT REQUESTED-CERTIFIED MAIL NO. 7004 1350 0000 7876 6673**

RE:   San Antonio International Airport Assignment and Amendment of Lease with Sino
       Swearingen Aircraft Corporation (Sino), authorized pursuant to Ordinance No. 92380
       on August 24, 2000 - Lease No. 124099

Dear Ms. Zuniga:

As you may recall, rental rates are adjusted every five years in accordance with Provision 1,
"Adjustments in Rental Rates", of the Standard Provisions clause of your lease agreement with
the City of San Antonio.

Effective August 1, 2004, your rental rate will increase per square foot as noted below:

|  | Current Rate<br>Per Sq. Ft | New Rate<br>Per Sq. Ft. |
|---|---|---|
| Ground Space | $0.1460 | $0.1710 |

The basis for the rate change is provided in the attached computation of the economic
adjustment.

If you have any questions, please contact Mike Buecher at 210-207-3460 or via email at
mbuecher@sanantonio.gov.

Sincerely,

Ryan G. Martinez
Asst. Director of Aviation, Finance and Administration

Attachments

RATE ADJUSTMENT COMPUTATION
SAN ANTONIO INTERNATIONAL AIRPORT

FOR PERIOD 2004-2009

EFFECTIVE AUGUST 1, 2004

Reference: SAT Standard Provisions – Exhibit 1, Provision 1

Source: U.S.  Department of Labor – Bureau of Labor Statistics

| 2003 | Producer Prices All Commodities (2002 = 100) | Aggregate Weekly Payroll For Manufacturing (2002 = 100) |
|---|---|---|
| January | 103.2 | 97.6 |
| February | 104.9 | 97.2 |
| March | 107.7 | 97.3 |
| April | 104.3 | 95.7 |
| May | 104.2 | 96.5 |
| June | 105.3 | 97.8 |
| July | 105.0 | 94.2 |
| August | 105.3 | 96.7 |
| September | 105.6 | 98.5 |
| October | 106.3 | 97.6 |
| November | 106.0 | 99.3 |
| December | 106.4 | 100.1 |
| TOTAL | 1264.2 | 1168.5 |
| Monthly Average | 105.3 | 97.4 |

2003 Average of the two Indices =    101.4

### RATE ADJUSTMENT COMPUTATION

| 1992 | Producer Prices All Commodities (2002 = 100) | Aggregate Weekly Payroll For Manufacturing (2002 = 100) |
|---|---|---|
| January | 88.2 | 80.2 |
| February | 88.5 | 81.3 |
| March | 88.6 | 82.1 |
| April | 88.7 | 81.7 |
| May | 89.4 | 83.9 |
| June | 90.0 | 84.9 |
| July | 89.9 | 83.1 |
| August | 89.8 | 84.6 |
| September | 90.0 | 85.0 |
| October | 90.1 | 85.1 |
| November | 89.9 | 86.0 |
| December | 89.7 | 87.0 |
| TOTAL | 1072.8 | 1004.9 |
| Monthly Average | 89.4 | 83.8 |

2002 Common Average of the two Indices = 86.6

In accordance with the formula:

$$\frac{\text{2003 Common Average (2002 = 100)}}{\text{1992 Common Average (2002 = 100)}} = \frac{101.4}{86.6} = 1.170901 \text{ or}$$

an increase of 17.09% since 1992. Accordingly, an increase of 17.09% is required for 2004. A previous increase of 16.82% in 1999 was applied.

## SCHEDULE 5.1-A

## GROUND LEASE

[SEE ATTACHED]

| DEPT. / RESOURCE | | ROLLCALL | AYES | NAYS |
|---|---|---|---|---|
| BUILDING INSPECTIONS | | | | |
| BUILDING INSPECTIONS-HOUSE NUMBER | | | | |
| CITY WATER BOARD | | | | |
| CITY ATTORNEY | | | | |
| COMMERCIAL RECORDER | | | | |
| CONVENTION & VISITORS BUREAU | | | | |
| CONVENTION FACILITIES | | | | |
| ECONOMIC & EMPLOYMENT DEVELOPMENT | | | | |
| EQUAL EMPLOYMENT OPPORTUNITY | | | | |
| FINANCE DIRECTOR | | | | |
| ASSESSOR | | | | |
| CONTROLLER | | | | |
| TREASURY DIVISION | | | | |
| GRANTS | | | | |
| INTERNAL AUDIT | | | | |
| RISK MANAGEMENT | | | | |
| FIRE DEPARTMENT | | | | |
| HUMAN RESOURCES & SERVICES | | | | |
| INFORMATION RESOURCES | | | | |
| LIBRARY | | | | |
| MARKET SQUARE | | | | |
| METROPOLITAN HEALTH DISTRICT | | | | |
| MUNICIPAL COURTS | | | | |
| PARKS & RECREATION | | | | |
| PERSONNEL | | | | |
| PLANNING | | | | |
| POLICE DEPARTMENT | | | | |
| PUBLIC UTILITIES | | | | |
| PUBLIC WORKS | | | | |
| ENGINEERING | | | | |
| CENTRAL MAPPING | | | | |
| REAL ESTATE | | | | |
| TRAFFIC ENGINEERING | | | | |
| PURCHASING & GENERAL SERVICES | | | | |
| WASTEWATER MANAGEMENT | | | | |
| ZONING ADMINISTRATION | | | | |
| SPECIAL PROJECTS - CITY MANAGER | | | | |

CERTIFIED COPY OF CITY COUNCIL (Date)  MAR 27 1986

MOTION BY: _____ SECONDED BY: _____

ORD. NO. **62582**   ZONING CASE _____

RESOL. _____   PETITION _____

| | ROLLCALL | AYES | NAYS |
|---|---|---|---|
| MARIA BERRIOZABAL PLACE 1 | | | |
| JOE WEBB PLACE 2 | | | |
| HELEN DUTMER PLACE 3 | | | |
| FRANK D. WING PLACE 4 | | | |
| WALTER MARTINEZ PLACE 5 | | | |
| BOB THOMPSON PLACE 6 | | | |
| YOLANDA VERA PLACE 7 | | | |
| G.E. HARRINGTON PLACE 8 | | | |
| WEIR LABATT PLACE 9 | | ABSENT | |
| JAMES C. HASSLOCHER PLACE 10 | | | |
| HENRY G. CISNEROS PLACE 11 (MAYOR) | | | |

**86-14**

AIRPORT FILES & TRAFFIC
APPEARANCE CARD

## AN ORDINANCE 62582

AUTHORIZING THE EXECUTION OF AN AGREEMENT WITH JAFFE AEROSPACE CORP. FOR LEASE OF GROUND SPACE AT THE SAN ANTONIO INTERNATIONAL AIRPORT.

\* \* \* \* \* \* \* \* \* \* \* \* \*

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF SAN ANTONIO:

The City Manager is hereby authorized and directed to execute an agreement with Jaffe Aerospace Corp. for lease of ground space at at the San Antonio International Airport. A copy of said Agreement is attached hereto and incorporated herein for all purposes.

PASSED AND APPROVED this __27th__ day of __March__. 1986.

_Henry Cisneros_
MAYOR

ATTEST: _Anna J. Rodriguez_
City Clerk

86-14

APPROVED AS TO FORM: _Tom Finley_
for City Attorney

## SAN ANTONIO INTERNATIONAL AIRPORT LEASE

STATE OF TEXAS    X

COUNTY OF BEXAR   X

THIS AGREEMENT, entered into by and between the City of San Antonio, a Texas Municipal Corporation, acting by and through its City Manager, pursuant to Ordinance No. **62582** adopted on _____ **MAR 27 1986** _____, (hereinafter called "Lessor"), and Jaffe Aerospace Corp., a private corporation chartered under the laws of Texas, acting by and through its designated officers pursuant to its by-laws or a resolution of its Board of Directors (hereinafter called "Lessee"), WITNESSETH:

### 1.  DESCRIPTION OF PREMISES DEMISED

The Lessor does hereby and by these presents demise and lease unto Lessee the following premises located at the San Antonio International Airport (hereinafter called "Airport"), San Antonio, Bexar County, Texas, as shown on the survey plat identified as Exhibit 2 and described by metes and bounds in Exhibit 2A, both aforesaid Exhibits being attached hereto and made a part hereof:

989,138± sq. ft. of land

### 2.  BASE RENTAL

Lessee agrees to pay Lessor as rental, monthly in advance (without notice or demand, both of which are expressly waived) for the use and occupancy of the leased premises, at the times and in the manner hereinafter provided:

| Sq. Ft. | Annual Rate Per Sq. Ft. | Annual Rental | Monthly Rental |
|---|---|---|---|
| 989,138 | $0.12 | $118,696.56 | $ 9,891.38 |

1

All rentals and payments that become due and payable by the Lessee shall be made to the City of San Antonio, Office of the Director of Aviation, San Antonio International Airport, 9800 Airport Blvd., San Antonio, Bexar County, Texas. All rentals and payments unpaid for ten (10) days after the date due shall bear interest at the rate of ten (10) percent per annum commencing on the date after each such payment was due.

## 3. TERM

The term of this lease shall be for a period of thirty (30) years beginning on the first day of the calendar month following execution of this lease by all parties hereto, unless sooner terminated according to the provisions hereof.

## 4. USE(S) OF PREMISES

Solely for the hangaring, modification, fueling, maintenance and repair of all aircraft.

## 5. INDEMNIFICATION

The Lessee covenants and agrees to indemnify and save harmless the City of San Antonio, its members, agents, officers and employees, their successors and assigns, individually or collectively from and against any and all fines, liabilities, claims, suits, demands, actions or causes of action of any kind and nature including, but not limited to personal injury or death and property damage, in any way arising out of or resulting from any activity or operation of the Lessee in, on or about the leased premises, or upon Airport premises, or in connection with its use of the leased premises or Airport premises. The Lessee further agrees to pay all expenses in defending against any claims made against Lessor, provided, however, that the Lessee shall not be liable for any injury, damage or loss occasioned by the sole negligence or willful misconduct of the Lessor, its agents or employees. The Lessee and the Lessor shall give prompt and timely notice of any claim made, or suit instituted which, in any way, directly or indirectly, contingently or otherwise, affects or might affect either party.

## 6. INSURANCE

Lessee shall maintain, with respect to the leased premises for the duration of the lease and any extensions thereof, insurance with companies qualified to do business in the State of Texas, in the following types and amounts:

2

| Type | Amount |
|---|---|
| (1) Worker's Compensation and Employer's Liability | Statutory $100,000 – each occurrence |
| (2) Comprehensive General (Public) Liability – to include coverage for the following where the exposure exists: | Combined Single Limit Coverage for $5,000,000 per occurrence |
| (A) Premises/Operations (B) Independent Contractors (C) Products/Completed Operations (D) Personal Injury (E) Contractual Liability | OR Its Equivalent |
| (3) Comprehensive Automobile Liability – to include coverage for: | Combined Single Limit for Bodily Injury or Property Damage: $1,000,000 (or its equivalent) |
| (A) Owned/Leased Automobiles (B) Non-owned Automobiles (C) Hired Cars | |
| (4) Plate Glass coverage for Leased Premises, if applicable | Replacement Cost Insurance Coverage OR Self-Insurance (at option of Lessee) |
| (5) Property Insurance – for physical damage to the Lessee, including improvements and betterments to the leased property | Replacement Cost Coverage OR Eighty Percent Actual Cash Value Coverage |

The proceeds for any such insurance, paid on account of fire, explosion or other damage shall be used to defray the cost of repairing, restoring or reconstructing said improvements, as necessary.

