gives Lessee written notice of the Survey results and actual square footage of the land added by this Amendment of Lease the square footage shall be that amount used in Sections 1 and 2 of this Amendment of Lease. Lessee agrees, understands and accepts the fact that as a result of the future Survey, Lessee's monthly and yearly rental amounts may be increased or decreased. In such event, the increased or decreased amounts shall be automatically substituted herein, and shall be retroactively effective from the effective day of this Amendment of Lease. Lessee shall receive written notice of the adjusted square footage and rental amount from the Director subject to all other terms and conditions herein contained. Written notice shall include the new square footage and rental amounts and any revisions to Sections 1 and 2. Such notice shall be filed of record with the City Clerk and shall automatically become a part of the Lease Agreement.

C. Section 6 of said Lease is hereby amended to read in its entirety as below set forth:

## "6. INSURANCE

Prior to occupancy of the Leased Premises and the conduct of any business thereupon, Lessee shall furnish original Certificates of Insurance to Lessor, which shall be completed by an agent authorized to bind the named underwriter(s) and their company to the coverages, limits, and termination provisions shown thereon, and which shall furnish and contain all required information referenced or indicated thereon. Lessor shall have no duty to perform under this Lease Agreement until such certificates shall have been delivered to the Lessor, and no officer or employee shall have authority to waive this requirement."

Lessor reserves the right to review the insurance requirements of this section during the effective period of the Lease Agreement and any extension or renewal hereof and to modify insurance coverages and their limits when deemed necessary and prudent by the Lessor's Risk Manager based upon changes in statutory law, court decisions, or circumstances surrounding the Lease Agreement, but in no instance will Lessor allow modification whereupon Lessor may incur increased risk."

Lessee's financial integrity is of interest to Lessor, therefore, subject to Lessee's right to maintain reasonable deductibles in such amounts as are approved by Lessor, Lessee shall obtain and maintain in full force and effect for the duration of the Lease Agreement, and any extension hereof, at Lessee's sole expense, insurance coverage written by companies authorized and admitted to do business in the State of Texas and rated A or better by A.M. Best Company and/or otherwise acceptable to Lessor, in the following types and amounts:"

- 3 -

VOL8094 PG1685

| Type | Amount |
|------|--------|
| (1) Workers' Compensation Employers' Liability | Statutory $500,000/$500,000/ $500,000 |
| (2) Commercial General (public) Liability Insurance to include coverage for the following: | Combined Single Limit for Bodily Injury and Property Damage of $ 5,000,000.00 per occurrence or its equivalent with an aggregate of not less than $5, 000,000.00 |
| (A) Premises/Operations (B) Independent Contractors (C) Personal Injury (D) Contractual Liability (E) Broad Form Property Damage to Include Fire Legal Liability (F) Products and Completed Operations | |
| (3) Businesss Personal Property Insurance (optional) | Equal to Inventory |
| Contents, Betterments and Improvements | Eighty Percent of replacement cost |
| (4) Comprehensive Automobile Liability: | Combined Single Limit for Bodily Injury and Property Damage of $1,000,000.00 per occurrence or its equivalent. |
| (A) Owned/leased vehicles (B) Non-owned vehicles (C) Hired vehicles | |
| (5) Aircraft Liability: | $5,000,000.00 per occurrence, combined single limit, written on an occurrence form. |
| (6) Underground Storage Liability | $1,000,000.00 per occurrence, combined single limit, written on an occurrence form. |
| (7) Plate Glass Coverage for Leased Premises, if applicable | Replacement Cost Insurance Coverage |

Lessor shall be entitled, upon request and without expense, to receive copies of the polices and all endorsements thereto as they apply to the limits required by Lessor, and may make a reasonable request for deletion, revision, or modification of

- 4 -

108094 PBI686

particular policy terms, conditions, limitations or exclusions (except where policy provisions are established by law or regulation binding upon either of the parties hereto or the underwriter of any such policies). Upon such request by Lessor, the Lessee shall exercise reasonable efforts to accomplish such changes in policy coverages, and shall pay the cost thereof.

Lessee agrees that with respect to the above required insurance, all insurance contracts and Certificate(s) of Insurance will contain the following required provisions:"

- Name Lessor and its officers, employees, agents and elected representatives as additional insureds (as the interest of each insured may appear), as to all applicable coverage, with the exception of the workers' compensation and employers' liability policy;

- Provide for an endorsement that the "other insurance" clause shall not apply to the City of San Antonio where Lessor is an additional insured shown on the policy;

- Workers' compensation and employers' liability policy will provide a waiver of subrogation in favor of Lessor.

Lessee shall notify Lessor in the event of any notice of cancellation, non-renewal or material change in coverage and shall give such notices not less than thirty (30) days prior to the change, which notice must be accompanied by a replacement Certificate of Insurance. All notices shall be given to the Lessor by Certified Mail at the following address:"

Aviation Director
City of San Antonio
9800 Airport Blvd.
San Antonio, Texas 78216-9990

City of San Antonio
City Clerk's Office
P.O. Box 839966
City Hall - Second Floor
100 Military Plaza
San Antonio, Texas
78283-3966

The proceeds for any such insurance, paid on account of fire, explosion or other damage shall be used to defray the cost of repairing, restoring or reconstructing said improvements, as necessary."

It is expressly understood and agreed that all operations of Lessee under this Lease Agreement between Lessor and Lessee shall be covered by such policies of insurance or self insurance and that all personal property placed in the Leased Premises shall be at the sole risk of Lessee. The procuring

- 5 -

of policies of insurance shall not be construed to be a limitation upon Lessee's liability or as a full performance on its part of the indemnification provisions of this contract. Lessee's obligations are notwithstanding said policy of insurance, for the full and total amount of any damage, injury or loss caused by or attributable to its activities conducted at or upon the Airport."

D. The amount of the Performance Guarantee required in Section 7 of said Lease is hereby amended to be "$61,200.00."

E. This Amendment of Lease shall become effective on the first day of the calendar month following the passage of the ordinance authorizing the execution by Lessor of this Amendment of Lease.

Except as amended hereby, all other provisions of Lease No. 124099 and all prior amendments thereto are hereby retained in their entirety and remain unchanged.

EXECUTED this _____ day of _____, 1996.

ATTEST:

_____
ST. CITY CLERK

ATTEST:

_____

CITY OF SAN ANTONIO, Lessor

By: _____
Assistant City Manager

COMTRAN INTERNATIONAL, INC.,
Lessee

By: _____
Signature

M.D. JAFFE, JR.
Printed Name

PRESIDENT
Title

1770 SKY PLACE BLVD.
SAN ANTONIO, TX 78216
Mailing Address

VOL 8094 PG 1688



NORTH
SCALE: 1"=200'

## LEASED PREMISES

EXIST. LEASE     455,356 S.F.
ADDED BY
AMENDMENT      69,932 S.F.

TOTAL            525,288 S.F.

66,932± S.F. ADDED BY
BY AMENDMENT

COMTRAN
HANGAR

EXISTING LEASE
455,356 S.F.

TXY ROMEO

FAIRCHILD LEASE

SKYPLACE BLVD.

FEBRUARY 28, 1996

EXHIBIT 2 B
for premises leased to
COMTRAN INTERNATIONAL, INC.
at
SAN ANTONIO
INTERNATIONAL AIRPORT
LEASE NO. 124099

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

AUG 1 9 1999

COUNTY CLERK BEXAR COUNTY, TEXAS

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On Aug 16 1999
At 4:28pm

Receipt #:          255077
Recording:          19.00
Doc/Mgut :          6.00

Doc/Num : 99- 0156494

Deputy -Deborah Greiner

RECORDER'S MEMORANDUM

AT THE TIME OF RECORDATION, THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARBON OR
PHOTO COPY, DISCOLORED PAPER, ETC.

VOL8094 PG1690

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT is entered into this 17th day of November, 1997 by and between Comtran International Inc., a Texas corporation ("Assignor"), and Aviation Acquisition Corporation, a Texas corporation ("Assignee"), under the following circumstances:

A.     Assignor is the tenant under that certain San Antonio International Airport Lease No. 124099 (the "Lease") dated March 28, 1986, as amended, by and between The City of San Antonio, Texas (the "Landlord") and Assignor; and

B.     Pursuant to the Lease, Assignor possesses all right, title and interest as tenant in and to the Lease, and desires to sell, assign and transfer such right, title and interest to Assignee.

C.     Under the provisions of Paragraph 7.1 of the Lease, Assignor is permitted to assign its interest in the Lease with the prior written consent of Landlord therein.

D.     Assignee desires to accept said sale, assignment and transfer of the Lease from Assignor upon the terms and conditions hereinafter set forth.

E.     It is anticipated that on the Effective Date of this Agreement, Assignor will change its name to Comtran Trading, Inc. and Assignee will change its name to Comtran International, Inc.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein set forth and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

VOL 7282 PG 1100

#10DMA\PCDOCS\DOCS\550688\3

1.  **Assignment**.  Assignor hereby sells, assigns and transfers to Assignee any and all of Assignor's right, title and interest in and to the Lease.

2.  **Acceptance and Indemnification**.  Assignee hereby accepts the foregoing sale, assignment and transfer and promises and agrees to pay all rent and additional rent and to perform faithfully all covenants, stipulations, agreements and obligations arising under the Lease after the Effective Date of this Agreement.  Assignee shall indemnify and save Assignor harmless from any and all claims, demands, actions, causes of action, suits, proceedings, damages, liabilities and costs and expenses of every nature whatsoever relating to the Lease, or to the premises demised therein, or thereunder arising after the Effective Date hereof.  Assignor shall indemnify and save Assignee and the City of San Antonio, Texas harmless from any and all claims, demands, actions, causes of action, suits, proceedings, damages, liabilities and costs and expenses of every nature whatsoever relating to the Lease, or to the premises demised therein, or thereunder arising prior to the Effective Date hereof.