Lessee agrees that with respect to the above required insurances, that Lessor shall:

(A) Be named as additional insured/or an insured, as their interest may appear.

(B) Be provided with a Waiver of Subrogation.

3

(C) Be provided with thirty (30) days advance notice, in writing, of cancellation or material change.

(D) Be provided with Certificates of Insurance evidencing the above required insurances, prior to the commencement of this lease and thereafter with certificates evidencing renewals or replacements of said policies of insurance at least thirty (30) days prior to the expiration or cancellation of any such policies.

Said notices and Certificates of Insurance shall be provided to: CITY CLERK - CITY OF SAN ANTONIO and to the Director of Aviation.

It is expressly understood and agreed that all operations of Lessee under this contract between Lessor and Lessee shall be covered by such policies of insurance and that all personal property placed in the leased premises shall be at the sole risk of Lessee. The procuring of policies of insurance shall not be construed to be a limitation upon Lessee's liability or as a full performance on its part of the indemnification provisions of this contract. Lessee's obligations are notwithstanding said policy of insurance, for the full and total amount of any damage, injury or loss caused by or attributable to its activities conducted at or upon the Airport.

## 7. PERFORMANCE BOND

Lessee will deliver, at the date of execution of this lease, a surety bond in the sum of $120,000.00, payable to Lessor, and conditioned on satisfactory performance of all terms, conditions and covenants contained herein during the term hereof and as set forth below. Such bond shall be issued by a sound indemnity company authorized to do business in Texas and shall be in form and content approved by the Director of Aviation.

## 8. STANDARD PROVISIONS AND COVENANTS

The Standard Provisions and Covenants set forth in Exhibit 1, attached hereto, are incorporated herein and made a part hereof, except Provision 13 which is deleted therefrom.

## 9. SPECIAL PROVISIONS

A. Lessor, as soon as is reasonably practicable, but no later than six (6) months following the execution of this lease by all parties hereto shall provide permanent electric power, eight inch water line, gas, and sanitary sewer lines required for normal operation (as outlined in Section 4 above) to the boundaries of the premises described in Exhibit 2A hereto at such locations upon said boundaries as shall be determined by Lessor. Any extension of the foregoing described utilites in, on or upon the leased premises shall be performed by Lessee at its sole cost.

4

B.  As long as Lessee is not in default hereunder, Lessee shall
    have an option to lease the 877,060 square feet of land
    labeled as "Option Area" on Exhibit 2 and described by metes
    and bounds on Exhibit 2B of this lease.  The term of said
    option shall be for a period of one year commencing on the
    first day of the term of this lease, provided, however, that
    Lessee may exercise its option at any time during the option
    period and further provided that Standard Provision 4 shall
    apply to the Option Area only on the date upon which the
    Option Area is incorporated into the leased premises.  In
    consideration of the option herein granted, Lessee shall pay
    to the City of San Antonio the sum of $52,623.60.  Such sum
    is non-refundable and is due and payable on or before the
    effective date of this lease.  Should such sum not be
    received by the City of San Antonio as herein specified, then
    the option granted herein shall be void and of no effect.  If
    the option is exercised to be effective at a date prior to
    the first anniversary date of the term of this lease then and
    in such event, the sum of $4,385.30 shall be credited toward
    payment of the rental hereunder for each full month remaining
    in the term of the option period.  Upon receipt by the
    Director of Aviation prior to the expiration of the option
    period set forth herein of a written notice from Lessee that
    it is exercising its option to lease, this lease shall be
    amended, automatically and without further action being
    required by the parties hereto, effective on the first
    anniversary date of the term of this lease or at such earlier
    date as shall have been specified in such notice from Lessee
    as follows:

1.  Section 1 shall be amended to read as follows:

    "        1.  DESCRIPTION OF PREMISES DEMISED

        The Lessor does hereby and by these presents
        demise and lease unto Lessee the following
        premises located at the San Antonio
        International Airport (hereinafter called
        "Airport"), San Antonio, Bexar County, Texas, as
        shown on the survey plat identified as Exhibit 2
        and as described by metes and bounds in Exhibits
        2A and 2B, all three aforesaid exhibits being
        attached hereto and made a part hereof:

            1,866,198± sq. ft. of land"

2.  Section 2 shall be amended to read as follows:

    "            2.  BASE RENTAL

        Lessee agrees to pay Lessor as rental, monthly
        in advance (without notice or demand, both of
        which are expressly waived) for the use and
        occupancy of the leased premises, at the times
        and in the manner hereinafter provided:

| Sq. Ft. | Annual Rate Per Sq. Ft. | Annual Rental | Monthly Rental |
|---------|-------------------------|---------------|----------------|
| 1,866,198 | $0.10 | $186,619.80 | $15,551.65 |

All rentals and payments that become due and payable by the Lessee shall be made to the City of San Antonio, Office of the Director of Aviation, San Antonio International Airport, 9800 Airport Blvd., San Antonio, Bexar County, Texas. All rentals and payments unpaid for ten (10) days after the date due shall bear interest at the rate of ten (10) percent per annum commencing on the date after each such payment was due."

3.  Section 7 of this lease shall be amended to read as follows:

"
### 7.  PERFORMANCE BOND

Lessee will deliver, together with notice that it is exercising the option contained in Special Provision 9.B. of this lease, a surety bond in the sum of $190,000.00, payable to Lessor, and conditioned on satisfactory performance of all terms, conditions and covenants contained herein during the term hereof and as set forth below. Such bond shall be issued by a sound indemnity company authorized to do business in Texas and shall be in form and content approved by the Director of Aviation."

C.  Should Lessee not elect to exercise the option to lease additional land as set forth in Special Provision 9.B. above, then and in such event the area shown in yellow on Exhibit 2 of this lease shall be added, automatically and without further action being required by the parties hereto, to the leased premises by amending this lease effective on the first anniversary date of the term of this lease as follows:

1.  Section 1 shall be amended to read as follows:

"
### 1.  DESCRIPTION OF PREMISES DEMISED

The Lessor does hereby and by these presents demise and lease unto Lessee the following premises located at the San Antonio International Airport (hereinafter called "Airport"), San Antonio, Bexar County, Texas, as shown on Exhibit 2, including the area shaded in yellow thereupon, which is attached hereto and made a part hereof:

6

1,008,938± sq. ft. of land"

2. Section 2 shall be amended to read as follows:

"
2. BASE RENTAL

Lessee agrees to pay Lessor as rental, monthly in advance (without notice or demand, both of which are expressly waived) for the use and occupancy of the leased premises, at the times and in the manner hereinafter provided:

| Sq. Ft. | Annual Rate Per Sq. Ft. | Annual Rental | Monthly Rental |
|---------|-------------------------|---------------|----------------|
| 1,008,938 | $0.12 | $121,072.56 | $10,089.38 |

All rentals and payments that become due and payable by the Lessee shall be made to the City of San Antonio, Office of the Director of Aviation, San Antonio International Airport, 9800 Airport Blvd., San Antonio, Bexar County, Texas. All rentals and payments unpaid for ten (10) days after the date due shall bear interest at the rate of ten (10) percent per annum commencing on the date after each such payment was due."

D. Lessor and Lessee acknowledge that the current Drainage Master Plan for the San Antonio International Airport sets forth the need for additional storm drainage capacity to properly drain airport land and proposes at some future date the construction of a major storm drain outfall upon the leased premises described in Exhibit 2A hereto. In order to expedite this necessary outfall construction and to lessen the impact upon the development of the leased premises, the parties hereto agree that Lessee shall be permitted to construct the required additional storm drainage outfall to supplement the existing 48" line now in place upon the leased premises described in Exhibit 2A hereto, the plans and detailed estimated costs for such additional storm drainage outfall to be submitted in writing in advance to the Director of Aviation for his approval, such approval not to be unreasonably withheld. Upon completion of the approved additional storm drainage outfall by Lessee at its sole cost, Lessee shall submit to the Director of Aviation an itemized contractor's invoice regarding the costs incurred by Lessee for the approved additional storm drainage outfall. Such costs shall represent the total expenditure therefore by Lessee, provided, however, that costs to be abated as hereinafter provided for architectural, engineering and construction management do not exceed 8% of the total cost for the approved additional storm drainage outfall and further

7

provided that such costs do not include any finance or interest expense and/or separate overhead costs of Lessee. Further, upon completion of the approved additional drainage outfall, Lessee shall provide a certified statement from its drainage outfall construction contractor specifying the total cost incurred therefore and a certificate from said contractor that the approved additional drainage outfall has been constructed in accordance with the approved plans and specifications and in strict compliance with all applicable building codes, laws, rules, ordinances and regulations. Upon receipt by the Director of Aviation of the foregoing described cost information and certifications as well as a copy of final "As Built" plans, Lessee shall receive a credit against its monthly rental for all approved costs of the construction of the additional storm drainage outfall and the rent payable by Lessee hereunder shall be abated until such time as the costs of said approved additional drainage outfall have been offset.

EXECUTED this _28th_ day of _March_____, 1986.

Attest:

CITY OF SAN ANTONIO, Lessor

By: _William T. Krueler_
       City Manager

_____
City Clerk

JAFFE AEROSPACE CORP., Lessee

ATTEST:

By: _____
                    President

_____
Asst. Secretary

JAFFE AEROSPACE CORP.
Attn: Morris D. Jaffe, Jr.
243 Central Park

San Antonio, Texas  78216
       Mailing Address

8

EXHIBIT NO. 1

## STANDARD PROVISIONS AND COVENANTS

## SAN ANTONIO INTERNATIONAL AIRPORT LEASES

PROVISION 1.

## ADJUSTMENTS IN RENTAL RATES

1.1    Beginning August 1, 1984, and every five years there-after during the term of this lease and any renewal or extension thereof, the basic rental shall be adjusted for the ensuing five-year period according to any increase or decrease in:

(a)  The average of the monthly indices published by the Bureau of Labor Statistics, U.S. Department of Labor for AGGREGATE WEEKLY PAYROLLS OF PRODUCTION-MANUFACTURING and for PRODUCER PRICES - ALL COMMODITIES for the twelve-month period ending with December 31, of the preceding calendar year,

as compared to:

(b)  the average of the above-named indices for the twelve-month period ending with December 31, 1983.

The computation for said adjustment shall be as follows:

$$\frac{(a)}{(b)} \quad \text{Base Rental Rate(s)} = \text{Adjusted Rental Rate(s)}$$

That is, the BASE RENTAL RATE shall be multiplied by a fraction, the denominator of which shall be the common average of the two averages of the twelve monthly indices of AGGREGATE WEEKLY PAYROLLS OF PRODUCTION-MANUFACTURING and of PRODUCER PRICES - ALL COMMODITIES for the twelve-month period ending December 31, 1983, and the numerator of which shall be the similar common average for the twelve months ending December 31 of the calendar year immediately preceding the adjustment date. All index figures must be final.

1.2    The BASE RENTAL RATE(S) shall be understood to be the rental rate(s) set forth in this agreement (Par. 2, page 1); the ADJUSTED RENTAL RATE(S) shall be understood to mean such BASE RENTAL RATE(S) plus or minus any increase or decrease computed according to the formula set out in Paragraph 1.1 above.

1.3    This provision shall be effective in this manner as long as both indices above mentioned are published by the said government authorities in the same form and based on the same data as at the date of the granting of this lease.  In the event the Bureau of Labor Statistics amends its method of calculating the indices or changes the base year on which such indices are calculated, such amendments and changes shall govern calculation of adjustments.