3.  **Modification of Lease**.  Assignor agrees that Assignee and Landlord may change, modify or amend the Lease in any way, including the rental to be paid thereunder without notice to or consent of Assignor.

4.  **Acknowledgment and Consent of Landlord**.  Landlord hereby acknowledges and consents to the assignment of the Lease from Assignor to Assignee, upon the express condition that neither this acknowledgment nor the collection of rent from the Assignee shall be deemed a waiver or relinquishment for the future of the covenant against assignment or subletting as expressed in the Lease.

1:CENG\PCDOCF\DOCF\155454\3

VOL 7282 PG 1101

Landlord further represents that there are no existing defaults with respect to the Lease by any party thereto, and that no event has occurred which (whether with or without notice, lapse of time or the happening or occurrence of any other event) would constitute a default under the Lease by any party thereto.

5.    Release of Assignor.  The Landlord agrees to release Assignor from any and all claims, demands, action, causes of action, suits, proceedings, damages, liabilities and costs and expenses of every nature whatsoever relating to the Lease and occurring after the Effective Date of this Agreement and to look solely to the Assignee for the performance and discharge of all of the Assignor's covenants, obligations and undertakings under the Lease after the Effective Date of this Agreement.

6.    Binding Agreement.  This Agreement shall be binding upon the successors and assigns of the parties.

7.    Effective Date of Agreement.  The Effective Date of this Agreement (the "Effective Date") shall be the date on which a copy of the Bill of Sale delivered by Assignor to Assignee passing title to certain personal property of Assignor to Assignee as contemplated in that certain Asset Purchase Agreement dated October 23, 1997 by and among Air Age International Services, Inc., Comtran International Inc., Jaffe Group, Inc. and M.D. Jaffe, Jr. is delivered to the City Clerk of The City of San Antonio, Texas, but not later than December 31, 1997.  If such delivery is not made by such date, this Agreement shall be null and void.

I:\COHN\PCDOCS\DOCS\554448\1.3

VOL 7282 PG 1102

IN WITNESS WHEREOF, the duly authorized representatives of the parties have signed this Agreement as of the day and year first above written, and caused their seals to be affixed hereto.

COMTRAN INTERNATIONAL INC.

By: _____

Title: President

AVIATION ACQUISITION CORPORATION

By: _____

Title: President

Acknowledged and agreed by The City of San Antonio, Texas this 17th day of November, 1997.

THE CITY OF SAN ANTONIO, TEXAS

By: _____

Title: ASST. CITY MANAGER

VOL 7282 PG 1103

::ODMA\PCDOCS\DOCS\550606\2

**STATE OF TEXAS** )
)
**COUNTY OF** ~~BEXAR~~ )

This instrument was acknowledged before me on November _13_, 1997 by
_Douglas Jaffe_ as _President_ of Comtran International, Inc., a Texas corporation,
on behalf of said corporation.

_Roberta Carlin_
Notary Public

My Commission Expires: _____

**STATE OF TEXAS** )
)
**COUNTY OF** ~~BEXAR~~ )

This instrument was acknowledged before me on November _13_, 1997 by Thomas
W. Montgomery as President of Air Age Services of San Antonio, Inc., a Texas corporation, on
behalf of said corporation.

_Roberta Carlin_
Notary Public

My Commission Expires: _____

VOL 7282 PG 1104

RETURN-SERVICE TITLE
2139 NW MILITARY
SA TX 78213

Any provision herein which restricts the sale, rental, or use of the described real property because of race is invalid and unenforceable under Federal law.
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Records of Real Property of Bexar County, Texas on

**DEC 1 0 1997**



*Gerry Rickhoff*

COUNTY CLERK BEXAR COUNTY, TEXAS

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On Dec 08 1997

At 3:38pm

Receipt #:      86286
Recording:      11.00
Doc/Mgt :        6.00

Doc/Num  : 97- 0173252

Deputy -Betty Sepulveda

VOL 7282 PG 1105

# AMENDMENT OF LEASE

STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §

THIS AMENDMENT to the Lease is made as of the _29th_ day of August, 2000, to be effective as of _August 29_, 2000 and is by and among the City of San Antonio, a Texas municipal corporation (the "Lessor"), Comerica Bank-Texas, a Texas banking association ("Comerica") and Sino Swearingen Aircraft Corporation, a Delaware corporation ("SSAC") as it relates to the herein described lease.

WHEREAS, pursuant to City Ordinance No. 62582 adopted on March 27, 1986, the City of San Antonio entered into Lease No. 124099 (the "Lease") with Jaffe Aerospace Corp., covering certain then unimproved property at the San Antonio International Airport (the "Leased Premises"); and

WHEREAS, pursuant to a requirement in the Lease, Jaffe Aerospace Corp. improved the Leased Premises by constructing a hangar with an adjoining three-story office building, certain underground storage fuel tanks and associated lines and other improvements (the "Improvements"); and

WHEREAS, the Lease has previously been modified and amended and Comerica is the current lessee under the Lease; and

WHEREAS, SSAC will of even date herewith, enter into that certain Assignment and Assumption Agreement to be executed between Comerica, as assignor, and SSAC, as assignee, pursuant to which (and all as more fully provided therein), Sino Swearingen Aircraft Corporation shall become the lessee under the terms and conditions of the Lease and in connection therewith, Comerica, as grantor, will execute a deed (the "Comerica Deed") in favor of SSAC, as grantee, conveying the Improvements to SSAC; and

WHEREAS, SSAC, as a condition to entering into the Assignment and Assumption Agreement, and accepting the Comerica Deed, requires that the City clarify the provisions of the Lease relating to the Improvements.

NOW, THEREFORE, in consideration of the terms, covenants and agreements herein contained, and in consideration of other good and valuable consideration, each to be given, the sufficiency and receipt of which are hereby acknowledged, the parties hereto agree, covenant and warrant as follows:

1. The Lease has attached to it as Exhibit No. 1 an attachment entitled "Standard Provisions and Covenants."

2. Section 4.7 of the Standard Provisions and Covenants provides that all personal property placed on the Leased Premises by the Lessee shall be and remain the personal property

of the Lessee provided, however, that all alterations, additions or improvements made upon the Leased Premises shall become the property of the Lessor at no cost to the Lessor upon the termination of the Lease.

3. Section 4.1 of the Standard Provisions and Covenants requires the Lessee of unimproved property to submit plans and specifications to the Lessor concerning improvements and to construct such improvements within one year following their approval by the Lessor.

4. Pursuant to Section 4.1 Jaffe Aerospace Corp. constructed the Improvements upon the Leased Premises in accordance with the plans and specifications approved by the Lessor.

5. While it is the understanding of the parties hereto, that the Improvements, even though in the form of a building, hangar, underground storage tank farm and associated lines, and other outbuildings, which would not be economic to remove and which would be destroyed if removed, are nonetheless the property of the Lessee and have been treated by the City and all prior tenants as the property of Lessee, the parties hereto amend Section 4.7 of the Standard Provisions and Covenants by adding the following sentences thereto as the new last sentences of such Section, all in an effort to clarify the issue of the ownership of the Improvements since the effective date of the Lease:

> Additionally, all alterations, additions, and improvements (including without limitation, all building and hangar improvements) constructed upon the Leased Premises by the Lessee shall remain, during the term of this Lease, the sole property of the Lessee. However, upon the termination of this Lease, however such termination occurs, all such alterations, additions, and improvements shall become the sole and exclusive property of the Lessor without the necessity of the execution by the then Lessee of any further documents, instruments or deeds, subject however, to the provisions of Section 7.2 of the Standard Provisions of the Lease.

6. Other than as set forth herein, the parties hereto confirm all of the terms and conditions of the Lease.

IN WITNESS WHEREOF, the parties hereto delivered this Amendment of Lease to be effective as of the date first above written.

City of San Antonio,
a Texas municipal corporation

By: _____
Name: _____
Title: _____

2

**APPROVED** ~~AS TO FORM~~

_For Frank L. Melton_
City Attorney

Date: _9 Aug 2000_

Comerica Bank-Texas,
a Texas banking association

By: _Joseph W. Sullivan_
    Joseph W. Sullivan
    Senior Vice President

Sino Swearingen Aircraft Corporation,
a Delaware corporation

By: _Jack E. Braly_
    Jack E. Braly
    President and CEO

# ASSIGNMENT AND ASSUMPTION AGREEMENT

STATE OF TEXAS      §
§
COUNTY OF BEXAR      §

**THIS AGREEMENT** is made in multiple originals and entered into by and between the City of San Antonio, a Texas Municipal Corporation (hereinafter called "City") acting by and through its City Manager pursuant to Ordinance No. _92380_ passed and approved by City Council on _August 24_, 2000 and Comerica Bank-Texas, a Texas state banking association, acting by and through its authorized officers pursuant to its bylaws or a resolution of its Board of Directors (hereinafter called "Assignor") and Sino Swearingen Aircraft Corporation, a Delaware corporation, acting by and through its authorized officers pursuant to its bylaws or a resolution of its Board of Directors (hereinafter called "Assignee").