PROVISION 2

PRIVILEGES AND CONDITIONS

2.1    Lessor hereby grants to Lessee the following general privileges, uses and rights, all of which shall be subject to the terms, conditions and covenants herein set forth, and all of which shall be non-exclusive on the Airport:

A.    The general unrestricted use of all common aircraft facilities and improvements which are now or may hereafter be connected with or appurtenant to said Airport, except as hereinafter provided, to be used by Lessee for commercial aviation activities.  For the purpose of this lease "common airport facilities" shall include all necessary landing area appurtenances including, but not limited to, approach areas, runways, taxiways, prons, roadways, sidewalks, navigational and avigational aids, lighting facilities, terminal facilities or other common or public facilities appurtenant to said Airport.

B.    The right of ingress to and egress from the demised premises over and across common or public roadways serving the Airport for Lessee, his agents and servants, patrons and invitees, suppliers of service and furnishers of material.  Said right shall be subject to such ordinances, rules and regulations as now or may hereafter have application at the Airport.

2.2    The granting of this lease and its acceptance by Lessee is conditioned upon compliance with the covenant that the right to use said common Airport facilities in common with others authorized so to do shall be exercised only subject to and in accordance with the laws of the United States of America, State of Texas, and the City of San Antonio; the rules and regulations promulgated by

their authority with reference to aviation and navigation; and all reasonable and applicable rules, regulations and ordinances of Lessor now in force or hereafter prescribed or promulgated by charter authority or by law.

2.3   Lessor reserves the right to enter the leased premises at any reasonable times for the purpose of inspecting same or to verify that fire, safety, sanitation regulations and other provisions contained in this lease are being adhered to by Lessee.

## PROVISION 3

### ACCEPTANCE AND CONDITION OF PREMISES

3.1   Lessee has had full opportunity to examine the leased premises.  Lessee's taking possession of the leased premises shall be conclusive evidence of Lessee's acceptance thereof in an "AS IS" condition and Lessee hereby accepts the leased premises in their present condition as suitable for the purpose for which leased.

3.2   Lessee agrees that no representations respecting the condition of the leased premises and no promises to improve the leased premises, either before or after the execution hereof, have been made by Lessor or its agents to Lessee unless the same are contained herein or made a part hereof by specific reference herein.

## PROVISION 4

### CONSTRUCTION BY LESSEE

4.1   Should a lease for premises unimproved at the time of the commencement of the lease term be executed by the parties hereto, Lessee shall have the right and duty to improve the leased premises.  Lessee agrees that plans and specifications detailing the improvements to be made by Lessee and prepared by registered architects and engineers must be submitted to the Director of Aviation no later than 180 days following the execution of the lease.  Construction of said improvements must be completed within one year following approval of the plans and specifications or this lease may, at the option of the Lessor, be terminated.

4.2   In all circumstances other than as set forth in Paragraph 4.1 above, Lessee shall have the right to erect, alter, remodel and renovate buildings and other improvements on the leased premises provided that Lessee shall submit to the Director of Aviation plans and specifications prepared by registered architects and engineers setting forth the renovation, construction, alteration or improvement that Lessee desires to perform in such detail as may be required by the Director of Aviation, and

provided that approval of such plans and specifications by the Director is obtained as set forth below.

4.3  Lessor agrees to examine and approve or disapprove plans and specifications submitted in accordance with the provisions of Paragraphs 4.1 and 4.2 above within thirty (30) business days after receipt thereof and to notify Lessee in writing when the same have been approved or disapproved. The approval by Lessor of any plans and specifications refers only to the conformity of such plans and specifications to the general architectural plan for the leased premises. Such plans and specifications are not approved for architectural or engineering design and Lessor, by approving such plans and specifications, assumes no liability or responsibility therefor or for any defect in any work performed according to such plans and specifications. Lessee agrees not to commence any renovation, construction, alteration or improvement until Lessor, through its Director of Aviation, has approved, in writing, Lessee's plans and specifications.

4.4  The cost of any renovation, construction, alteration or improvement authorized according to the provisions of this lease shall be borne and paid for solely by Lessee. It is clearly understood by the parties hereto that the Lessor has no financial or other obligation of any kind under this lease agreement other than the rental to Lessee of the premises which are the subject of this lease for the term and consideration hereinbefore set forth.

4.5  At the completion of all renovation, construction, alteration or improvement, a conformed set of "as built" plans shall be provided by Lessee to the Director of Aviation.

4.6  In undertaking any renovation, construction, alteration or improvement as herein provided, it is expressly understood and agreed that, where applicable, Lessee shall be responsible at its sole expense for any and all construction and maintenance of taxiways and connections to the Airport's runway and taxiway system along an alignment and in accordance with a design and plans approved in advance in writing by Lessor's Director of Aviation. It is further expressly understood and agreed that any improvements and access thereto constructed by Lessee on the leased premises shall be performed in such a manner that shall not cause flowage of surface drainage onto adjacent tracts or interrupt flow to the storm drainage system.

4.7  It is expressly understood and agreed that any and all items of personal property of whatsoever nature owned by Lessee and at any time placed or maintained by Lessee on any part of the leased premises shall be and remain the property of Lessee; provided, however, that all alterations, additions or improvements made upon the leased premises shall become the property of the Lessor at no cost to Lessor upon the termination of this Lease Agreement.

## PROVISION 5

### LIENS PROHIBITED

5.1    Lessee shall not suffer or permit any mechanics' liens or other liens to be filed against the fee of the leased premises nor against Lessee's leasehold interest in the land nor any buildings or improvements on the leased premises by reason of any work, labor, services, or materials supplied or claimed to have been supplied to Lessee or to anyone holding the leased premises or any part thereof through or under Lessee.

5.2    If any such mechanics' liens or materialmen's liens shall be recorded against the leased premises, or any improvements thereof, Lessee shall cause the same to be removed or, in the alternative, if Lessee, in good faith, desires to contest the same, Lessee shall be privileged to do so, but in such case Lessee hereby agrees to indemnify and save Lessor harmless from all liability for damages occasioned thereby and shall, in the event of a judgment of foreclosure on said mechanics' lien, cause the same to be discharged and removed prior to the execution of such judgment.

## PROVISION 6

### MAINTENANCE AND REPAIR

6.1    Lessee shall pay, or cause to be paid, any and all charges for water, heat, gas, electricity, sewers and any and all other utilities used on the leased premises throughout the term of this lease and any extension thereof, including, but not limited to, any connection fees, and any and all additional costs related to utility connection, metering, maintenance, repair and usage.

6.2    Lessee, at Lessee's sole cost and expense at all times during the term of this lease and any extension thereof, agrees to keep and maintain, or cause to be kept and maintained, all buildings and improvements which now exist or may be erected on the leased premises in a good state of appearance and repair, reasonable wear and tear excepted, and at least equal in appearance and character to other similar improvements existing at the Airport. Where applicable and upon request by the Director of Aviation, Lessee shall keep the structures on the leased premises painted and the grass mowed. The adequacy of the performance of the foregoing by Lessee shall be subject to the approval of said Director whose judgment shall be conclusive.

6.3    Lessee shall provide and use suitable covered metal receptacles for all garbage, trash and other refuse. Piling of boxes, cartons, barrels or similar items, in an unsightly, unsafe manner, on or about the leased premises, is prohibited. Lessee shall provide a complete and proper arrangement satisfactory to

the Director of Aviation for the adequate sanitary handling and disposal, away from the Airport, of all trash, garbage and other refuse caused as a result of the operation of its business.

## PROVISION 7

### FIELD USE CHARGES

7.1    The fuel flowage fees to be paid by Lessee (fixed base operator) to the City of San Antonio on fuel delivered to Lessee at Airport shall be the amount per gallon, now or hereafter established by City Ordinance. The Lessee (and its tenants and sublessees, if any) agree to keep accurate books, records and accounts of the purchase and sale of aircraft fuel delivered to it on the Airport premises and sold to various customers by the Lessee and its tenants and sublessees. All such books, records and accounts and all supporting records shall be preserved by Lessee (and its tenants and sublessees, if any) for thirty-six (36) months, either at the leased premises or at the home or regional offices of Lessee and made available for audit purposes to Lessor and Lessor's authorized agents or representatives at the leased premises upon request. Lessee further agrees that it and its tenants and sublessees shall furnish monthly statements, certified by the various suppliers, as to the amount of aircraft fuel delivered to the demised premises. Such monthly statements shall be submitted to the Director of Aviation by the 10th of the month following delivery.

7.2    Lessee acknowledges that Lessee and all tenants and operators based at said Airport, other than those tenants and operators engaged in the carriage of persons, cargo, or mail or other property for hire, are obligated to pay a fuel flowage fee on aircraft fuel delivered to them, pursuant to an ordinance(s) of the City of San Antonio. Nothing contained herein shall be taken to relieve Lessee, its customers or others from any field use charges levied generally by Lessor directly or indirectly upon the operation of aircraft at San Antonio International Airport.

## PROVISION 8

### SIGNS

8.1    Lessee will erect no signs and will distribute no advertising matter upon airport premises without the written consent of Lessor's Director of Aviation.

## PROVISION 9

### REGULATIONS

9.1  Lessee's officers, agents, employees and servants will obey all rules and regulations which may be promulgated by Lessor or its authorized agents in charge of the Airport, or by other lawful authority, to insure the safe and orderly conduct of operations and traffic on the Airport.

## PROVISION 10

### QUALITY OF SERVICES

10.1  Lessee will, at all times, furnish good, prompt and efficient commercial aviation services adequate to meet all the demands for such services at the Airport and to furnish said services on a non-discriminatory basis to all users thereof, and will charge non-discriminatory prices for each unit of sale or service; provided, that the Lessee will be allowed to make reasonable and non-discriminatory discounts, rebates or other similar types of price reduction to volume purchasers.

## PROVISION 11

### TIME OF EMERGENCY

11.1  During time of war or national emergency, Lessor shall have the right to lease the landing area or any part thereof to the United States for government use, and, if such lease is executed, the provisions of this instrument, insofar as they are inconsistent with the provisions of the lease to the Government, shall be suspended.

## PROVISION 12

### SUBORDINATION OF LEASE

12.1  This lease shall be subordinate to the provisions of any existing or future agreement between Lessor and the United States relative to the operation or maintenance of the Airport, the execution of which has been or may be required as a condition precedent to the expenditure of Federal funds for the development of the Airport.  Should the effect of such agreement with the United States Government be to take any of the property under lease or substantially alter or destroy the commercial value of the leasehold interest granted herein, Lessor shall not be held liable therefore.

## PROVISION 13

### LANDLORD'S LIEN

13.1    Lessee hereby gives to Lessor a lien upon all of its property, now, or at any time hereafter placed in or upon the said premises to secure the prompt payment of the charges herein stipulated to be paid for the use of said premises; all exemptions of such property, or any of it, being hereby waived.

## PROVISION 14

### SECURITY

14.1    Lessee shall provide for the security of the Air Operations Area to prevent entry or movement of unauthorized persons thereon in accordance with Article IV, Section 4-37 of the City Code of San Antonio, Texas.  Lessee shall indemnify and hold harmless Lessor, its officers and employees, from any charges, fines or penalties that may be assessed or levied by any department or agency of the United States or of the State of Texas by reason of Lessee's failure to comply with this subparagraph. Physical barriers to prevent access to the Air Operations Area must be in effect during construction on the leased premises.

## PROVISION 15

### DEFAULT AND REMEDIES

15.1    Each of the following shall constitute an event of default by Lessee:

A.    Lessee shall fail to pay any rent as provided for in this lease and such failure shall continue for a period of ten (10) days.