## WITNESSETH:

WHEREAS, Assignor is the owner of a certain leasehold estate described in that certain San Antonio International Airport Lease No. 124099 (With Standard Provisions And Covenants), dated March 28, 1986, between the City, as lessor, and Jaffe Aerospace Corp. ("Jaffe"), as lessee, executed pursuant to Ordinance No. 62582, adopted on March 27, 1986, as amended pursuant to Amendment of Lease dated May 4, 1992 between the City, as lessor, and Jaffe, as lessee, executed pursuant to Ordinance No. 75704, adopted on April 30, 1992, with the accompanying Agreed Cancellation of Lease No. 124043 dated May 4, 1992 between the City, Jaffe, and Exec-Aire, Inc., executed by the City pursuant to City Ordinance No. 75704; (effective December 14, 1992, Comtran International, Inc., a Texas corporation ("Comtran"), and Jaffe merged, with Comtran being the surviving corporation); said Lease No. 124099 being further amended pursuant to Partial Assignment And Amendment of Leases dated June 28, 1993 between the City, as lessor, Comtran, and Aeronev, Inc. pursuant to Ordinance No. 78186, adopted on June 24, 1993; said Lease No. 124099 being further amended by Amendment Of Lease dated June 28, 1993, between the City, as lessor, and Comtran, as lessee, pursuant to Ordinance No. 78186, as disclosed by Memorandum of Lease executed as of August 4, 1993, recorded in Volume 5750, Page 1628 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further amended by Amendment Of Lease dated April 19, 1996 between the City, as lessor, and Comtran, as lessee, executed pursuant to Ordinance No. 83955, adopted April 18, 1996, filed for record in Volume 8094, Page 1681 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further affected by Assignment And Assumption Agreement dated November 17, 1997, between Comtran, as assignor, and Aviation Acquisition Corporation, a Texas corporation, as assignee, executed pursuant to Ordinance No. 86932 adopted November 3, 1997, said instrument filed for record on December 8, 1997, under Bexar County Clerk's File No. 97-0173252 (with Lease No. 124099 and all of the above-referenced documents related thereto hereinafter sometimes collectively referred to as the "Lease Agreement") which Lease Agreement affects the real property described on Exhibit "A" attached hereto and incorporated herein for all purposes (the "Premises"); and

WHEREAS, Assignor has requested that City approve the assignment of all of Assignor's rights and obligations under the Lease Agreement, as amended, to Assignee; and

**WHEREAS,** the City is willing to grant this request to Assignor to assign its rights under the Agreement, as amended, to Assignee; **NOW THEREFORE,**

In consideration of the terms, covenants and promises, agreements and demises herein contained, and for other good and valuable consideration, each to the other given, the sufficiency and receipt of which are hereby acknowledged, the parties hereto agree as follows:

1.  Without recourse or warranty, express or implied, other than as set forth herein and in that certain Purchase and Sale Agreement dated July 25, 2000, by and between the Assignor, as seller, and Assignee, as purchaser, the Assignor hereby transfers, assigns and sets over to the Assignee all right, title and interest of the Assignor in and to the Lease Agreement, effective as hereinafter set forth.

2.  In consideration therefor, the Assignee hereby accepts, assumes, takes over and succeeds to all of the Assignor's rights, duties, interests, liabilities and obligations under the Lease Agreement and agrees to all of the terms, conditions, provisions, covenants and obligations contained therein which Assignor is obligated to keep or perform, and to indemnify and hold harmless the City and Assignor with respect to any and all such duties, liabilities or obligations arising or accruing after the effective date of this Assignment and Assumption Agreement (the "Assignment").

3.  Assignor warrants to Assignee that Assignor is not in material breach of the Lease Agreement and hereby agrees, for itself and its successors and assigns to indemnify and hold harmless the City and Assignee from any loss, damage, environmental damage, claim, cost or expense arising from the failure of Assignor, to perform any of the terms, conditions and obligations of the Lease Agreement during the time Assignor was in privity of estate with the City.

4.  The City consents to (i) the assignment of the rights and obligations of Assignor to Assignee under the Lease Agreement, and (ii) Assignor's conveyance to Assignee of fee simple determinable title to the buildings, hangar, other improvements, and the underground storage tanks and associated lines located on the Premises by Assignor's execution of a Deed in favor of Assignee and authorizes the City Manager or in his stead, the Assistant City Managers or the Assistants to the City Manager to execute this Assignment.

5.  The conditions precedent to this Assignment becoming effective are:

    a.  The receipt by Assignor of consent of the City of San Antonio, Texas, to the assignment contemplated hereby to be evidenced by the approval of a City Ordinance confirming same;

    b.  The Closing of the assignment and conveyances referenced in Paragraph 4 above to be memorialized by the full execution and delivery of this Assignment by Assignor, to Assignee and the payment of the consideration

therefor by Assignee to Assignor, as called for in the Purchase and Sale Agreement between the Assignor and Assignee; and

c.       The receipt by the City of a certified copy of this Assignment following the recordation of same in the Real Property Records of Bexar County, Texas.

6.      The effective date of this Assignment shall be the date of receipt by the City of a certified copy of this Assignment following the recordation of same in the Real Property Records of Bexar County, Texas.

**IN WITNESS WHEREOF**, the undersigned have duly executed this Assignment and Assumption Agreement as of the date set forth above.

EXECUTED THIS _7th_ day of ~~July,~~ August 2000 to be effective as of the date set forth in Paragraph 6 of this Assignment.

ASSIGNOR:

**COMERICA BANK-TEXAS**

By: _____
    Joseph W. Sullivan
    Senior Vice President

ASSIGNEE:

**SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation**

By: _____
    Jack E. Braly
    President and CEO

ATTEST:

*[signature]*
City Clerk

APPROVED AS TO FORM:

*[signature]* For Frank L. Melton
City Attorney

CONSENT GRANTED:
CITY OF SAN ANTONIO

By: *[signature]*
City Manager

Date: 9 Aug 2000

THE STATE OF TEXAS    §
                      §
COUNTY OF BEXAR       §

This instrument was acknowledged before me on this the 7 day of ~~July~~ August, 2000, by Joseph W. Sullivan, Senior Vice President of COMERICA BANK-TEXAS, a Texas state banking association on behalf of said association.

ANN TRANER HANSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 06-05-04

*[signature]*
Notary Public in and for
the State of Texas

THE STATE OF TEXAS    §
                      §
COUNTY OF BEXAR       §

This instrument was acknowledged before me on this the 7th day of ~~July~~ August, 2000, by Jack E. Braly, President and CEO of SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation, on behalf of said corporation.

*[signature]* Rumalda Rodriguez
Notary Public in and for
the State of Texas



RUMALDA RODRIGUEZ
MY COMMISSION EXPIRES
March 04, 2001

4

VOL 8557 PG 0595

THE STATE OF TEXAS          §
                           §
COUNTY OF BEXAR            §

   This instrument was acknowledged before me on this the _29th_ day of _August_, 2000, by _Terri M. Bishop, Asst._, City Manager of CITY OF SAN ANTONIO on behalf of said municipality.

_Mary Susan Valdez_
Notary Public in and for
the State of Texas

::ODMA\PCDOCS\HOUSTON_1\39311F6
391:19448-89

That certain leasehold estate created by that certain San Antonio International Airport Lease dated March 28, 1986 and numbered 124099, as approved by City Ordinance number 62582 adopted March 27, 1986 by and between the City, as Lessor, and Jaffe-Aerospace Corp., as Lessee, as the same has been amended, from time to time, with respect to the following two tracts of real property located on the grounds of the San Antonio International Airport:

TRACT I

Being 10.448 acres (455,356 sq. ft.) out of Lot 44, N. C. B. 8644 of North Airport Parkway Subdivision, City of San Antonio, Bexar County, Texas according to the plat thereof recorded in Volume 9516, Pages 195-198 of the Deed and Plat Records of Bexar County, Texas, said tract described in Volume 5750, Page 1628 of the Real Property Records of Bexar County, Texas, said tract being more particularly described as follows;

Beginning at a ½" iron pin found at the Northeast corner of said Lot 44, said point also being the Northwest corner of a 30.328 acre tract leased to Fairchild Aircraft Corp. approved by Ordinance No. 64698 of the City of San Antonio;

Thence with the East line of said Lot 44, the West line of said 30.328 acre tract, S 03° 38' 32" E, at 1160.01 feet the Southwest corner of said 30.328 acre tract, in all 1324.46 feet to a ½" iron pin found at an angle in said East line;

Thence continuing with said East line, S 41° 23' 27" W 302.54 feet to a ½" iron pin found at the South corner of said Lot 44;

Thence with the Southwest line of said Lot 44, N 48° 38' 22" W 674.92 feet to a ½" iron pin found for the West corner of this tract;

Thence N 41° 23' 27" E 284.94 feet to an "X" found in concrete for an interior corner of this tract;

Thence N 48° 36' 33" W 17.28 feet to a ½" iron pin set for an exterior corner of this tract;

Thence N 41° 23' 27" E, at 137.33 feet a ½" iron pin set at the South corner of a 1.294 acre tract described in City of San Antonio Ordinance No. 62582, in all 166.51 feet to a ½" iron pin set at an exterior corner of this tract, an interior corner of said 1.294 acre tract;

Thence with a common line of this tract and the 1.294 acre tract, S 48° 36' 33" E 17.28 feet to a PK nail set and N 41° 23' 27" E 475.91 feet to a ½" iron pin set at the Easterly corner of said 1.294 acre tract;

Thence continuing with said common line, N 03° 38' 32" W, at 146.15 feet a ½" iron pin set at the North corner of said 1.294 acre tract, in all 229.19 feet to a ½" iron pin found;

Thence N 18° 44' 00" W 158.88 feet to a ½" iron pin found and N 03° 38' 32" W 97.23 feet to a ½" iron pin set in the South R.O.W. line of Skyplace Blvd.;

Thence with said South R.O.W. line in a curve to the right having a radius of 370.00 feet, delta angle of 05° 24' 55", tangent length of 17.50 feet, a chord bearing and distance of S 51° 20' 34" E 34.96 feet, an arc length of 34.97 feet to a ½" iron pin set at the P.T.;

Thence continuing with said South R.O.W. line, S 48° 38' 32" E 71.64 feet to the place of beginning.