B.    Lessee shall neglect or fail to perform or observe any of the terms, provisions, conditions or covenants herein contained, and on Lessee's part to be performed or any way observed, and if such neglect or failure should continue for a period of thirty (30) days after receipt by Lessee of written notice of such neglect or failure, or if more than thirty (30) days shall be required because of the nature of the default, if Lessee shall fail within said thirty (30) day period to commence and thereafter diligently proceed to cure such default.

C.    Lessee shall become insolvent, shall take the benefit of any present or future insolvency statute, shall make a general assignment for the

benefit of creditors, shall file a voluntary petition in bankruptcy or a petition or answer seeking a reorganization or the readjustment of its indebtedness under the federal bankruptcy laws or under any other law or statute of the United States or of any state thereof, or shall consent to the appointment of a receiver, trustee, or liquidator of all or substantially all of its property.

D. An Order for Relief shall be entered at the request of Lessee or any of its creditors under the federal bankruptcy or reorganization laws or under any law or statute of the United States or any state thereof.

E. A petition under any part of the federal bankruptcy laws or an action under any present or future insolvency law or statute shall be filed against Lessee and shall not be dismissed within thirty (30) days after the filing thereof.

F. By or pursuant to or under the authority of any legislative act, resolution or rule, or any order or decree of any court or governmental board, agency, or officer, a receiver, trustee, or liquidator shall take possession or control of all or substantially all of the property of Lessee and such possession or control shall continue in effect for a period of fifteen (15) days.

G. Lessee shall become a corporation in dissolution or voluntarily or involuntarily forfeit its corporate charter.

H. The rights of Lessee hereunder shall be transferred to, pass to, or devolve upon, by operations of law or otherwise, any other person, firm, corporation, or other entity, by or its connection with or as a result of any bankruptcy, insolvency, trusteeship, liquidation, or other proceedings or occurrence described in paragraphs C through G of this Provision 15.1.

I. Lessee shall voluntarily discontinue its operations at the Airport for a period of sixty (60) days.

15.2   In the event any condition of default shall occur (notwithstanding any waiver, license or indulgence granted by Lessor with respect to any condition of default in any form or instance) Lessor, then, or at any time thereafter, but prior to the removal of such condition of default shall have the right, at its election, either to terminate this lease by giving at least five (5) days written notice to Lessee at which time Lessee will then quit and surrender the leased premises to Lessor, but Lessee shall

remain liable as hereinafter provided, or, to enter upon and take possession of the leased premises (or any part thereof in the name of the whole), without demand or notice, and repossess the same as of the Lessor's former estate, expelling Lessee and those claiming under Lessee, forcibly if necessary, without prejudice to any remedy for arrears of rent or preceding breach of covenant and without any liability to Lessee or those claiming under Lessee for such repossession.

15.3   Lessor's repossession of the leased premises shall not be construed as an election to terminate this lease nor shall it cause a forfeiture of rents or other charges remaining to be paid during the balance of the term hereof, unless a written notice of such intention be given to Lessee, or unless such termination is decreed by a court of competent jurisdiction.

15.4   Upon repossession, Lessor shall have the right (at its election and whether or not this lease shall be terminated) to relet the leased premises or any part thereof for such period or periods (which may extend beyond the term of this lease) at such rent or rents and upon such other terms and conditions as Lessor may, in good faith, deem advisable. Lessor shall in no event be liable and Lessee's liability shall not be affected or diminished in any way whatsoever for failure to relet the leased premises, or in the event the leased premises are relet, for failure to collect any rental under such reletting.

15.5   In the event that Lessor shall elect to relet, then rentals received by Lessor from such reletting shall be applied: first, to the payment of any indebtedness other than rent due hereunder from Lessee to Lessor under this lease; second, to the payment of any cost of such reletting; third, to the payment of rent due and unpaid hereunder; and the residue, if any, shall be held by Lessor and applied hereunder. Should that portion of such rentals received from such reletting during any month, which is applied to the payment of rent hereunder, be less than the rent payable during that month by Lessee hereunder, then Lessee shall pay such deficiency to Lessor. Such deficiency shall be calculated and paid monthly. Lessee shall also pay to Lessor, as soon as ascertained, any costs and expenses incurred by Lessor in such reletting not covered by the rentals received from such reletting of the leased premises.

15.6   If Lessor shall terminate this lease or take possession of the leased premises by reason of a condition of default, Lessee, and those holding under Lessee, shall forthwith remove their goods and effects from the leased premises. If Lessee or any such claimant shall fail to effect such removal forthwith, Lessor may, without liability to Lessee or those claiming under Lessee, remove such goods and effects and may store the same for the account of Lessee or of the owner thereof at any place selected by Lessor, or, at Lessor's election, and upon giving 15 days written notice to Lessee of date, time and location of sale, Lessor may sell the same at public auction or private sale on such

terms and conditions as to price, payment and otherwise as Lessor in its sole discretion may deem advisable. If, in Lessor's judgment, the cost of removing and storing or the cost of removing and selling any such goods and effects exceeds the value thereof or the probable sale price thereof, as the case may be, Lessor shall have the right to dispose of such goods in any manner Lessor may deem advisable.

15.7   Lessee shall be responsible for all costs of removal, storage and sale, and Lessor shall have the right to reimburse the Airport Revenue Fund from the proceeds of any sale for all such costs paid or incurred by Lessor. If any surplus sale proceeds remain after such reimbursement, Lessor may deduct from such surplus any other sum due to Lessor hereunder and shall pay over to Lessee any remaining balance of such surplus sale proceeds.

15.8   If Lessor shall enter into and repossess the leased premises for reason of the default of Lessee in the performance of any of the terms, covenants or conditions herein contained, then, and in that event, Lessee hereby covenants and agrees that Lessee will not claim the right to redeem or re-enter the said premises to restore the operation of this lease and Lessee hereby waives the right to such redemption and re-entrance under any present or future law, and does hereby further, for any party claiming through or under Lessee, expressly waive its right, if any, to make payment of any sum or sums of rent, or otherwise, of which Lessee shall have made default under any of the covenants of the lease and to claim any subrogation of the rights of Lessee under these presents, or any of the covenants thereof, by reason of such payment.

15.9   All rights and remedies of Lessor herein created or otherwise existing at law are cumulative, and the exercise of one or more rights or remedies shall not be taken to exclude or waive the right to the exercise of any other. All such rights and remedies may be exercised and enforced concurrently and whenever and as often as deemed desirable.

15.10   If proceedings shall, at any time, be commenced for recovery of possession as aforesaid and compromise or settlement shall be effected either before or after judgment whereby Lessee shall be permitted to retain possession of said premises, then such proceeding shall not constitute a waiver of any condition or agreement contained herein or of any subsequent breach thereof or to this agreement.

15.11   Any amount paid or expense or liability incurred by Lessor for the account of Lessee may be deemed to be additional rental and the same may, at the option of Lessor, be added to any rent then due or thereafter falling due hereunder.

## PROVISION 16

### HOLDING OVER

16.1   It is agreed and understood that any holding over by Lessee, after the termination of this lease, shall not renew and extend same, but shall operate and be construed as a tenancy from month to month.   Should Lessee hold over against the will of Lessor, Lessee agrees to pay to Lessor as monthly rent for said premises for each month of said tenancy triple the rental paid for the last month of the lease term.   Lessee shall be liable to Lessor for all loss or damage on account of any such holding over against Lessor's will after the termination of this lease, whether such loss or damage may be contemplated at this time or not.   It is expressly agreed that acceptance of the foregoing rental by Lessor in the event that Lessee fails or refuses to surrender possession shall not operate to give Lessee any right to remain in possession nor shall it constitute a waiver by Lessor of its right to immediate possession.

## PROVISION 17

### ASSIGNMENT AND SUBLET

17.1   Lessee shall not transfer or assign this lease or Lessee's interest in or to the leased premises or any part thereof without having first obtained the prior written consent of Lessor which may be given only by or pursuant to an ordinance enacted by the City Council of San Antonio, Texas, provided, however, that the foregoing shall not apply to and shall not prevent the assignment of this lease to any corporation with which Lessee may merge or consolidate or which may succeed to a controlling interest in the business of Lessee.

17.2   Lessee shall not sublet the premises herein leased or any part thereof without having first obtained the written consent of Lessor's Director of Aviation.   In the event Lessee requests permission to sublease, the request shall be submitted to the Director of Aviation prior to the effective date of the sublease requested and shall be accompanied by a copy of the proposed sublease agreements and of all agreements collateral thereto.   The area or space to be subleased, the rental to be charged, the type of business to be conducted, identity and reasonable financial history and all other information requested by said Director shall be specified.   Lessee shall not sublease a total of more than 50% of the leased area, nor shall Lessee enter into any sublease for a term greater than 75% of the term remaining in the lease.   If such limits are exceeded, Lessor shall have the right, upon 30 days written notice, to recapture the space described in the sublease, and terminate the entire lease on the expiration of such 30 day period.   In the event of any recapture, Lessee's rental payments shall be adjusted on a prorata basis provided, however, that all

options of Lessor contained in Provision 15 shall be available to Lessor.

17.3   In the event of a sublease where the rental per square foot established in the sublease exceeds the rental per square foot established in the lease, Lessee shall pay to Lessor as additional rent the excess of the rental received from the sublessee over that specified to be paid by Lessee herein per square foot, provided that Lessee may charge a reasonable fee for administrative costs in addition to the sublease rental not to exceed 15% of the specified sublease rental.  Such 15% shall not be considered as excess rental.  Nothing herein shall prevent Lessee from charging a reasonable fee to others for the use of capital equipment and facilities on the subleased premises and charging for use of utilities and other services being paid for by Lessee.  Should any method of computation of rental to be paid by a sublessee, other than computation based upon a rental rate per square foot be employed, the provisions of this paragraph will nevertheless apply if the rental received for the proportionate area of the leased premises by Lessee exceeds the rental paid to Lessor for said proportionate area of the leased premises.

17.4   Each transfer, assignment or subletting to which there has been consent shall be by instrument in writing, in form satisfactory to Lessor, and shall be executed by the transferee, assignee or sublessee who shall agree in writing for the benefit of Lessor to be bound by and to perform the terms, covenants and conditions of this lease.  Two executed copies of such written instrument shall be delivered to Lessor.  Failure to first obtain in writing Lessor's consent, or failure to comply with the provisions herein contained shall operate to prevent any such transfer, assignment or subletting from becoming effective.

17.5   Should the assignment of this lease be approved by Lessor and to the extent that such assignee assumes Lessee's obligation hereunder, Lessee shall by virtue of such assignment be released from such obligation.  Should the subletting of the leased premises be approved by Lessor, however, Lessee agrees and acknowledges that he shall remain fully and primarily liable under this lease, notwithstanding any such sublease and that any such sublessee shall be required to attorn to Lessor under the terms of this lease.

17.6   The receipt by the Lessor of rent from an assignee, subtenant or occupant of the leased premises shall not be deemed a waiver of the covenant in this lease against assignment and subletting or an acceptance of the assignee, subtenant or occupant as a tenant or a release of the Lessee from further observance or performance by the Lessee of the covenants contained in this lease.  No provision of this lease shall be deemed to have been waived by the Lessor unless such waiver be in writing, signed by the Lessor's Director of Aviation.