VOL 8557 PG 0597

TRACT II

Being 1.294 acres (56,349 sq. ft.) out of Lot 44, N.C.B. 8644 of North Airport Parkway Subdivision, City of San Antonio, Bexar County, Texas according to the plat thereof recorded in Volume 9516, Pages 195-198 of the Deed and Plat Records of Bexar County, Texas, said tract being described in City of San Antonio Ordinance No. 62582 and being more particularly described as follows;

Beginning at a ½" iron pin set at the North corner of said 1.294 acre tract, said point being S 04° 02' 54" W 261.78 feet from the Northeast corner of said Lot 44, said point being in the Northwest line of a 10.448 acre tract described in Volume 5750, Page 1628, Real Property Records of Bexar County, Texas;

Thence with the West line of said 10.448 acre tract, S 03° 38' 32" E 146.15 feet to a ½" iron pin set;

Thence with the Northwest line of said 10.448 acre tract, S 41° 23' 27" W 475.91 feet to a PK nail set, N 48° 36' 33" W 17.28 feet to a ½" iron pin set and S 41° 23' 27" W 29.18 feet to a ½" iron pin set for the South corner of this tract;

Thence N 49° 11' 30" W 83.66 feet to a ½" iron pin set for the West corner of this tract;

Thence N 41° 09' 29" E 609.23 feet to the place of beginning.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

SEP 06 2000

COUNTY CLERK BEXAR COUNTY, TEXAS

**PAGE 2 OF 2**

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On Sep 05 2000
At 2:03pm

Receipt #:       365985
Recording:        15.00
Doc/Mgmt :         6.00
Doc/Num : 2000-  0151436
Deputy -Deborah Greiner

## TRI-PARTY AGREEMENT

2000- 0151438

STATE OF TEXAS        §
                        §
COUNTY OF BEXAR     §

THIS AGREEMENT is made as of the _29th_ day of August, 2000, to be effective as of _August 29_, 2000 by and among the CITY OF SAN ANTONIO, a Texas municipal corporation (the "City"), COMERICA BANK-TEXAS, a state banking association (the "Lender"), and SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation (the "Tenant"), hereunder:

### I. Factual Background

A.    Lender presently leases from the City that certain real property (the "Leased Premises") situated at the San Antonio International Airport under and pursuant to that certain San Antonio International Airport Lease No. 124099 (With Standard Provisions And Covenants), dated March 28, 1986, between the City, as lessor, and Jaffe Aerospace Corp. ("Jaffe"), as lessee, executed pursuant to Ordinance No. 62582, adopted on March 27, 1986, as amended pursuant to Amendment of Lease dated May 4, 1992 between the City, as lessor, and Jaffe, as lessee, executed pursuant to Ordinance No. 75704, adopted on April 30, 1992, with the accompanying Agreed Cancellation of Lease No. 124043 dated May 4, 1992 between the City, Jaffe, and Exec-Aire, Inc., executed by the City pursuant to City Ordinance No. 75704; (effective December 14, 1992, Comtran International, Inc., a Texas corporation ("Comtran"), and Jaffe merged, with Comtran being the surviving corporation); said Lease No. 124099 being further amended pursuant to Partial Assignment And Amendment of Leases dated June 28, 1993 between the City, as lessor, Comtran, and Aeronev, Inc. pursuant to Ordinance No. 78186, adopted on June 24, 1993; said Lease No. 124099 being further amended by Amendment Of Lease dated June 28, 1993, between the City, as lessor, and Comtran, as lessee, pursuant to Ordinance No. 78186, as disclosed by Memorandum of Lease executed as of August 4, 1993, recorded in Volume 5750, Page 1628 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further amended by Amendment Of Lease dated April 19, 1996 between the City, as lessor, and Comtran, as lessee, executed pursuant to Ordinance No. 83955, adopted April 18, 1996, filed for record in Volume 8094, Page 1681 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further affected by Assignment And Assumption Agreement dated November 17, 1997, between Comtran, as assignor, and Aviation Acquisition Corporation, a Texas corporation, as assignee, executed pursuant to Ordinance No. 86932 adopted November 3, 1997, said instrument filed for record on December 8, 1997, under Bexar County Clerk's File No. 97-0173252 (with Lease No. 124099 and all of the above-referenced documents related thereto hereinafter sometimes collectively referred to as the "Ground Lease") which Ground Lease affects the real property described on _Exhibit "A"_ attached hereto and incorporated herein for all purposes.

B.    Lender acquired title to Aviation's interest (*i.e.*, the entire lessee leasehold interest) in the Ground Lease on September 7, 1999 by being the successful bidder at a non judicial foreclosure sale of Lender's lien securing the loan made to Aviation on November 17, 1997.

C.     Effective as of the date hereof, Lender has sold, assigned and transferred all of Lender's rights in and to the Ground Lease to Tenant, and the City has consented to such sale, assignment, and transfer, as evidenced by the City's execution of that certain Assignment and Assumption Agreement of even effective date herewith by and between Lender and Tenant. Accordingly, Tenant has succeeded to all of Lender's rights in and to the Ground Lease.

D.     Lender has agreed to make Tenant a loan (the "Loan") to be secured in part by a deed of trust (the "Deed of Trust") covering the leasehold interest of Tenant under the Ground Lease.

E.     Provisions contained in the Ground Lease prohibit Tenant from assigning or otherwise transferring the Ground Lease, or any portion of the Leased Premises, without the prior written consent of the City.

F.     The parties hereto desire to obtain the City's consent to (i) the mortgaging of Tenant's leasehold interest in the Leased Premises, (ii) granting Lender the right to receive notices of any defaults of Tenant under the Ground Lease and the opportunity to cure any such defaults, and (iii) granting Lender certain other rights with respect to the Ground Lease, subject to certain limitations, all in accordance with the provisions hereof.

NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in further consideration of the terms, covenants and agreements contained herein, the parties hereto agree as follows:

A.     Consent.  Pursuant to the pertinent provisions of the Ground Lease, the City hereby consents to the assignment and mortgaging by Tenant, for the benefit of Lender, of all of Tenant's right, title and interest in, to and under the Ground Lease and the leasehold estate in and to the Leased Premises created by the Ground Lease, for the purpose of securing the Loan.

B.     Covenants of the City and Tenant.  Notwithstanding the terms and provisions of the Ground Lease, the City and Tenant covenant and agree that, during the term of said Ground Lease, for so long as the Loan is unpaid and the Deed of Trust shall remain in effect:

1.     Lender's Right to Notices.  The City, upon serving upon Tenant any notice of default pursuant to the provisions of the Ground Lease, or any other notice under the provisions of or with respect to the Ground Lease, shall also serve a copy of such notice upon Lender, at the address hereinafter set forth, and no such notice by the City to Tenant shall be deemed to have been duly given unless a copy thereof has been so served upon Lender.

2.     Lender's Right to Cure All Defaults.  In the event Tenant shall be in default under the Ground Lease, Lender shall have, within periods and otherwise as provided in the Ground Lease, the right to remedy such default, or cause the same to be remedied, and the City shall accept such performance by or at the instance of Lender as if the same had been made by Tenant.

VOL 8557 PG 0607

3.    Lender's Right to a "Pick-Up" Lease.   In the event of the termination, cancellation or surrender of the Ground Lease (or the City's repossessing of the Leased Premises from Tenant), prior to the expiration of its term, except by eminent domain resulting in a complete taking of the Leased Premises, the City shall serve upon Tenant and Lender written notice that the Ground Lease has been terminated, canceled or surrendered (or that the Leased Premises have been repossessed), together with a statement of any and all sums which would at that time be due under the Ground Lease, but for such termination, cancellation or surrender (or such repossession of the Leased Premises), and of all other defaults, if any, under the Ground Lease then known to the City. Lender shall thereupon have the option to obtain a new lease in accordance with the following:

a.    Upon the written request of Lender, within thirty (30) days after a service of such notice that the Ground Lease has been terminated, canceled or surrendered (or that the Leased Premises have been repossessed), the City and Lender, or Lender's assignee, shall enter into a new lease of the Leased Premises as follows:

b.    Such new lease shall be effective as of the date of termination, cancellation or surrender of the Ground Lease (or repossession of the Leased Premises) and shall be for the remainder of the term of the Ground Lease and at the rent and upon all the agreements, terms, covenants and conditions thereof, including any applicable rights of renewal.  Such new lease shall require the new tenant to perform any unfulfilled obligation of Tenant under the Ground Lease which is reasonably susceptible of being performed by such new tenant.  Upon the execution of such new lease, the tenant named therein shall pay any and all amounts which would at the time of the execution thereof be due under the Ground Lease, but for such termination, cancellation or surrender (or such repossession of the Leased Premises), and shall pay all expenses, including reasonable counsel fees, court costs and disbursements incurred by the City in connection with such defaults and termination, cancellation or surrender (or such repossession), the recovery of possession of said Leased Premises, and the preparation, execution and delivery of such new lease.

4.    No Modification, Etc.  No agreement between the City and Tenant modifying, canceling or amending the Ground Lease shall be effective without at least sixty (60) days prior written notice by the City to Lender of such modification, cancellation or amendment.

5.    Ownership of Improvements  As set forth at Section 4.7 of the "Standard Provisions and Covenants" of the Ground Lease the parties hereto recognize and agree that all alterations, additions and/or improvements made upon the Lease Premises including, but not limited to, the hangar and adjoining three story office building, fuel farm and paint booth are the property of the lessee under the Ground Lease and shall remain so until the termination of the Ground Lease at which time all alterations, additions and improvements, including those described above, shall, at no cost, become the property of the City, subject however to the provisions of Section 7.2 of the Standard Provisions of the Lease.

C.    **Lender's Right to Assign and the City's Rights to Approve.** If Lender shall acquire title to Tenant's interest in the Ground Lease, by foreclosure of any lien securing the Loan or by assignment in lieu of foreclosure, or under a new lease pursuant to the provisions hereof, Lender may assign the Ground Lease (or such new lease), and shall thereupon be released from all liability for the performance or observance of the covenants in such lease contained or any such tenant's part to be performed and observed from and after the date of such assignment; provided that the assignee or assignees from Lender shall have assumed such lease in accordance with the terms therein set forth. The City, in the event of such assignment, shall have the right to approve such assignment and the proposed business to be conducted by the proposed assignee upon the Leased Premises: provided, however, the City's consent shall not be unreasonably withheld.