## PROVISION 18

## FIRE AND OTHER DAMAGE

18.1 In the event a City-owned building on the leased premises shall be partially damaged by fire or other casualty, the Lessee shall give immediate notice thereof to the Lessor and the same shall be repaired at the expense of the Lessor without unreasonable delay unless Lessor determines that the damage is so extensive that repair or rebuilding is not feasible. From the date of such casualty until said building is so repaired, monthly rental payments hereunder shall abate in such proportion as the part of the building thus destroyed or rendered untenantable bears to the total building: provided, however, that if said building shall be so slightly injured in any such casualty as not to be rendered unfit for occupancy, the rent hereunder shall not cease or be abated during any repair period. In the event that the damage to the building should be so extensive as to render it untenantable, the rent for such building shall cease until such time it shall again be put in repair, but in the event of the building being damaged by fire or other casualty to such an extent as to render it necessary in the exclusive judgment of Lessor not to rebuild the same, then, at the option of the Lessor, and upon notice to Lessee, this lease, as it applies to said building, shall cease and come to an end and the rent hereunder shall be apportioned and paid up to date of such damage. If Lessor elects to rebuild such building, Lessor shall notify Lessee of such intention within thirty (30) days of the date of the damage, otherwise the lease as it applies to said building shall be deemed canceled and of no further force or effect. Notwithstanding any provision above, should the destruction or damage to said building (to the extent of work that is to be provided as part of the Lessor's obligation) be so great that it will not be reasonably repaired or restored by Lessor within one hundred twenty (120) days to the state of fitness that existed prior to the commencement of improvements, if any, performed by Lessee, Lessee may, at Lessee's option, terminate this lease as it applies to said building by written notification of same given to Lessor within thirty (30) days after the occurrence of such casualty, or upon notification .that the work will not be completed within the one hundred twenty (120) days.

18.2 Lessor's obligations to rebuild or repair under this Article shall, in any event, be limited to restoring said building to substantially the condition that existed prior to the commencement of improvements, if any, performed by Lessee and shall further be limited to the extent of the insurance proceeds available to Lessor for such restoration. Lessee agrees that if Lessor elects to repair or rebuild as set forth in this Provision, then Lessee will proceed with reasonable diligence and, at its sole cost and expense, to rebuild, repair and restore its improvements, signs, fixtures, furnishings, equipment and other items provided or installed by Lessee in or about the leased

premises in a manner and to a condition at least equal to that which existed prior to the damage or destruction.

18.3    In the event that the building or other improvements upon the leased premises constructed by and/or owned by Lessee are damaged or destroyed by fire or any other casualty during the term of this agreement or any extension hereof, regardless of the extent of such damage or destruction, the rent payable hereunder shall not abate.    Furthermore, Lessee shall no later than one hundred twenty (120) days following the date of such damage or destruction commence to repair, reconstruct or replace the damaged or destroyed building or improvement and prosecute the same with reasonable diligence so that the building or improvement shall at the sole expense of Lessee be restored no later than one year following such damage or destruction to substantially the condition it was in prior to said damage or destruction.    Should the commencement, construction or completion of said repair, reconstruction or replacement be prevented or delayed by reason of war, civil commotion, acts of God, strikes, governmental restrictions or regulations, fire or other casualty, or any other reason beyond the control of Lessee, the time for commencing or completing the repair, reconstruction or replacement, as the case may be, shall automatically be extended for the period of each such delay.


## PROVISION 19

## LAWS AND ORDINANCES

19.1    Lessee agrees to comply promptly with all laws, ordinances, orders and regulations affecting the leased premises and the cleanliness, safety, operation, or use thereof of the business conducted therein.    Lessee shall comply with all Federal and State regulations concerning his operation on the airport and shall indemnify and hold harmless Lessor, its officers and employees, from any charges, fines or penalties that may be assessed or levied by any department or agency of the United States or of the State of Texas by reason of Lessee's failure to comply with the terms of this Provision.

## PROVISION 20

### TAXES AND LICENSES

20.1   Lessee shall pay, on or before their respective due dates, to the appropriate collecting authority, all Federal, State and local taxes and fees, which are now or may hereafter be levied upon the premises, or upon Lessee, or upon the business conducted on the premises, or upon any of Lessee's property used in connection therewith; and shall maintain, in current status, all Federal, State and local licenses and permits required for the operation of the business conducted by Lessee.

## PROVISION 21

### NONDISCRIMINATION

21.1   Any discrimination by Lessee, his sublessees, agents or employees on account of race, color, sex, age, religion or national origin, in employment practices or in the use of or admission to the premises is prohibited.

## PROVISION 22

### WAGES

22.1   Lessee shall pay wages that are not less than the minimum wages required by Federal and State statutes and City ordinances to persons employed in his operations hereunder.

## PROVISION 23

### ATTORNEY'S FEES

23.1   In case Lessor brings any action under this lease, and prevails in said action, then Lessor shall be entitled to recover from Lessee its reasonable attorney's fees (not to exceed the attorney's fees actually incurred by that party in the defense or prosecution of such action).

## PROVISION 24

### SEVERABILITY

24.1   If any clause or provision of this lease is illegal, invalid or unenforceable under present or future laws effective during the term of this lease, then, in that event, it is the intention of the parties hereto that the remainder of this lease shall not be affected thereby, and it is also the intention of the parties to this lease that in lieu of each clause or provision of

this lease that is illegal, invalid or unenforceable, there be added as a part of this lease a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

PROVISION 25

AMENDMENT

25.1    This lease, together with the authorizing ordinance, constitute the entire agreement between the parties; no amendment, modification, or alteration of the terms of this lease shall be binding unless the same be in writing, dated subsequent to the date hereof and duly executed by the parties hereto.

PROVISION 26

NOTICES

26.1    Notices to Lessor shall be deemed sufficient if in writing and mailed, registered or certified mail, postage prepaid, addressed to City Clerk, P.O. Box 9066, San Antonio, Texas 78285 and to Director of Aviation, City of San Antonio, Department of Aviation, 9700 Airport Boulevard, San Antonio, Texas 78216, or to such other address as may have been designated in writing by the Director of Aviation of the City of San Antonio from time to time. Notices to Lessee shall be deemed sufficient if in writing and mailed, registered or certified mail, postage prepaid, addressed to Lessee at the address shown herein.

PROVISION 27

RELATIONSHIP OF PARTIES

27.1    Nothing contained herein shall be deemed or construed by the parties hereto, or by any third party, as creating the relationship of principal and agent, partners, joint venturers, or any other similar such relationship, between the parties hereto. It is understood and agreed that neither the method of computation of rent, nor any other provision contained herein, nor any acts of the parties hereto creates a relationship other than the relation-ship of Lessor and Lessee.

PROVISION 28

CUMULATIVE REMEDIES
NO WAIVER - NO ORAL CHANGE

28.1    The specific remedies to which Lessee or Lessor may resort under the terms of this Lease Agreement are cumulative and

are not intended to be exclusive of any other remedies or means of redress to which they may be lawfully entitled in case of any breach or threatened breach by either of them of any provision of this Lease Agreement. The failure of Lessee or Lessor to insist in any one or more cases upon the strict performance of any of the covenants of this Lease Agreement, or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of such covenant or option. A receipt by Lessor of payment of rent with knowledge of the breach of any covenant hereof shall not be deemed a waiver of such breach, and no waiver, change, modification or discharge by either party hereto of any provision of this Lease Agreement shall be deemed to have been made or shall be effective unless expressed in writing and signed by the party to be charged. In addition to the other remedies in this Lease Agreement provided, Lessee and Lessor shall be entitled to the restraint by injunction of the violation, or attempted violation, of any of the covenants, conditions, or provisions of this Lease Agreement, or to a decree compelling performance of any of such covenants, conditions or provisions (subject, however, to the other provisions hereof).

## PROVISION 29

### ENTIRE AGREEMENT

29.1    This lease contains the final and entire agreement between the parties hereto and contains all of the terms and conditions agreed upon, and supersedes all other agreements, oral or otherwise, regarding the subject matter of this lease, none of which shall hereafter be deemed to exist or to bind the parties hereto; it being the intent of the parties that neither shall be bound by any term, condition, or representations not herein written.

## PROVISION 30

### CONFLICT OF INTEREST

30.1    Lessee acknowledges that he is informed that Texas law prohibits contracts between the Lessor and its "officers" and "employees", and that the prohibition extends to an officer and employee of City of San Antonio agencies such as City of San Antonio owned utilities and certain City boards and commissions, and to contracts with any partnership, corporation or other organization in which the officer or employee has an interest. Lessee certifies (and this contract is made in reliance thereon) that neither he nor any person having an interest in this contract is an officer or employee of the City of San Antonio or any of its agencies.

## PROVISION 31

### PARTIES BOUND

31.1   This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns where permitted by this agreement.

## PROVISION 32

### TEXAS LAW TO APPLY

32.1   All obligations of the parties created hereunder are performable in Bexar County, Texas.  This Lease Agreement shall be construed under and in accordance with the laws of the State of Texas except where state law shall be preempted by any rules, laws or regulations of the government of the United States of America.

## PROVISION 33

### APPROVALS BY LESSOR

33.1   Whenever this Lease Agreement calls for approval by Lessor, such approval shall be evidenced by the written approval of the Director of Aviation of the City of San Antonio or the City Manager of the City of San Antonio or his designee.

## PROVISION 34

### GENDER

34.1   Words of any gender used in this Lease Agreement shall be held and construed to include any other gender and words in the singular number shall be held to include the plural, unless the context otherwise requires.

## PROVISION 35

### CAPTIONS

35.1   The paragraph captions contained herein are for convenience in reference and are not intended to define, extend or limit the scope of any provision of this agreement.

NOTE: IN THIS SPACE
WAS A MAP TO large
TO Microfilm.

## Somerville~Gonzales & Associates

12103 Jones Maltsberger
P.O. Box 16631
San Antonio, Texas 78216
(512) 496-6066

Metes and bounds description of a 22.707 acre (989,137.84 sq. ft.) tract of land:

**BEGINNING:** For reference at the point of intersection of the centerline of Runway 12 Left and the centerline of Taxiway D;

**THENCE:** N 41 deg 58 min 37 sec E, 605.00 feet, along the centerline of Taxiway D, to a point and N 48 deg 01 min 23 sec W, 200.00 feet, to the most southerly corner and point of beginning of the herein described tract;

**THENCE:** Along the southwest boundary of the herein described tract, N 48 deg 03 min 12 sec W, 705.00 feet; N 41 deg 56 min 48 sec E, 45.00 feet; and N 48 deg 03 min 12 sec W, 440.00 feet; to the most westerly corner of the herein described tract;

**THENCE:** Along the northwest boundary of the herein described tract, N 41 deg 58 min 37 sec E, 710.00 feet; N 03 deg 01 min 23 sec W, 106.07 feet; and N 41 deg 58 min 37 sec E, 342.79 feet; to the most northerly corner of the herein described tract;

**THENCE:** Along the north boundary of the herein described tract, S 81 deg 36 min 13 sec E, 8.26 feet, to the point of curvature of a 370.00 foot radius curve to the right;

**THENCE:** Continuing along the north boundary of the herein described tract and along the arc of said curve, 216.64 feet, to the point of tangency of said curve;

**THENCE:** Continuing along the north boundary of said curve, S 48 deg 03 min 22 sec E, 71.63 feet, to the most northeasterly corner of the herein described tract;

**THENCE:** Along the east boundary of the herein described tract, S 03 deg 03 min 22 sec E, 1324.46 feet, and S 41 deg 58 min 37 sec W, 302.54 feet, to the point of beginning and containing 22.707 acres (989,137.84 sq. ft.) of land more or less.

I hereby certify that the above metes and bounds are true and correct.