D.    **Application of Insurance Proceeds.** The City hereby acknowledges and consents to the collateral assignment by Tenant to Lender of all of the proceeds of any casualty insurance policy which has been secured by Tenant with respect to any of the improvements located upon the Leased Premises and which are payable with regard to any casualty with respect to such improvements. In connection therewith, the City further acknowledges and agrees that under the loan documents evidencing the Loan, Lender has the right to collect any and all monies that may become payable under any such policies of insurance required under such loan documents which cover the above-described improvements by reason of damage to, or loss or destruction of, such improvements or any part thereof. In the event of any such damage to, or loss or destruction of, such improvements or any part thereof which is required to be restored by Tenant under the terms of the Ground Lease, Lender and the City agree that the above-described insurance proceeds will be held and periodically disbursed by Lender for payment of restoration costs and expenses incurred by Tenant in connection with such required restoration upon and subject to the disbursement procedures more particularly set forth in Exhibit "B" attached hereto and hereby made a part hereof for all purposes.

E.    **Ground Lease in Existence.** The City and Tenant each certify to each other and to Lender that (i) there are no unwaived defaults on the part of the City or Tenant under the Ground Lease, (ii) the Ground Lease is a complete statement of the agreement of the parties thereto with respect to the subject thereof, (iii) the Ground Lease is in full force and effect, and (iv) all required rentals have been paid to date.

F.    **Ratification of Ground Lease.** The City and Tenant hereby agree that except as specifically modified herein, all the terms and provisions of the Ground Lease are hereby ratified and reaffirmed by Tenant and the City, and Tenant and the City specifically acknowledge the validity and enforceability thereof.

G.    **Subordination of Landlord's Liens.** The City hereby agrees that any liens, assignments or security interests, including without limitation, any statutory, constitutional or contractual landlord's lien, now existing or hereafter arising in favor of the City covering any property of Tenant now or at any time hereafter placed upon the Leased Premises shall be second, subordinate and inferior to all liens, assignments and security interests in favor of Lender securing the Loan.

H.    **Successors.** The provisions hereof shall be binding upon, and inure to the benefit of Lender, the City, Tenant and their respective successors and assigns.

4

I.      Agreement Controls. Notwithstanding any provision to the contrary set forth in any of the loan documents evidencing the Loan, this Agreement and its terms and conditions controls the method and manner in which the Leased Premises may be foreclosed upon by Lender and, as a part of the foreclosure process, conveyed, transferred or assigned to a third party, and this Agreement supersedes and modifies any term in such loan documents which creates a conflict herewith. Additionally, to the extent of any conflict between the terms and the provisions of the Ground Lease and this Agreement, the terms and provisions of this Agreement shall govern and control as between Lender and the City, so long as any amounts are outstanding under the Loan.

J.      Notices. Any notice or other communication which any party hereto shall desire or is required to be given to another party hereto shall be in writing and shall be served by certified mail, return receipt requested, postage fully prepaid, addressed to such party at the party's address as set forth in writing given to all other parties as herein provided. Any notice or other communication which is given under or in connection with this Agreement shall be deemed to have been given or served if sent by certified mail, return receipt requested, properly addressed, three (3) days following the deposit thereof in a post office or official depository under the care and custody of the United States Postal Service.

K.      General. The parties hereto agree that this Agreement shall be governed and construed according to the laws of the State of Texas from time to time in effect. The paragraph headings in this Agreement are for convenience of reference only and shall not be deemed to alter or affect any of the provisions hereof. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the other provisions hereof.

L.      Effect of Lender's Signature. The execution and delivery of this Agreement by Lender prior to the closing and consummation of the Loan is solely an accommodation to the City in an effort to satisfy the City's request that this Agreement be executed by all parties other than the City prior to requesting the City's formal approval and execution of this Agreement. In no way whatsoever shall Lender's execution and delivery of this Agreement be construed as any representation that all conditions to Lender's extension of the Loan have been completely or fully satisfied. Only upon execution and delivery by Tenant and Lender of all definitive loan documentation necessary to evidence, secure and govern the Loan, as well as the complete and full satisfaction of all conditions precedent set forth in such definitive loan documentation, will Lender be obligated to extend the Loan to Tenant.

M.      Conditions. This Agreement is conditioned upon (i) the consummation of the transactions contemplated in that certain Purchase and Sale Agreement dated July 25, 2000 by and among Lender and Tenant; and (ii) notification to the City Clerk of the City of San Antonio, Texas by Lender that the Loan referred to in paragraph L, above has been consummated. This Agreement shall be null and void if all of such conditions have not been satisfied on or before September 30, 2000.

IN WITNESS WHEREOF, the undersigned have duly executed and delivered this Agreement effective as of the date first above written.

SINO SWEARINGEN AIRCRAFT
CORPORATION,
a Delaware corporation

By: _____
Jack E. Braly
President & CEO

Address: 1770 Sky Place Boulevard
San Antonio, Texas 78216
Attention: Jack E. Braly

With copies to:

(a) 1770 Sky Place Boulevard
San Antonio, Texas 78216
Attention: Jonathan Bromberg

(b) Wolin, Ridley & Miller LLP
1717 Main Street, Suite 3100
Dallas, Texas 75201-4681
Attention: Robert E. Wolin

COMERICA BANK-TEXAS, a Texas banking association

By: _____
Joseph W. Sullivan
Senior Vice President

Address: Post Office Box 650282, MC 6510
Dallas, Texas 75265-0282
Attention: Joe Gaydos, Vice President

VOL8557 PG0611

<u>with a copy to:</u>

Winstead Sechrest & Minick P.C.
910 Travis, Suite 2400
Houston, Texas 77002-5895
Attention: James W. Doyle

CITY OF SAN ANTONIO, a Texas municipal
corporation

Attest:

~Norma S. Rodriguez~
City Clerk

By: _____
Name: _Tassie M Bishop____
Title: _Assistant City Manager_

APPROVED AS TO FORM:

~for Frank R. Hillett~
City Attorney

Date: _9 Aug 2000_

Address:    Aviation Department
            City of San Antonio
            9800 Airport Blvd.
            San Antonio, Texas 78216-9990
            Attention: Carol Tucker

::ODMA\PCDOCS\HOUSTON_1\432862\11
1032: 19448-89

VOL 8557 PG 0612

STATE OF TEXAS       §
                              §

COUNTY OF BEXAR    §

This instrument was acknowledged before me on the 7th day of August, 2000, by Jack E. Braly, President and CEO of SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation, on behalf of said corporation.

_Rumalda Rodriguez_
Notary Public, State of TEXAS
Printed Name of Notary: _____
My Commission Expires

RUMALDA RODRIGUEZ
MY COMMISSION EXPIRES
March 04, 2001

STATE OF TEXAS       §
                              §

COUNTY OF BEXAR    §

This instrument was acknowledged before me on the 7 day of August 2000, by Joseph W. Sullivan, Senior Vice President of Comerica Bank-Texas, a state banking association, on behalf of said association.

ANN TRANER HANSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 06-05-04

_Ann Traner Hanson_
Notary Public, State of TEXAS
Printed Name of Notary: _____
My Commission Expires: _____

STATE OF TEXAS       §
                              §

COUNTY OF BEXAR    §

This instrument was acknowledged before me on the 29th day of August, 2000, by Frank M. Kirtin, Asst City Manager of the City of San Antonio, a Texas municipal corporation, on behalf of said corporation.



MARY SUSAN VALDEZ
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
Jan. 16, 2002

_Mary Susan Valdez_
Notary Public, State of TEXAS
Printed Name of Notary: _____
My Commission Expires: _____

::ODMA\PCDOCS\HOUSTON_1432852\1
1032-19448-89

VOL 8557 PG 0613

8

RTN: TO STEWART
TITLE
Attn: D.___

That certain leasehold estate created by that certain San Antonio International Airport Lease dated March 28, 1986 and numbered 124099, as approved by City Ordinance number 62582 adopted March 27, 1986 by and between the City, as Lessor, and Jaffe-Aerospace Corp., as Lessee, as the same has been amended, from time to time, with respect to the following two tracts of real property located on the grounds of the San Antonio International Airport:

TRACT I

Being 10.448 acres (455,356 sq. ft.) out of Lot 44, N. C. B. 8644 of North Airport Parkway Subdivision, City of San Antonio, Bexar County, Texas according to the plat thereof recorded in Volume 9516, Pages 195-198 of the Deed and Plat Records of Bexar County, Texas, said tract described in Volume 5750, Page 1628 of the Real Property Records of Bexar County, Texas, said tract being more particularly described as follows:

Beginning at a ½" iron pin found at the Northeast corner of said Lot 44, said point also being the Northwest corner of a 30.328 acre tract leased to Fairchild Aircraft Corp. approved by Ordinance No. 64698 of the City of San Antonio;

Thence with the East line of said Lot 44, the West line of said 30.328 acre tract, S 03° 38' 32" E, at 1160.01 feet the Southwest corner of said 30.328 acre tract, in all 1324.46 feet to a ½" iron pin found at an angle in said East line;

Thence continuing with said East line, S 41° 23' 27" W 302.54 feet to a ½" iron pin found at the South corner of said Lot 44;

Thence with the Southwest line of said Lot 44, N 48° 38' 22" W 674.92 feet to a ½" iron pin found for the West corner of this tract;

Thence N 41° 23' 27" E 284.94 feet to an "X" found in concrete for an interior corner of this tract;

Thence N 48° 36' 33" W 17.28 feet to a ½" iron pin set for an exterior corner of this tract;

Thence N 41° 23' 27" E, at 137.33 feet a ½" iron pin set at the South corner of a 1.294 acre tract described in City of San Antonio Ordinance No. 62582, in all 166.51 feet to a ½" iron pin set at an exterior corner of this tract, an interior corner of said 1.294 acre tract;

Thence with a common line of this tract and the 1.294 acre tract, S 48° 36' 33" E 17.28 feet to a PK nail set and N 41° 23' 27" E 475.91 feet to a ½" iron pin set at the Easterly corner of said 1.294 acre tract;

Thence continuing with said common line, N 03° 38' 32" W, at 146.15 feet a ½" iron pin set at the North corner of said 1.294 acre tract, in all 229.19 feet to a ½" iron pin found;

Thence N 18° 44' 00" W 158.88 feet to a ½" iron pin found and N 03° 38' 32" W 97.23 feet to a ½" iron pin set in the South R.O.W. line of Skyplace Blvd.;

Thence with said South R.O.W. line in a curve to the right having a radius of 370.00 feet, delta angle of 05° 24' 55", tangent length of 17.50 feet, a chord bearing and distance of S 51° 20' 34" E 34.96 feet, an arc length of 34.97 feet to a ½" iron pin set at the P.T.;

Thence continuing with said South R.O.W. line, S 48° 38' 32" E 71.64 feet to the place of beginning.