Paul A. Wilkinson, R.P.S. No. 4103
March 10, 1986
Job No. 86-08-012



EXHIBIT 2A

Somerville~Gonzales
& Associates
12103 Jones Maltsberger
P.O. Box 16631
San Antonio, Texas 78216
(512) 496-6066

Metes and bounds description of a 20.135 acre (877,060.41 sq. ft.) tract of land:

BEGINNING:   For reference at the point of intersection of the centerline of Runway 12 Left and the centerline of Taxiway D;

THENCE:   N 41 deg 58 min 37 sec E, 605.00 feet, along the centerline of Taxiway D, to a point;

THENCE:   N 48 deg 01 min 23 sec W, 200.00 feet, and N 48 deg 03 min 12 sec W, 705.00 feet, to the most southerly corner and point of beginning of the herein described tract;

THENCE:   Along the southwest boundary of the herein described tract, N 48 deg 03 min 12 sec W, 1407.41 feet, to the most westerly corner of the herein described tract;

THENCE:   Along the northwest boundary of the herein described tract, N 41 deg 58 min 37 sec E, 660.36 feet, to the most northerly corner of the herein described tract;

THENCE:   Along the north boundary of the herein described tract, S 72 deg 36 min 18 sec E, 389.77 feet, to the point of curvature of a 430.00 foot radius curve to the left;

THENCE:   Continuing along the north boundary of the herein described tract and along the arc of said curve, 67.53 feet, to the point of tangency of said curve;

THENCE:   Continuing along the north boundary of said curve, S 81 deg 36 min 13 sec E, 574.93 feet, to the most northeasterly corner of the herein described tract;

THENCE:   Along the east boundary of the herein described tract, S 41 deg 58 min 37 sec W, 342.79 feet; S 03 deg 01 min 23 sec E, 106.07 feet; S 41 deg 58 min 37 sec W, 710.00 feet; S 48 deg 03 min 12 sec E, 440.00 feet; and S 41 deg 56 min 48 sec W, 45.00 feet; to the point of beginning and containing 20.135 acres (877,060.41 sq. ft.) of land more or less.

I hereby certify that the above metes and bounds are true and correct.

Paul A. Wilkinson, R.P.S. No. 4103
March 10, 1986
Job No. 86-08-012

STATE OF TEXAS
PAUL A. WILKINSON
4103
REGISTERED PUBLIC SURVEYOR

EXHIBIT 2B

33 - 01 - 01

# CITY OF SAN ANTONIO

## CONSENT AGENDA

*Interdepartment Correspondence Sheet*

AGENDA ITEM NO: __33__

TO: City Council

FROM: Michael J. Kutchins, Director of Aviation

COPIES TO: City Manager; William T. Donahue; Budget & Research; Legal; Finance

SUBJECT: Lease of Airport Land to Jaffe Aerospace Corp.

Date March 21, 1986

### SUMMARY & RECOMMENDATION

The proposed ordinance authorizes the execution of a lease at San Antonio International Airport with Jaffe Aerospace Corp. for 989,138 sq. ft. of land for a term of 30 years. The proposed lessee plans to make capital improvements in excess of $5,000,000 in furtherance of its use of the premises for the hangaring, modification, maintenance and repair of aircraft.

The proposed ordinance also grants a one year option to the Lessee to lease the abutting 877,060 sq. ft. of land for expansion purposes.

Approval is recommended.

### POLICY ANALYSIS

The proposed ordinance is in keeping with Council policy. The business activities of the Lessee will not only contribute lease revenues to the airport but will also have a beneficial effect upon the community at large by the creation of more than 200 jobs.

### FINANCIAL DATA

The proposed lessee will pay an annual rental of $118,696 for the leased premises and the sum of $52,624 for the one year option. Should the option to add additional square footage to the leasehold be exercised, the annual rental rate will be $186,620. The rentals payable under the lease will escalate at five year intervals in accordance with standard airport lease provisions.

APPROVED:

_____
Louis J. Fox
City Manager

_____
Michael J. Kutchins, A.A.E.
Director of Aviation

## CITY OF SAN ANTONIO

## Request For Ordinance/Resolution

| Date: March 21, 1986 | Department: AVIATION | Contact Person/Phone # Carol A. Tucker  821-3450 |
|---|---|---|
| Date Council Consideration Requested: March 27, 1986 | Deadline for Action | Dept. Head Signature: |

### SUMMARY OF ORDINANCE

The proposed Ordinance authorizes the execution of a lease at San Antonio International Airport with Jaffe Aerospace Corp. for 989,138 sq. ft. of land for a term of 30 years. The proposed lessee plans to make capital improvements in excess of $5,000,000 in furtherance of its use of the premises for the hangaring, modification, maintenance and repair of aircraft.

The proposed ordinance also grants a one year option to the Lessee to lease the abutting 877,060 sq. ft. of land for expansion purposes.

Approval is recommended.

### Council Memorandum Must Be Attached To Original

Other Depts., Boards, Committees Involved (please specify):

Contract signed by other party

Yes ☐     No ☐

| FISCAL DATA (if Applicable) | | Budgetary Implications |
|---|---|---|
| Fund No. 51-001 | Amt. Expended _____ | Funds/Staffing Budgeted    Yes ☐    No ☐ |
| Activity No. 33-02-04 | SID No._____ | Positions Currently Authorized |
| Index Code 031088 | Project No._____ | Impact on future O & M _____ |
| Object Code_____ | | If positions added, specify class and no. |

Comments:

Coordinator — White
Legal — Green
Budget — Canary
Finance — Pink
Originator — Gold

4/1/82 Ref. A.D. 7.71

TO:        Finance Department

FROM:    Norma S. Rodriguez, City Clerk

COPIES TO:    Aviation Department, File

SUBJECT:    Surety Bond

Date April 17, 1986

Transmitted for safekeeping is Surety Bond No. R756649 issued by Royal Indemnity Company, in the amount of $120,000.00 for Jaffe Aerospace Corp., Contract No. 124099 (Ordinance No. 62582).

NORMA S. RODRIGUEZ
City Clerk

NSR:gmc

Attachments

# CITY OF SAN ANTONIO

Interdepartment Correspondence Sheet

RECEIVED
CITY OF SAN ANTONIO

1986 APR 14  PM 2:33

TO:  City Clerk

FROM:  Aviation Department

COPIES TO:  Internal Audit

SUBJECT:  Certificate of Insurance and Surety Bond For Jaffe Aerospace Corp.

Date  April 7, 1986

Transmitted is a Certificate of Insurance (General Liability,
Auto Liability & Workers' Compensation) and Surety Bond No. R756649

Issued by National Union Fire Insurance Co. of Pittsburg, Pa.,
Houston General Insurance Co., and Royal Indemnity Co.

For Jaffe Aerospace Corporation

Contract No. 124099 (Ord. No. 62582)

Effective for one year periods ending January 13, 1987 (General
Liability and Workers' Compensation), April 11, 1986 (Automobile
Liability), and April 1, 1987 (Surety Bond)

Copies of these documents have been retained for our files.

For Michael J. Kutchins, A.A.E.
Director of Aviation

Attachments

MJK:bap

# acord. CERTIFICATE OF INSURANCE

ISSUE DATE (MM/DD/YY)
3-25-86

**PRODUCER**

Terrell Agency
P. O. Box 35948
Dallas, Texas 75235

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

## COMPANIES AFFORDING COVERAGE

| COMPANY LETTER | | |
|---|---|---|
| A | National Union Fire Insurance Co. of Pittsburg, Pa. |
| B | Houston General Insurance Co. |
| C | |
| D | |
| E | |

**INSURED**

Jaffe Aerospace Corp.
935 Paul Wilkins Rd.
San Antonio, Texas 78216

## COVERAGES

THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIABILITY LIMITS IN THOUSANDS | |
|---|---|---|---|---|---|---|
| | | | | | EACH OCCURRENCE | AGGREGATE |
| A | **GENERAL LIABILITY** | AP983-7149 | 1-13-86 | 1-13-87 | | |
| | X COMPREHENSIVE FORM | | | | BODILY INJURY $ | $ |
| | X PREMISES/OPERATIONS | | | | | |
| | UNDERGROUND | | | | PROPERTY DAMAGE $ | $ |
| | EXPLOSION & COLLAPSE HAZARD | | | | | |
| | PRODUCTS/COMPLETED OPERATIONS | | | | BI & PD COMBINED $ 5,000 | $ 5,000 |
| | X CONTRACTUAL | | | | | |
| | X INDEPENDENT CONTRACTORS | | | | | |
| | X BROAD FORM PROPERTY DAMAGE | | | | | |
| | X PERSONAL INJURY | | | | PERSONAL INJURY | $ 5,000 |
| B | **AUTOMOBILE LIABILITY** | 5GA220398 | 4-11-85 | 4-11-86 | | |
| | X ANY AUTO | | | | BODILY INJURY PER PERSON $ | |
| | ALL OWNED AUTOS (PRIV. PASS) | | | | | |
| | ALL OWNED AUTOS (OTHER THAN PRIV. PASS) | | | | BODILY INJURY PER ACCIDENT $ | |
| | X HIRED AUTOS | | | | PROPERTY DAMAGE $ | |
| | X NON OWNED AUTOS | | | | | |
| | GARAGE LIABILITY | | | | BI & PD COMBINED $ 1,000 | |
| | **EXCESS LIABILITY** | | | | | |
| | UMBRELLA FORM | | | | BI & PD COMBINED $ | $ |
| | OTHER THAN UMBRELLA FORM | | | | | |
| A | **WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY** | WC653-0689 | 1-13-86 | 1-13-87 | STATUTORY | |
| | | | | | $ 100 (EACH ACCIDENT) | |
| | | | | | $ 500 (DISEASE-POLICY LIMIT) | |
| | OTHER | | | | $ 100 (DISEASE EACH EMPLOYEE) | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS**

City of San Antonio is named as Additional Insured but only as respects operations of Jaffe Aerospace Corp.

## CERTIFICATE HOLDER

City of San Antonio,
Office of the Director of Aviation
San Antonio International Airport
9800 Airport Blvd.
San Antonio, Texas 78217

## CANCELLATION

premium

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL XXXXXXXXXXXX MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

AUTHORIZED REPRESENTATIVE

*Charles T. Terrell*

ACORD 25 (1984)

© ACORD CORPORATION 1984

RECEIVED
CITY OF SAN ANTONIO
CITY CLERK

1986 APR 14 PM 2: 33

STATE OF TEXAS    )(
                  )(    KNOW ALL MEN BY THESE PRESENTS
COUNTY OF BEXAR   )(

That we,    Jaffe Aerospace Corp.    hereinafter called
"Principal" and    Royal Indemnity Company    a Surety company licensed
to do business in Texas, hereinafter called "Surety" are jointly and severally
bound unto the City of San Antonio, hereinafter called "City", in the penal
sum of    One Hundred Twenty Thousand and no/100    dollars ($120,000.00),
to the payment of which well and truly to be made we hereby bind ourselves and
our heirs, legal representatives, successors and assigns, jointly and severally,
by these presents.

The condition of this obligation is such that the Principal has entered
into a contract, binding the Principal to the City for performance of terms and
covenants contained therein, such contract being known as the San Antonio Inter-
national Airport Lease and initially covering 22.707 acres located at San Antonio
International Airport.

NOW, THEREFORE, if said Principal shall well and truly perform its (his)
obligations, including but not limited to the payment of rents and/or other
monies to the City, under the aforesaid contract, then this obligation shall be
null and void; otherwise, it shall remain in full force and effect.