VOL 8557 PAGE 0614

TRACT II

Being 1.294 acres (56,349 sq. ft.) out of Lot 44, N.C.B. 8644 of North Airport Parkway Subdivision, City of San Antonio, Bexar County, Texas according to the plat thereof recorded in Volume 9516, Pages 195-198 of the Deed and Plat Records of Bexar County, Texas, said tract being described in City of San Antonio Ordinance No. 62582 and being more particularly described as follows;

Beginning at a ½" iron pin set at the North corner of said 1.294 acre tract, said point being S 04° 02' 54" W 261.78 feet from the Northeast corner of said Lot 44, said point being in the Northwest line of a 10.448 acre tract described in Volume 5750, Page 1628, Real Property Records of Bexar County, Texas;

Thence with the West line of said 10.448 acre tract, S 03° 38' 32" E 146.15 feet to a ½" iron pin set;

Thence with the Northwest line of said 10.448 acre tract, S 41° 23' 27" W 475.91 feet to a PK nail set, N 48° 36' 33" W 17.28 feet to a ½" iron pin set and S 41° 23' 27" W 29.18 feet to a ½" iron pin set for the South corner of this tract;

Thence N 49° 11' 30" W 83.66 feet to a ½" iron pin set for the West corner of this tract;

Thence N 41° 09' 29" E 609.23 feet to the place of beginning.

# EXHIBIT "B"

Any insurance proceeds to be disbursed shall be used by Tenant solely for the repair, rebuilding and restoration (hereinafter collectively referred to as the "Restoration Work") of any improvements required to be restored by Tenant under the terms of the Ground Lease; provided, however, that the disbursement to Tenant of such insurance proceeds shall be, and is hereby made, subject to compliance by Tenant with the following terms, conditions and procedures (hereinafter collectively referred to as the "Disbursement Procedures"), to wit:

(a)     There shall have been submitted to Lender and the City, and Lender and the City shall have approved, which approval shall not be unreasonably withheld, the following:

(1)     Plans and Specifications for the Restoration Work prepared by an architect reasonably satisfactory to Lender and the City (hereinafter referred to as the "Restoration Architect");

(2)     a cost breakdown and analysis (hereinafter referred to as the "Estimated Cost") certified to Lender and the City by the Restoration Architect, stating that the Restoration Work can be completed in accordance with the above-mentioned Plans and Specifications at the price set forth in the "Restoration Contract" referred to herein;

(3)     a general construction contract (hereinafter referred to as the "Restoration Contract") with a general contractor (hereinafter referred to as the "Restoration Contractor") reasonably acceptable to Lender and the City pursuant to which the Restoration Work will be performed;

(4)     reasonably satisfactory evidence of the compliance of the Restoration Work with all zoning ordinances, restrictive covenants and other use restrictions and of the availability of all governmental licenses and permits necessary for the performance of the Restoration Work;

(b)     If the Estimated Cost of the Restoration Work exceeds the proceeds of the insurance available for application thereto, then an amount of money equal to such excess shall be escrowed with Lender by Tenant prior to the commencement of the Restoration Work to be used solely for payment of the costs of such Restoration Work, and any amount so escrowed with Lender shall be disbursed by Lender in accordance with the Disbursement Procedures prior to the disbursement of any of such insurance proceeds;

(c)     After and subject to compliance with all of the foregoing, the amount held by Lender and available for restoration shall be disbursed by Lender to Tenant periodically (but not more frequently than monthly) as the Restoration Work progresses, as follows:

VOL8557 PG0616

(1)     Lender shall have received in connection with each such requested disbursement a draw request from the Restoration Contractor certifying that all work completed to the date of such draw request has been performed in accordance with the Plans and Specifications as approved by Lender and the City in a good and workmanlike manner, which draw request shall have been approved by the Restoration Architect;

(2)     Lender shall have received a certification from the Restoration Architect that the remaining amount of funds held by Lender, including funds held pursuant to subparagraph (b) above, are sufficient to complete the Restoration Work in accordance with the Plans and Specifications as approved by Lender and the City;

(3)     Lender shall have also received evidence satisfactory to Lender (including, without limitation, title certifications, title policy endorsements, lien waivers and affidavits) that all governmental licenses and permits necessary for the performance of the Restoration Work have been secured and the first-in-priority status of the Lender's Deed of Trust continues without additional exceptions and that no party claims or has a right to claim any lien by virtue of the Restoration Work theretofore completed (except such lien or claim as will be dissolved by payment of the requested disbursement);

(d)     Unless otherwise agreed to in writing by Lender, each periodic disbursement shall be made subject to a retainage of ten percent (10%) of the amount requested, and the aggregate of the amount so retained shall be disbursed by Lender to Tenant no earlier than thirty-one (31) days after the Restoration Work is completed in accordance with said Plans and Specifications (as evidenced by the certificate of the Restoration Architect), and Lender shall have received evidence satisfactory to Lender that all costs incurred in connection with the Restoration Work have been paid in full and that no party claims or has a right to claim any lien affecting the Property and arising out of the Restoration Work; and

(e)     Once the Restoration Work is completed and fully paid, any such insurance proceeds remaining in the Lender's possession shall be applied by Lender against the Loan (such order of application to be at Lender's discretion).

::ODMA\PCDOCS\HOUSTON_1\432862\11
1032: 19448-89

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

SEP 06 2000

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On  Sep 05 2000
At  2:03pm

Receipt #:      365985
Recording:      25.00
Doc/Mgmt :       6.00
Doc/Num  : 2000- 0151438
Deputy -Deborah Greiner

COUNTY CLERK BEXAR COUNTY, TEXAS

VOL8557 PG0617

<u>SCHEDULE 5.1-B</u>

DESCRIPTION OF STORAGE TANKS

| | | | |
|---|---|---|---|
| **Tank ID:** | U1 | **Status:** | Inactive/Out of Service |
| **Contents:** | N/A | **Leak Monitoring:** | Monitor Present |
| **Capacity:** | 15,000 gallons | **Material:** | Fiberglass reinforced plastic |
| | | | |
| **Tank ID:** | U2 | **Status:** | Inactive/Out of Service |
| **Contents:** | N/A | **Leak Monitoring:** | Monitor Present |
| **Capacity:** | 15,000 gallons | **Material:** | Fiberglass reinforced plastic |
| | | | |
| **Tank ID:** | U3 | **Status:** | Active/In Service |
| **Contents:** | Jet A | **Leak Monitoring:** | Monitor Present |
| **Capacity:** | 15,000 gallons | **Material:** | Fiberglass reinforced plastic |
| | | | |
| **Tank ID:** | U4 | **Status:** | Inactive/Out of Service |
| **Contents:** | N/A | **Leak Monitoring:** | Monitor Present |
| **Capacity:** | 22,000 gallons | **Material:** | Fiberglass reinforced plastic |
| | | | |
| **Tank ID:** | U5 | **Status:** | Active/In Service |
| **Contents:** | Waste Oil | **Leak Monitoring:** | Monitor Present |
| **Capacity:** | 15,000 gallons | **Material:** | Fiberglass reinforced plastic |

## SPECIAL WARRANTY DEED

| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS THAT: |
| COUNTY OF BEXAR | § | |

SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation ("Grantor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other good and valuable consideration paid by SIMMONS, VEDDER & COMPANY, a Texas corporation ("Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed, subject only to the exceptions, encumbrances, terms and provisions hereinafter set forth and described, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY, unto Grantee all of the buildings, the hangar, the improvements and underground storage tanks and associated lines located on two (2) certain parcels of land (the "Land") comprising approximately 455,346 square feet of land ("Tract 1") and approximately 56,349 square feet of land ("Tract 2") situated in the City of San Antonio, Bexar County, Texas, and being more particularly described in Exhibit "A-1" and Exhibit "A-2", respectively (said buildings, the hangar, the improvements and underground storage tanks and associated lines being hereinafter referred to as the "Property").

This conveyance is made subject and subordinate only to the encumbrances and exceptions ("Permitted Exceptions") described in Exhibit "B" attached hereto and incorporated herein by reference for all purposes, but only to the extent they affect or relate to the Property.

TO HAVE AND TO HOLD the Property, subject only to the Permitted Exceptions as aforesaid, unto Grantee, and Grantee's successors and assigns, forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to WARRANT AND FOREVER DEFEND all and singular the Property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part hereof, except as to the Permitted Exceptions, when the claim is by, through or under Grantor, but not otherwise.

Except for the representations and warranties contained in that certain Sale Agreement (the "Purchase Agreement") dated August __, 2004, executed between Grantor, as seller, and Grantee, as purchaser, Grantor hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present or future, of, as, to, or concerning (i) the nature and condition of the Property, the suitability of the Property for any and all activities and uses which Grantee may elect to conduct thereon or any improvements Grantee may elect to construct thereon, income to be derived therefrom or expenses to be incurred with respect thereto, or any obligations or any other matter or thing relating to or affecting the same; (ii) the manner of construction and condition and state of repair or lack of repair of any improvements located thereon and (iii) the compliance of the Property or the operation of the Property with any laws, rules, ordinances, or regulations of any government or other body. THE CONVEYANCE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" BASIS, AND GRANTEE ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENTS OF

GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN AND IN THE PURCHASE AGREEMENT, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY.

Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all ad valorem taxes pertaining to the Property for calendar year 2004 and subsequent years, there having been a proper proration of ad valorem taxes for the current calendar year between Grantor and Grantee. Any assessments first due and payable after the effective date hereof shall be paid by Grantee.

EXECUTED as of the ___ day of _____, 2004.

GRANTOR:

SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation

By:_____
Name:_____
Title:_____

STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §

This instrument was ACKNOWLEDGED before me, on the ___ day of _____, 2004, by _____ of Sino Swearingen Aircraft Corporation, a Delaware corporation, on behalf of such corporation.

_____
Notary Public, State of Texas

GRANTEE'S ADDRESS FOR TAX NOTICES:
Simmons, Vedder & Company
210 Barton Springs Road, Suite 500
Austin, Texas 78704
Attn:_____

When recorded, return to:
J. Thomas Trent, Jr.
Boult, Cummings, Conners & Berry, PLC
414 Union Street, Suite 1600
Nashville, Tennessee 37219

## Permitted Exceptions

1. Any shortages in area.

2. Standby fees, taxes and assessments by any taxing authority for the year 2000, and subsequent years.

3. 25' Building setback line as shown on plat recorded in Volume 9516, Pages 195-198, Deed and Plat Records of Bexar County, Texas.

4. 10' Storm Drainage easement as set out in Volume 9516, Pages 195-198, Deed and Plat Records of Bexar County, Texas.

5. Lease No. 124099 (With Standard Provisions And Covenants), dated March 28, 1986, between the City, as lessor, and Jaffe Aerospace Corp. ("Jaffe"), as lessee, executed pursuant to Ordinance No. 62582, adopted on March 27, 1986, as amended pursuant to Amendment of Lease dated May 4, 1992 between the City, as lessor, and Jaffe, as lessee, executed pursuant to Ordinance No. 75704, adopted on April 30, 1992, with the accompanying Agreed Cancellation of Lease No. 124043 dated May 4, 1992 between the City, Jaffe, and Exec-Aire, Inc., executed by the City pursuant to City Ordinance No. 75704, (effective December 14, 1992, Comtran International, Inc., a Texas corporation ("Comtran"), and Jaffe merged, with Comtran being the surviving corporation), said Lease No. 124099 being further amended pursuant to Partial Assignment And Amendment of Leases dated June 28, 1993 between the City, as lessor, Comtran, and Aeronev, Inc. pursuant to Ordinance No. 78186, adopted on June 24, 1993, said Lease No. 124099 being further amended by Amendment Of Lease dated June 28, 1993, between the City, as lessor, and Comtran, as lessee, pursuant to Ordinance No. 78186, as disclosed by Memorandum of Lease executed as of August 4, 1993, recorded in Volume 5750, Page 1628 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further amended by Amendment Of Lease dated April 19, 1996 between the City, as lessor, and Comtran, as lessee, executed pursuant to Ordinance No. 83955, adopted April 18, 1996, filed for record in Volume 8094, Page 1681 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further affected by Assignment And Assumption Agreement dated November 17, 1997, between Comtran, as assignor, and Aviation Acquisition Corporation, a Texas corporation, as assignee, executed pursuant to Ordinance No. 86932 adopted November 3, 1997, said instrument filed for record on December 8, 1997, under Bexar County Clerk's File No. 97-0173252 (with Lease No. 124099 and all of the above-referenced documents related thereto hereinafter sometimes collectively referred to as the "Ground Lease").

6. Open garage encroachment into the ten foot (10') storm drainage easement as disclosed by the survey dated 7/24/00 prepared by HDR/Simpson under Job No. 02000-0260210, signed by E. F. Burkhart, Public Surveyor, R.P.S. No. 1708.

## BILL OF SALE

THIS BILL OF SALE is executed and delivered as of the _____ day of _____, 200_, by SINO SWEARINGEN AIRCRAFT CORPORATION, a(n) [INSERT SELLER FORMATION STATE/ENTITY TYPE] ("Seller"), to SIMMONS, VEDDER & COMPANY, a Texas corporation ("Buyer").

### WITNESSETH:

WHEREAS, contemporaneously with the execution and delivery of this Bill of Sale, Seller has sold and conveyed to Buyer the hangar, maintenance and office facility located on the land described on Exhibit A, attached hereto and incorporated herein by reference (the "Project"); and

WHEREAS, in connection with such conveyance of the Project, Seller has agreed to sell to Buyer and Buyer has agreed to purchase from Seller all personal property owned by Seller and used in connection with the ownership, operation, management, maintenance, and leasing of the Project, including, but not limited to, the personal property described in Exhibit B, attached hereto and incorporated herein by this reference (the "Personal Property").

NOW, THEREFORE, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby agrees as follows:

1.    **Sale and Conveyance**.  Seller hereby sells, transfers and conveys the Personal Property unto Buyer, its successors and assigns.

2.    **Status**.  Seller represents and warrants that (i) Seller has good and merchantable title to the Personal Property, (ii) all of the Personal Property is free and clear of financing statements, chattel, mortgages, security agreements, title retention agreements, liens or other encumbrances, and (iii) Seller has the right, power and authority to sell the Personal Property to Buyer without obtaining the consent of any third party whose consent has not been obtained and written evidence thereof furnished to Buyer. Seller, for itself, its successors and assigns, does hereby warrant and will forever defend title to the Personal Property unto Buyer, its successors and assigns against the lawful claims of all persons.

3.    **Governing Law**.  This Bill of Sale shall be construed and enforced in accordance with and governed by the laws of the State of Texas.

4.    **Binding Effect**.  This Bill of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, personal representatives, successors and assigns.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of the day and year first above written.

SINO SWEARINGEN AIRCRAFT
CORPORATION

By:_____
    [Seller Representative]
    [Seller Representative Title]

ASSIGNMENT OF GROUND LEASE

## ASSIGNMENT AND ASSUMPTION AGREEMENT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

 **THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (the "**Assignment**") is made and entered into as of this ___ day of _____, 2004 (the "**Effective Date**"), in multiple originals and entered into by and between the City of San Antonio, a Texas Municipal Corporation (hereinafter called "**City**") acting by and through its City Manager pursuant to Ordinance No. _____ passed and approved by City Council on _____, 2004, and Sino Swearingen Aircraft Corporation, a Delaware corporation, acting by and through its authorized officers pursuant to its bylaws or a resolution of its Board of Directors (hereinafter called "**Assignor**") and Simmons, Vedder & Company, a Texas corporation, acting by and through its authorized officers pursuant to its bylaws or a resolution of its Board of Directors (hereinafter called "**Assignee**").

## WITNESSETH:

 **WHEREAS**, Assignor is the owner of a certain leasehold estate described in that certain San Antonio International Airport Lease No. 124099 (With Standard Provisions And Covenants), dated March 28, 1986, between the City, as lessor, and Jaffe Aerospace Corp. ("Jaffe"), as lessee, executed pursuant to Ordinance No. 62582, adopted on March 27, 1986, as amended pursuant to Amendment of Lease dated May 4, 1992 between the City, as lessor, and Jaffe, as lessee, executed pursuant to Ordinance No. 75704, adopted on April 30, 1992, with the accompanying Agreed Cancellation of Lease No. 124043 dated May 4, 1992 between the City, Jaffe, and Exec-Aire, Inc., executed by the City pursuant to City Ordinance No. 75704, (effective December 14, 1992, Comtran International, Inc., a Texas corporation ("Comtran"), and Jaffe merged, with Comtran being the surviving corporation), said Lease No. 124099 being further amended pursuant to Partial Assignment And Amendment of Leases dated June 28, 1993 between the City, as lessor, Comtran, and Aeronev, Inc. pursuant to Ordinance No. 78186, adopted on June 24, 1993, said Lease No. 124099 being further amended by Amendment Of Lease dated June 28, 1993, between the City, as lessor, and Comtran, as lessee, pursuant to Ordinance No. 78186, as disclosed by Memorandum of Lease executed as of August 4, 1993, recorded in Volume 5750, Page 1628 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further amended by Amendment of Lease dated April 19, 1996 between the City, as lessor, and Comtran, as lessee, executed pursuant to Ordinance No. 83955, adopted April 18, 1996, filed for record in Volume 8094, Page 1681 of the Real Property Records of Bexar County, Texas; said Lease No. 124099 being further affected by Assignment And Assumption Agreement dated November 17, 1997, between Comtran, as assignor, and Aviation Acquisition Corporation, a Texas corporation, as assignee, executed pursuant to Ordinance No. 86932 adopted November 3, 1997, said instrument filed for record on December 8, 1997, under Bexar County Clerk's File No. 97-0173252 (with Lease No. 124099 and all of the above-

referenced documents related thereto hereinafter sometimes collectively referred to as the "**Lease Agreement**") which Lease Agreement affects the real property described on Exhibit "A" attached hereto and incorporated herein for all purposes (the "**Premises**"); and

**WHEREAS**, Assignor has requested that City approve the assignment of all of Assignor's rights and obligations under the Lease Agreement, as amended, to Assignee; and

**WHEREAS**, the City is willing to grant this request to Assignor to assign its rights under the Agreement, as amended, to Assignee.

**NOW THEREFORE**, in consideration of the terms, covenants and promises, agreements and demises herein contained, and for other good and valuable consideration, each to the other given, the sufficiency and receipt of which are hereby acknowledged, the parties hereto agree as follows:

1.  Without recourse or warranty, express or implied, other than as set forth herein and in that certain Sale Agreement dated August ___, 2004, by and between the Assignor, as seller, and Assignee, as purchaser, the Assignor hereby transfers, assigns and sets over to the Assignee all right, title and interest of the Assignor in and to the Lease Agreement, effective as of the Effective Date.