Provided that the obligation of the Surety shall cover the one year period
beginning the 1st day of April, 19 86 , and shall cover additional period (s)
of one year each only upon issuance of continuation certificate(s) by Surety,
provided, however, that Surety shall issue such continuation certificate(s)
throughout the term of the above referenced contract unless written notice that
the obligation of Surety will not be renewed is received by City not later than
thirty (30) days prior to expiration date of this Bond or any continuation hereof.

Executed this 25th day of March , 19 86 .

(SEAL)

                                    Jaffe Aerospace Corp.
                                         (Principal)

                              By:
                                    Morris D. Jaffe, Jr.
                                    President
                                         (Title)

(SEAL)

                                    Royal Indemnity Company
                                         (Surety)

Bond No.  R756649
                              By:
                                    (Attorney-in-fact)

(Copy of current power of attorney executed by surety company showing authority
of attorney-in-fact must be attached).

# Power of Attorney

No. 15670

**KNOW ALL MEN BY THESE PRESENTS:** That the ROYAL INDEMNITY COMPANY _____, a Corporation organized and existing under and by virtue of the laws of the State of DELAWARE _____, pursuant to Article V, Section 1 of the By-Laws of said Company, an extract from which is hereunto attached, does hereby nominate, constitute and appoint _____

_____ B. J. Brown or James B. Wilkerson or _____
_____ Margie Shaw _____

_____ of DALLAS _____, in the State of TEXAS _____ its true and lawful attorney(s)-in-fact to make, execute, attest, seal and deliver for and on its behalf, as surety, and as its act and deed, where required, any and all bonds, undertakings, recognizances and written obligations in the nature thereof, the penal sum of no one of which is in any event, to exceed

TWO HUNDRED THOUSAND _____ $200,000.00 Dollars.

Such bonds and undertakings, when duly executed by the aforesaid Attorney(s)-in-fact shall be binding upon the said Company as fully and to the same extent as if such bonds and undertakings were signed by the President and Secretary of the Company and sealed with its corporate seal.

**IN WITNESS WHEREOF, the** ROYAL INDEMNITY COMPANY _____ has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 1 day of April _____, 19 80 .

Attest: ELEANOR CHRISTIANSEN
*Assistant Secretary*

By G.J. DYKHOUSE
*Vice President*

STATE OF NEW YORK }
COUNTY OF NEW YORK } ss.:

ELEANOR CHRISTIANSEN _____, being duly sworn, deposes and says:

That she is an Assistant Secretary of the ROYAL INDEMNITY COMPANY _____ the corporation described in and which executed the above instrument; that she knows the corporate seal of the said corporation; that the seal affixed to the aforementioned instrument is the corporate seal of the said Company and was affixed thereto by order and authority of the Board of Directors of the said Company, that she signed her name thereto by like order and authority; that she is acquainted with G. J. Dykhouse _____ and knows him to be the Vice President of the said Company; that the signature subscribed to the said instrument is in the handwriting of the said G. J. Dykhouse _____ and was subscribed thereto by order and authority of the said Board of Directors and she further states that the following is a true copy of an extract from the By-Laws of said Company, and that the By-Laws are now in full force and effect:

"The President, any Vice President, or any other Officer designated by the Board of Directors, shall have power and authority to appoint Resident Vice Presidents, Resident Secretaries, Resident Assistant Secretaries, and Attorneys-in-fact and to give such appointees full power and authority to sign and to seal with the Company's seal, where required, all policies, bonds, recognizances, stipulations and all underwriting undertakings, and he may at any time in his judgment remove any such appointees and revoke any authority given to them."

Sworn to before me this 1 day of April _____ 19 80 .

ELEANOR CHRISTIANSEN
*Assistant Secretary*

Anne Leykum, Notary Public, State of New York
No. 41-2351725, Qualified in Queens County
Certificate filed with N.Y. Co. Clerk
Commission Expires March 30, 1981

STATE OF NEW YORK }
COUNTY OF NEW YORK } ss.:

I, Sophie Calcagnile _____, Assistant Secretary of the ROYAL INDEMNITY COMPANY _____, a corporation of the State of Delaware _____, do hereby certify that the above and foregoing is a full, true and correct copy of Power of Attorney issued by said Company, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Company, at the City of New York, this 25th day of March _____, 19 80 .

*Sophie Calcagnile*
*Assistant Secretary*

CF64683-2300-2-63

# CITY OF SAN ANTONIO

Interdepartment Correspondence Sheet

RECEIVED
CITY OF SAN ANTONIO

'86 MAY 22  PM 12: 36

TO: __City Clerk__

FROM: __Aviation Department__

COPIES TO: __Internal Audit__

SUBJECT: __Certificate of Insurance for Jaffe Aerospace Corp.__

Date __May 13, 1986__

Transmitted is a Certificate of Insurance (Automobile Liability)
Written by Houston General Insurance Co.
For Jaffe Aerospace Corp.
Contract No. 124099 (Ord. No. 62582)
Effective for a one year period ending April 11, 1987.
A copy of this document has been retained for our files.


Michael J. Kutchins, A.A.E.
Director of Aviation

Attachment

MJK:bap

# acord. CERTIFICATE OF INSURANCE

ISSUE DATE (MM/DD/YY)
5-8-86

**PRODUCER**

Terrell Agency
P. O. Box 35948
Dallas, Texas 75235

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

## COMPANIES AFFORDING COVERAGE

| | |
|---|---|
| COMPANY LETTER A | Houston General Insurance Co. |
| COMPANY LETTER B | |
| COMPANY LETTER C | |
| COMPANY LETTER D | |
| COMPANY LETTER E | |

**INSURED**

Jaffe Aerospace Corp.
935 Paul Wilkins Rd.
San Antonio, Texas 78216

## COVERAGES

THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIABILITY LIMITS IN THOUSANDS EACH OCCURRENCE | AGGREGATE |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | BODILY INJURY $ | $ |
| | ☐ COMPREHENSIVE FORM | | | | | |
| | ☐ PREMISES/OPERATIONS | | | | | |
| | ☐ UNDERGROUND | | | | PROPERTY DAMAGE $ | $ |
| | ☐ EXPLOSION & COLLAPSE HAZARD | | | | | |
| | ☐ PRODUCTS/COMPLETED OPERATIONS | | | | | |
| | ☐ CONTRACTUAL | | | | BI & PD COMBINED $ | $ |
| | ☐ INDEPENDENT CONTRACTORS | | | | | |
| | ☐ BROAD FORM PROPERTY DAMAGE | | | | | |
| | ☐ PERSONAL INJURY | | | | PERSONAL INJURY $ | |
| A | **AUTOMOBILE LIABILITY** ☒ ANY AUTO | 5GA254131 | 4-11-86 | 4-11-87 | BODILY INJURY (PER PERSON) $ | |
| | ☐ ALL OWNED AUTOS (PRIV. PASS.) | | | | | |
| | ☐ ALL OWNED AUTOS (OTHER THAN PRIV. PASS.) | | | | BODILY INJURY (PER ACCIDENT) $ | |
| | ☒ HIRED AUTOS | | | | PROPERTY DAMAGE $ | |
| | ☒ NON-OWNED AUTOS | | | | | |
| | ☐ GARAGE LIABILITY | | | | BI & PD COMBINED $1,000 | |
| | **EXCESS LIABILITY** | | | | BI & PD COMBINED $ | $ |
| | ☐ UMBRELLA FORM | | | | | |
| | ☐ OTHER THAN UMBRELLA FORM | | | | | |
| | **WORKERS' COMPENSATION** AND **EMPLOYERS' LIABILITY** | | | | STATUTORY $ (EACH ACCIDENT) $ (DISEASE-POLICY LIMIT) $ (DISEASE-EACH EMPLOYEE) | |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/RESTRICTIONS/SPECIAL ITEMS

City of San Antonio is named as Additional Insured but only as respects operations of
Jaffe Aerospace Corp.

**CERTIFICATE HOLDER**

City of San Antonio
Office of the Director of Aviation
San Antonio International Airport
9800 Airport Blvd.

San Antonio, Texas 78217

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES

AUTHORIZED REPRESENTATIVE

IIR/ACORD CORPORATION 1984



# GENERAL CHANGE ENDORSEMENT

It is understood and agreed that thirty (30) days notice of cancellation will be given to City of San Antonio, Office of the Director of Aviation, San Antonio International Airport, 9800 Airport Blvd., San Antonio, Texas 78217 in event policy is cancelled except ten (10) days for non-payment of premium.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

**Endorsement effective** 4-11-86        **Policy No.** 5GA254131        **Endorsement No.**

**Named Insured**   Jaffe Aerospace Corp.

**Additional Premium:** $
**Return Premium:** $

HOUSTON GENERAL INSURANCE COMPANY
TRADERS & GENERAL INSURANCE COMPANY
HOUSTON GENERAL LLOYDS
Fort Worth, Texas 76113

Countersigned by _____

*Charles T. Terrell*
Terrell Agency
(Authorized Representative)

140-0003 (5-84) Snapout 6 Part                    ORIGINAL



## 2493638

### MEMORANDUM OF LEASE

This Memorandum of Lease is entered into by the City of San Antonio, a Texas municipal corporation ("Lessor") and Comtran International, Inc., a Texas corporation ("Lessee"). Lease No. 124099 between Lessor and Jaffe Aerospace Corp. at the San Antonio International Airport was executed pursuant to Ordinance No. 62582, adopted on March 27, 1986 (the "Original Lease"). The Original Lease was amended by Amendment of Lease between Lessor and Jaffe Aerospace Corp. executed pursuant to Ordinance No. 75704, adopted on April 30, 1992 (the "First Amendment"). Effective on December 14, 1992, Lessee and Jaffe Aerospace Corp. merged, with Lessee being the surviving corporation. The Original Lease was further amended by Amendment of Lease between Lessor and Lessee executed pursuant to Ordinance No. 78186, adopted on June 24, 1993 (the "Second Amendment").

The Original Lease, as amended by the First Amendment and the Second Amendment (collectively, the "Lease") covers the premises located at the San Antonio International Airport, San Antonio, Bexar County, Texas, more particularly described on Exhibit "A" attached hereto and made a part hereof for all purposes (the "Demised Premises"). Lessor and Lessee have entered into the Lease wherein Lessor demised and leased to Lessee the Demised Premises upon the terms and conditions set forth in the Lease.

Executed as of the 4th day of August, 1993.

ATTEST:

_Dara L. Acosta_

ATTEST:

_Patricia Porro_

CITY OF SAN ANTONIO

BY: _____

Name: MICHAEL J KUTCHINS

Title: DIRECTOR OF AVIATION

COMTRAN INTERNATIONAL, INC.

BY: _____

Name: Morris D. Jaffe, Jr.

Title: President

VOL 5750 PG 1628

COSA.MOL

08-05-93 0850811 0283936    $11.00 Y 01 09053
08-05-93 0850811 0283937    $5.00 Y 05 09053

STATE OF TEXAS      §
                         §
COUNTY OF BEXAR    §

This instrument was acknowledged before me on the 5<u>th</u> day of August, 1993 by <u>Michael J. Kutchins</u>, <u>Director of Aviation</u> of the City of San Antonio.



PHILIP D. ROELL
Notary Public, State of Texas
My Commission Expires
12/10/95

_____
NOTARY PUBLIC, STATE OF TEXAS


STATE OF TEXAS      §
                         §
COUNTY OF BEXAR    §

This instrument was acknowledged before me on the 4<u>th</u> day of August, 1993 by <u>Morris D. Jaffe, Jr.</u>, <u>President</u> of Comtran International, Inc.