2.  In consideration therefore, the Assignee hereby accepts, assumes, takes over and succeeds to all of the Assignor's rights, duties, interests, liabilities and obligations under the Lease Agreement and agrees to all of the terms, conditions, provisions, covenants and obligations contained therein which Assignor is obligated to keep or perform, and to indemnify and hold harmless the City and Assignor with respect to any and all such duties, liabilities, obligations or expenses including without limitation reasonable attorneys fees that first arise and relate to periods after the Effective Date; provided Assignor shall remain responsible for and Assignee is not assuming any duties, liabilities or obligations of Assignor and is not making any indemnity under the Lease Agreement which relate to an event, matter or circumstance that occurred prior to the Effective Date, even though such duties, liabilities or obligations do not accrue until after the Effective Date. Assignor hereby agrees, for itself and its successors and assigns to indemnify and hold harmless the City and Assignee from any loss, damage, environmental damage, claim, cost or expense, including without limitation reasonable attorneys fees and expenses, arising from the failure of Assignor, to perform any of the terms, conditions and obligations of the Lease Agreement during the time Assignor was in privity of estate with the City or that relate to an event, matter or circumstance that first arose and related to periods prior to the Effective Date, even though such duties, liabilities or obligations do not accrue until after the Effective Date.

3.  Assignor represents and warrants to Assignee that: (i) a true, correct and complete copy of the Lease Agreement is attached hereto as Exhibit B, which exhibit is incorporated herein by reference; (ii) Assignor is the sole owner and holder of the

tenant's interest in the Lease Agreement; (iii) Assignor has the right, power and authority to validly assign such interest in the Lease Agreement to Assignee, subject to the approval of the City, (iv) Assignor's interest in the Lease Agreement is not subject to any liens, collateral assignments, security interests or other encumbrances; (v) the Lease Agreement is in full force and effect; (vi) Assignor is not in default under the Lease Agreement in any material respect and no event or matter exists which with the giving of notice, the passage of time or both would constitute such a default; and (vii) to the actual knowledge of Assignor, City is not in default under the Lease Agreement and no event or matter exists which with the giving of notice, the passage of time or both would constitute such a default.

4.      The City consents to (i) the assignment of the rights and obligations of Assignor to Assignee under the Lease Agreement, and (ii) Assignor's conveyance to Assignee of title to the buildings, hangar, other improvements, and the underground storage tanks and associated lines located on the Premises by Assignor's execution of a Special Warranty Deed in favor of Assignee and authorizes the City Manager or in its stead, the Assistant City Managers or the Assistants to the City Manager to execute this Assignment.

**IN WITNESS WHEREOF,** the undersigned have duly executed this Assignment and Assumption Agreement as of the date set forth above.

EXECUTED THIS _____ day of _____, 2004, to be effective as of the date set forth in Paragraph 6 of this Assignment.

**ASSIGNOR:**

**SINO      SWEARINGEN      AIRCRAFT CORPORATION,      a      Delaware corporation**

By:_____
Name:_____
Title:_____

**ASSIGNEE:**

**SIMMONS, VEDDER & COMPANY, a Texas corporation**

By:_____
Name:_____
Title:_____

**CONSENT GRANTED:**
**CITY OF SAN ANTONIO**

By:_____
                    City Manager

THE STATE OF TEXAS      §
                                                      §
COUNTY OF BEXAR      §

     This instrument was acknowledged before me on this the ___ day of _____, 2004, by _____, President and CEO of SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation, on behalf of said corporation.

_____
Notary Public in and for the State of Texas

THE STATE OF TEXAS      §
                                                      §
COUNTY OF _____      §

     This instrument was acknowledged before me on this the ___ day of _____, 2004, by _____, _____ of SIMMONS, VEDDER & COMPANY, a Texas corporation, on behalf of said corporation.

_____
Notary Public in and for the State of Texas

THE STATE OF TEXAS      §
                                                      §
COUNTY OF BEXAR      §

     This instrument was acknowledged before me on this the ___ day of _____, 2004, by _____, City Manager of CITY OF SAN ANTONIO, a Texas municipal corporation, on behalf of said municipal corporation.

_____
Notary Public in and for the State of Texas

# EXHIBIT "A"

## DESCRIPTION OF REAL PROPERTY

## ASSIGNMENT OF OPERATING AGREEMENT

THIS ASSIGNMENT OF OPERATING AGREEMENT (the "Assignment") is made and entered into this _____ day of _____ ____, by and between SINO SWEARINGEN AIRCRAFT CORPORATION, a(n) [INSERT SELLER FORMATION STATE/ENTITY TYPE] ("Assignor"), and SIMMONS, VEDDER & COMPANY, a Texas corporation ("Assignee").

### WITNESSETH:

WHEREAS, contemporaneously with the execution and delivery hereof, Assignor has sold and conveyed to Assignee the hangar, maintenance and office facility located on the land described on Exhibit A, attached hereto and incorporated herein by reference (the "Project");

WHEREAS, in connection with such conveyance of the Project, Assignor and Assignee have agreed that Assignor shall transfer and assign to Assignee all right, title and interest of Assignor in and to all service, management, equipment, labor, material, maintenance, repair and other contracts described on Exhibit B, attached hereto and incorporated herein by reference (collectively, the "Operating Agreement"); and

WHEREAS, Assignor and Assignee have further agreed that Assignee shall expressly assume certain obligations of Assignor arising under the Operating Agreement.

NOW, THEREFORE, for the covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.      Assignment.  Assignor hereby sells, transfers and assigns to Assignee, its successors and assigns, all right, title and interest of Assignor in, to and under the Operating Agreement.

2.      Assumption.  Assignee hereby assumes and agrees to observe and perform all of the obligations and duties of Assignor under each of the Operating Agreement to the extent, but only to the extent, such obligations and duties first arise and relate to periods after the date of this Assignment; provided Assignor shall remain responsible for and Assignee is not assuming any obligations or duties of Assignor under the Operating Agreement which relate to an event, matter or circumstance that occurred prior to the date hereof, even though such obligations or duties do not accrue until after the date of this Assignment.

3.      Status.  Assignor hereby represents and warrants to Assignee that (i) Assignor has the right, power and authority to validly assign the Operating Agreement to Assignee, without obtaining the consent of any third party whose consent has not been obtained and written evidence thereof furnished to Assignee, (ii) the Operating Agreement are not subject to any liens, collateral assignments, security interests or other adverse claims, (iii) the Operating Agreement is in full force and effect, and (iv) neither Assignor nor, to the actual knowledge of Assignor, any other party to any of the Operating Agreement is in default thereunder, and no event, matter, act or omission has occurred which, with the giving of notice or lapse of time, or both, would constitute a default thereunder.

4.      Indemnity.  Assignor hereby agrees to indemnify, defend (with counsel reasonably satisfactory to Assignee) and hold harmless Assignee for, from and against all claims, demands, losses, damages, expenses and costs including, but not limited to, reasonable attorneys' fees and expenses actually incurred, arising out of or in connection with Assignor's failure to observe, perform and discharge each and every one of the covenants, obligations and liabilities of Assignor under the Operating Agreement not expressly assumed by Assignee under Section 3 of this Assignment.  Assignee hereby

agrees to indemnify, defend (with counsel reasonably acceptable to Assignor) and hold harmless Assignor from and against all claims, demands, losses, damages, expenses and costs including, but not limited to, reasonable attorneys' fees and expenses actually incurred, arising out of or in connection with Assignee's failure to observe, perform and discharge each and every one of the covenants, obligations and liabilities of Assignor under the Operating Agreement expressly assumed by Assignee under Section 3 of this Assignment.

5. <u>Governing Law</u>. This Assignment shall be construed and enforced in accordance with and governed by the laws of the State of Texas.

6. <u>Binding Effect</u>. This assignment and assumption shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the day and year first above written.

ASSIGNOR:

[INSERT NAME OF SELLER]

By:_____
    [Seller Representative]
    [Seller Representative Title]

ASSIGNEE:

SIMMONS, VEDDER & COMPANY

By: _____
Name:_____
Title: _____

Broker enters into this Agreement to acknowledge and agree to abide by the Confidentiality Requirement as set forth in Section 3.6(b) of this Agreement.

BROKER:

CB RICHARD ELLIS

By: _____
Name:_____
Title: _____

## ASSIGNMENT OF INTANGIBLE PROPERTY

THIS ASSIGNMENT OF INTANGIBLE PROPERTY (the "Assignment") is made and entered into as of the ___ day of _____, ____, by and between SINO SWEARINGEN AIRCRAFT CORPORATION, a(n) [INSERT SELLER FORMATION STATE/ENTITY TYPE] ("Assignor") and SIMMONS, VEDDER & COMPANY, a Texas corporation ("Assignee").

### WITNESSETH:

WHEREAS, Assignor and Assignee previously entered into that certain Sale Agreement dated as of June ____, 2004 (the "Sale Agreement") pursuant to which Assignor agreed to sell to Assignee the hangar, maintenance and office facility located on the land described on Exhibit A, attached hereto and incorporated herein by reference (the "Project");

WHEREAS, contemporaneously with the execution and delivery hereof, Assignor has sold and conveyed the Project to Assignee; and

WHEREAS, in connection with such conveyance of the Project, Assignor and Assignee have agreed that Assignor shall transfer and assign to Assignee all right, title and interest of Assignor in and to the Intangible Property.

NOW, THEREFORE, for the covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1. Defined Terms. For purposes of this Assignment, including, but not limited to, the recitals set forth above, all capitalized terms not defined herein but defined in the Sale Agreement shall have the meaning ascribed thereto in the Sale Agreement.

2. Transfer and Assignment. Assignor hereby transfers, assigns, sets over and delivers to Assignee all right, title and interest of Assignor in and to the Intangible Property.

3. Governing Law. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Texas.

4. Binding Effect. This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the day and year first above written.

ASSIGNOR:

SINO SWEARINGEN AIRCRAFT CORPORATION

By: _____
    [Seller Representative]
    [Seller Representative Title]

ASSIGNEE:

SIMMONS, VEDDER & COMPANY

By: _____
Name: _____
Title: _____