GINA M. JONES
Notary Public, State of Texas
My Commission Expires
12/10/96

_____
NOTARY PUBLIC, STATE OF TEXAS


please return to:
SERVICE TITLE Co.
2139 N.W. MILITARY Hwy - Suite 109
SAN ANTONIO TEXAS
78213

VOL 5750 PG 1629

METES AND BOUNDS DESCRIPTION
10.45355 ACRE LEASE AREA
SAN ANTONIO INTERNATIONAL AIRPORT
CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS

A tract of land containing 10.45355 acres (455,356 square feet) of land, located on the grounds of the San Antonio International Airport, and being a portion of Lot 44, New City Block 8644, as shown on the Subdivision Plat of North Airport Parkway, recorded in Volume 9516, Pages 195-198 of the Deed and Plat Records of Bexar County, Texas, and being more particularly described as follows:

BEGINNING    at an iron pin found at the most southerly corner of Lot 44, N.C.B. 8644;

THENCE:    with the southwesterly line of Lot 44, N 48°38'22" W, a distance of 674.92 feet to an iron pin set;

THENCE:    departing from said southwesterly line and running through Lot 44 the following eight (8) courses and distances:

:    N 41°23'27" E, a distance of 284.94 feet to an "+" scribed in concrete;

:    N 48°36'33" W, a distance of 17.28 feet to an iron pin set;

:    N 41°23'27" E, a distance of 166.51 feet to an iron pin set;

:    S 48°36'33" W, a distance of 17.28 feet to an iron pin set;

:    N 41°23'27" E, a distance of 475.91 feet to an iron pin set;

:    N 03°38'32" W a distance of 229.19 feet to an iron pin set;

:    N 18°44'00" W a distance of 158.88 feet to an iron pin set, and

:    N 03°38'32" W, a distance of 97.23 feet to an iron pin set on the arc of a curve to the right in the southwesterly right-of-way line of Skyplace Boulevard (60.0' R.O.W.);

THENCE:    34.96 feet along the arc of said curve, having a radius of 370.00 feet, an interior angle of 05°24'51", and a chord bearing and chord of S 51°27'57" E, 34.95 feet, respectively, to an iron pin found at the point of tangency of said curve;

THENCE:    continuing along the southwesterly right-of-way line of Skyplace Boulevard, S 48°38'32" W, a distance of 71.64 feet to an iron pin found;

VOL 5750 PG 1630

10.45355 Acre Lease Tract
San Antonio International Airport
Page 2 of 2

THENCE:   departing from Skyplace Boulevard and with the easterly line of aforementioned Lot 44, S 03°38'32" E, a distance of 1324.46 feet to an iron pin found at the most easterly corner of Lot 44;

THENCE:   with the southeasterly line of Lot 44, S 41°23'27" W, a distance of 302.54 feet

to the POINT OF BEGINNING, containing 10.45355 acres (455,356 square feet) of land, more or less.

Joseph L. Kroesche, Sr.
Registered Professional Land Surveyor #2493

April 27, 1982

Exhibit "A"
Page 3 of 3



CURVE DATA
R = 370.00'
Δ = 05°24'51"
L = 34.96'
T = 17.50'
C = 34.95'
CB = S 51°20'57" E

SCALE : 1" = 200'

PART OF
LOT 44
N.C.B. 8644

PART OF
LOT 44
N.C.B. 8644
10.45335 ACRES
455,358 SQ.FT.

FARWAY ROMEO

JAFFE AEROSPACE CORPORATION
LEASE TRACT
SAN ANTONIO INTERNATIONAL AIRPORT

GADDIS/SIMPSON ENGINEERS, INC.
SAN ANTONIO, TEXAS

DATE : 4-27-1992    SCALE : 60'

Any provision herein which restricts the sale, rental, or use of the
described real property because of race is invalid and unenforceable under
federal law.

STATE OF TEXAS, COUNTY OF BEXAR
    I hereby certify that this instrument was FILED in File Number
Sequence on the date and at the time stamped hereon by me and was
duly RECORDED in the Official Public Records of Real Property of Bexar
County, Texas on:

AUG. 0 6 1993

County Clerk Bexar County, Texas

FILED IN MY OFFICE
ROBERT D. GREEN
COUNTY CLERK, BEXAR CO

1993 AUG -5 PM 3:50

RECORDER'S MEMORANDUM
AT THE TIME OF RECORDATION THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARBON OR
PHOTO COPY, DISCOLORED PAPER, ETC.

VOL 5750 PG 1633

99- 0156494

AN ORDINANCE 8 3 9 5 5

AUTHORIZING THE EXECUTION OF AN AMENDMENT OF
LEASE FOR COMTRAN INTERNATIONAL, INC., A
TENANT AT SAN ANTONIO INTERNATIONAL AIRPORT,
TO ADD APPROXIMATELY 66,932 SQUARE FEET OF
LAND AREA, ADJUST THE INSURANCE
REQUIREMENTS, AND INCREASE THE PERFORMANCE
GUARANTEE TO $61,200.00
(AMENDS ORDINANCE NO. 62582 OF MARCH 27, 1986)

*     *     *     *     *

**WHEREAS,** Lease No. 124099 with Jaffe Aerospace Corp. at San
Antonio International Airport was executed pursuant to Ordinance
No. 62582 adopted on March 27, 1986 for a thirty year term ending
on March 31, 2016, and

**WHEREAS,** effective on December 14, 1992, Comtran International,
Inc. and Jaffe Aerospace Corp. merged, with Comtran
International, Inc. being the surviving corporation; and

**WHEREAS,** effective on August 19, 1993 the Assistant City Manager
executed an agreement consenting to the collateral assignment and
mortgaging of the San Antonio International Airport Lease No.
200672 by Comtran International, Inc. to International Bank of
Commerce; and

**WHEREAS,** Comtran International, Inc. has subleased a portion of
the Leased Premises to Sino - Swearingen L.P. to be utilized for
the operation of an aircraft building, testing, modification,
repair facility, and office building; and

**WHEREAS,** as a result of increased operations and a sublease to Sino
- Swearingen L.P., there is a shortage of employee automobile
parking spaces, and Comtran International, Inc. has requested that
it be permitted to lease additional ground space; and

**WHEREAS,** Lessor and Lessee wish to amend the Lease Agreement to
increase the area of the ground premises, adjust the insurance
requirements, and increase the performance guarantee in accordance
with the agreement of the parties; NOW THEREFORE:

**BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF SAN ANTONIO:**

**SECTION 1.** The City Manager or his designee is hereby authorized
and directed to execute the Amendment of Lease, a copy of which is

VOL8094 PG1681

attached hereto as Attachment I and incorporated by reference herein for all purposes, with Comtran International, Inc.

PASSED AND APPROVED THIS _18th_ day of _April_, 1996.

M A Y O R

ATTEST: _Norma S. Rodriguez_
City Clerk

APPROVED AS TO FORM:
City Attorney

# 96-16

STATE OF TEXAS
COUNTY OF BEXAR } SS.
CITY OF SAN ANTONIO

CERTIFIED COPY

The undersigned, the City Clerk of the City of San Antonio in the State and County afore said, does by these presents certify that the attached and foregoing is a true and exemplified copy of a part of the records, papers and books in the Office of the City Clerk; and, that I am the custodian of such papers, books and records as an officer of the City of San Antonio.

Given under my hand and the official seal of the City of San Antonio, this _12th_ day of _August_ 19 _99_.

[SEAL]

City Clerk, City of San Antonio.



VOL 8094 PG 1682

# AMENDMENT OF LEASE

**WHEREAS,** Lease No. 124099 with Jaffe Aerospace Corp. at San Antonio International Airport was executed pursuant to Ordinance No. 62582 adopted on March 27, 1986 for a thirty year term ending on March 31, 2016, and

**WHEREAS,** effective on December 14, 1992, Comtran International, Inc. and Jaffe Aerospace Corp. merged, with Comtran International, Inc. being the surviving corporation; and

**WHEREAS,** effective on August 19, 1993 the Assistant City Manager executed an agreement consenting to the collateral assignment and mortgaging of the San Antonio International Airport Lease No. 200672 by Comtran International, Inc. to International Bank of Commerce; and

**WHEREAS,** Comtran International, Inc. has subleased a portion of the Leased Premises to Sino - Swearingen L.P. to be utilized for the operation of an aircraft building, testing, modification, repair facility, and office building; and

**WHEREAS,** as a result of increased operations and a sublease to Sino - Swearingen L.P., there is a shortage of employee automobile parking spaces, and Comtran International, Inc. has requested that it be permitted to lease additional ground space; and

**WHEREAS,** Lessor and Lessee wish to amend the Lease Agreement to increase the area of the ground premises in accordance with the agreement of the parties; **NOW THEREFORE:**

Lessor and Lessee for and in consideration of the mutual covenants and promises herein contained, and in consideration of other good and valuable consideration, each to the other given, the sufficiency and receipt of which are hereby acknowledged, Lease No. 124099 by and between the City of San Antonio and Comtran International, Inc. authorized by Ordinance No. 62582 adopted on March 27, 1986 as amended, is hereby further amended as follows:

A. Section 1 of said lease is hereby amended to read in its entirety as below set forth:

"1. DESCRIPTION OF PREMISES DEMISED

Lessor, for and in consideration of the rents, covenants and promises herein contained to be kept, performed and observed by Lessee, does hereby demise and lease unto Lessee and Lessee does hereby accept from Lessor the following premises located at the San Antonio International Airport (hereinafter called "Airport"), San Antonio, Bexar County, Texas, as shown on Exhibit 2B which is attached hereto and made a part hereof.

AUS 8094 PG 1683

83955

455,356± square feet of land
and 66,932± square feet of land
added by amendment"

B.    Section 2 of said Lease Agreement is hereby amended to
read in its entirety as below set forth:

"2.    BASE RENTAL

Lessee agrees to pay Lessor as rental, monthly in advance
(without notice or demand, both of which are expressly waived)
for the use and occupancy of the Leased Premises, at the times
and in the manner hereinafter provided:

| Premises | Rate Per Sq. Ft. | Annual Rental | Monthly Rental |
|---|---|---|---|
| 455,356 ± square feet of ground space | $0.125 | $56,919.50 | $4,743.29 |
| 66,932 ± square feet of ground space | $0.125 | $8,366.50 | $697.21 |

subject to the adjustments in rental rates set forth in
Standard Provision 1 of this Lease Agreement.

All amounts payable to Lessor by Lessee under this Lease
Agreement, whether or not expressly denominated as rent, shall
constitute rent for the purposes of the Bankruptcy Code of the
United States of America. All rentals and payments that
become due and payable by the Lessee shall be made to the City
of San Antonio, Office of the Aviation Director, San Antonio
International Airport, 9800 Airport Blvd., San Antonio, Bexar
County, Texas or to such other address as shall be designated
by Lessor. All rentals and payments unpaid for ten (10) days
after the date due shall bear interest at the rate of ten (10)
percent per annum commencing on the date after each such
payment was due."

ADDITIONAL RENTAL PROVISIONS

The parties hereto agree that the square footage of the land
added by this Amendment of Lease and expressed in Sections 1
and 2 of this Lease Agreement is not based upon a professional
survey of the ground premises and that subsequent to the
execution of this Amendment of Lease the ground premises will
be surveyed for the purpose of determining the actual square
footage of the land added by this Amendment of Lease to this
Lease Agreement. Lessor and Lessee further agree that until
such time as the future Survey is complete and the Lessor

- 2 -